**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JACOBS ENGINEERING GROUP INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | No. 02-1500C<br>(Judge George W. Miller) |

**PLAINTIFF JACOBS ENGINEERING GROUP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W.
12th Floor
Washington, D.C. 20036
(202) 393-7150

Counsel of Record for Plaintiff
JACOBS ENGINEERING GROUP INC

July 14, 2006

# TABLE OF CONTENTS

I. SUMMARY OF ISSUE PRESENTED ........ 1

II. BACKGROUND ........ 2

III. STATEMENT OF MATERIAL FACTS NOT INGENUINE DISPUTE ........ 4

IV. ARGUMENT ........ 4

A. Standard of Review Under RCFC 56(a) ........ 4

B. Standard of Review for Contract Interpretation ........ 5

C. Jacobs Remains Due and Owed $1,485,121 Resulting From the Government's Termination of the Contract for its Convenience. ........ 8

D. Jacobs is Entitled to Recover Fee as Part of Its Reimbursable Costs Under FAR 52.249-6. ........ 9

E. Under the CDA the Government is Precluded From Raising a Question of Fact Regarding Total Reimbursable Costs of Performance. ........ 11

F. The Government is Collaterally Estopped from Now Claiming that the Total Costs Reimbursable Under the Contract are Less Than $7,064,721. ........ 12

V. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## Cases

*Advanced Distribution System, Inc. v. United States*, 34 Fed.Cl. 598 (1995) ........ 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........ 5

*A-Transport Northwest Co., Inc. v. United States*, 36 F.3d 1576 (Fed. Cir. 1994) ........ 7

*Bayou Land & Marine Contractors, Inc.*, 23 Cl.Ct. 764 (1991) ........ 7

*Bianchi v. United States*, 68 Fed. Cl. 442, 460 (2005) ........ 12

*Brunswick Corp. v. United States*, 951 F.2d 334 (Fed. Cir. 1991) ........ 7

*Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 971 n. 7 (Fed. Cir. 1999) .. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........ 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) ........ 5

*Chas H. Tompkins Company v. United States,* 43 Fed. Cl. 716 (1999) ........ 6

*Cherry Hills Sand & Gravel Co., Inc. v. United States*, 7 Cl.Ct. 357 (1985) ........ 7

*Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed. Cir. 1993) ........ 7

*Community Heating & Plumbing*, 987 F.2d 1575 (1993) ........ 7

*Cooper Realty Co. v. United States*, 36 Fed.Cl. 284 (1996) ........ 5

*Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003). *See Northrop Grumman Corp. v. United States*, 70 Fed. Cl. 230, 233 (2006) ........ 13

*DWS, Inc. v. United States*, 18 Cl. Ct. 453, 458-61 (1989) ........ 13

*Firestone Tire & Rubber Co. v. U.S.,* 195 Ct.Cl. 21, 444 F.2d 547 (1971) ........ 7

*Fortec Constructors v. United States*, 760 F.2d 1288 (Fed.Cir.1985) ........ 6

Gaston & Assocs., Inc. v. United States, 27 Fed.Cl. 243 (1992) ........ 6

*Granite Constr. Co. v. United States,* 962 F.2d 998, 1003 (Fed. Cir. 1992) ........ 6

*Granite Construction Co. v. United States*, 962 F.2d 998 (Fed.Cir. 1992), *cert. denied* 113 S.Ct. 965 ....... 6

*H & M Moving, Inc. v. U. S.*, 499 F.2d 660 (Ct.Cl. 1974) ....... 7

*Law Mathematics and Tech, Inv. V. United States*, 779 F.2d 675,678 (Fed. Circ. 1985) ....... 12

*McAbee Constr., Inc. v. United States,* 97 F.3d 1431 (Fed.Cir.1996) ....... 6

*Metcalf Construction Co. v. United States*, 2002 WL 31116691 (Fed.Cl. 2002) ....... 6, 7

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir. 1987) ....... 4

*Montana v. United* States, 440 U.S. 147, 153-54 (1979) ....... 12

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983) ....... 14

*Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479 (Fed.Cir.1998) ....... 6

*P.R. Burke Corp. v. U.S.*, 47 Fed.Cl. 340 (2000) ....... 5

*P.R. Burke Corp. v. U.S.*, 47 Fed.Cl. 340, 346 (2000) ....... 6

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979) ....... 12

*Perry & Wallis, Inc. v. United States,* 192 Ct.Cl. 310, 427 F.2d 722 (1970) ....... 7

*Pete Vicari General Contractor, Inc. v. U.S.*, 51 Fed.Cl. 161 (2001) ....... 5, 6

*Rice Lake Contracting, Inc. v. United States*, 33 Fed.Cl. 144 (1995) ....... 7

*Seravalli v. United States*, 16 Cl. Ct. 424, 428 (1989) ....... 12

*Shearson Lehman Hutton, Inc. v. United States*, 24 Cl.Ct. 770 (1991), *aff'd,* 983 F.2d 1086 (Fed.Cir. 1992) ....... 5

*Sturm v. United* States, 190 Ct.Cl. 691, 421 F.2d 723 (1970) ....... 7

*Textron Defense Systems v. Widnall,* 143 F.3d 1465 (Fed.Cir.1998) ....... 7

*Triax Pac., Inc. v. West*, 130 F.3d 1469 (Fed. Cir. 1998) ....... 7

**Statutes**

41 U.S.C. § 609(b) ....... 11, 12

**Regulations**

FAR 52.216-12 ........................................ 3, 4, 9
FAR 52.249-6(g)(4) ........................................ 9
FAR 52.249-6(g)(4)(i) ........................................ 4, 8
FAR 52.249-6(m) ........................................ 9

# INDEX TO APPENDIX


| Document | Page |
|---|---|
| Contract No. DE-AC21-92MC-28202 | 1-166 |
| Contracting Officer's Final Decision for Contract No. DE-AC21-92MC-28202 | 167-173 |
| Jacobs Engineering Group Inc.'s Termination Settlement Proposal | 174-249 |
| Audit Report No. 4901-99N700012 | 250-261 |
| Jacobs Engineering Group Inc.'s Request for Final Decision Of the Contracting Officer | 262-264 |
| United States Court of Federal Claims Opinion and Order | 265-274 |
| United States Court of Appeals for the Federal Circuit Decision | 275-280 |
| Department of Energy Ruling on Appellant's Motion for Summary Judgment and Respondent's Motion to Dismiss | 281-283 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JACOBS ENGINEERING GROUP INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | No. 02-1500C |
| | ) | (Judge George W. Miller) |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF JACOBS ENGINEERING GROUP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Jacobs Engineering Group Inc. ("Jacobs"), by counsel, pursuant to Rule 7(b) of the Rules of the Rules of the United States Court of Federal Claims ("RCFC"), respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## I. SUMMARY OF ISSUE PRESENTED

This contract disputes stems from the termination for convenience of a government contract. The central issue presented by this motion is whether, as a result of the termination, Jacobs is entitled to damages in the amount of $1,485,421, as Jacobs contends, or, alternatively, whether its damages are limited to $922,082 (as Plaintiff believes the Government will contend). The primary difference between the parties' calculation is entitlement to fee. Following the Federal Circuit's January 2006 decision in this case, it cannot be disputed that Jacobs is entitled to recover "all of the costs" it incurred to perform the Contract through the date of termination, not 80 percent of them as this Court had previously held. Thus, the principal question for this Court is whether fee is proper for inclusion in the total costs of performance. As demonstrated below, since at least September 2002, when the Contracting Officer issued its final decision,

through January 2006, when the Federal Circuit issued its decision, the Government had always calculated Jacobs' total cost of performance to be $7,064,721. This amount includes fee of $565,450. For the reasons set forth below, Jacobs submits that $7,064,721 (including fee) is the proper calculation for Jacobs' total costs of performance, the Government should be estopped from suddenly changing its position now, and the proper amount of damages due Jacobs in light of Jacobs' total cost of performance is $1,485,421 plus interest.

## II. BACKGROUND

This is an appeal of a Contracting Officer's final decision denying Jacobs' claim for reimbursement of its total performance allowable costs under Contract No. DE-AC21-92MC-28202 (the "Contract"). Pursuant to this Contract, Jacobs was required to develop, design, fabricate, construct and install a gasification improvement facility in Morgantown, West Virginia (the "Project"). The Contract contained a cost-sharing provision, which provided that Jacobs would be paid 80 percent of its reimbursable costs for this effort. Jacobs agreed to absorb the remaining 20 percent of reimbursable costs because it anticipated that as a result of its performance, it would obtain certain patent rights. Jacobs commenced performance, but the Government later terminated the Contract for its convenience because it did not have funds to complete performance. Although the Contract contained the subject cost sharing provision, Jacobs contended this clause was not applicable following a termination for convenience, and therefore, Jacobs is entitled to recover all or 100 percent of its total costs of performance incurred on the Project inclusive of fee. The Government disagreed and maintained that, following termination, Jacobs was only entitled the 80 percent of its total costs of performance, pursuant to the cost sharing provision. After receiving a final decision from the Contracting

Officer on the issue, Jacobs commenced this action in 2002 seeking to recover all costs of performance including fee.

With respect to application of the cost sharing provision, Jacobs previously filed a motion for summary judgment with this Court arguing that, as a matter of law, the cost-sharing clause did not apply in the event of a termination for convenience. Defendant crossed-moved for summary judgment, contending that the cost share provision remained in full force and effect. After consideration of the briefs filed by the parties and following oral argument, this Court denied Jacob's motion and granted Defendant's cross-motion. J.App 265-274. In summary, this Court ruled that Jacobs was entitled to only 80 percent of its total performance costs not previously paid and no fee under the termination clause of the Contract. In so doing, the Court relied upon the "cost-sharing" and "cost-sharing no fee" provisions of the Contract. Jacobs appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. Reversing this Court, the Federal Circuit ruled that Jacobs is entitled to recover all or 100 percent of its total performance costs under the Contract, not 80 percent of them. In effect, the Federal Circuit concluded that the cost-sharing provision is inapplicable after the Government terminated Jacobs' Contract for convenience. Accordingly, the case was remanded back to this Court to award damages.

Given the parties' longstanding agreement on the total costs of performance, Jacobs expected that the parties would be able to readily stipulate to Jacobs' damages following the Federal Circuit's January 2006 decision. Indeed, throughout the appellate process, not once did the Government ever question the Contracting Officer's contemporaneous finding that Jacobs' total performance costs, including fee, was $7,064,721. Deducting payments of $5,579,600, from the total performance costs of $7,064,721, Jacobs calculates damages at $1,485,421.

However, subsequent to the Federal Circuit decision, the Government has taken the position that Jacobs is not entitled to recover fee included in the total performance costs pursuant to the "Cost-Sharing No Fee" provision contained at FAR 52.216-12. There is no validity to this new argument. FAR 52.216-12, by its express language, contemplates application when an enforceable "cost-sharing" provision is in place. Because the Federal Circuit ruled the "cost-sharing" provision is no longer effective, the "Cost-Sharing No Fee" provision is likewise inapplicable. Moreover, FAR 52.249-6(g)(4)(i) permits fee as a reimbursable costs if the Contract is terminated for the convenience of the Government. Such an interpretation is also consistent with the well-settled equitable provisions that underlie a termination for convenience.

Accordingly, this motion seeks a ruling from the Court establishing that "fee" is a reimbursable cost under the Contract given that the cost-sharing provision no longer applies, and therefore, Jacobs damages resulting from the termination are liquidated at $1,485,421.

## III. STATEMENT OF MATERIAL FACTS NOT INGENUINE DISPUTE

For its Statement of Facts, Jacobs respectfully refers the Court to Jacobs' its Proposed Findings of Uncontroverted Fact, which are filed contemporaneous herewith.

## IV. ARGUMENT

### A. Standard of Review Under RCFC 56(a)

Summary judgment under RCFC 56(a) is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party has the burden of showing the absence of genuine issues as to any material facts. *Advanced Distribution System, Inc. v. United States*, 34 Fed.Cl. 598 (1995). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material by considering the substantive law. Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 2510.

Here, the issue whether fee is a recoverable cost in the event of a convenience termination is purely a question of contract interpretation. There are no material facts in dispute. It is well established that contract interpretation is a matter of law. *Cooper Realty Co. v. United States*, 36 Fed.Cl. 284 (1996); *Shearson Lehman Hutton, Inc. v. United States*, 24 Cl.Ct. 770, 773 (1991) ("[I]ssues…[that] are solely matters of contract interpretation…are consequently appropriate subjects for summary judgment."), *aff'd,* 983 F.2d 1086 (Fed. Cir. 1992). And a motion for summary judgment is an appropriate vehicle to scrutinize an agency's decision regarding issues of contractual interpretation. *Pete Vicari General Contractor, Inc. v. U.S.*, 51 Fed.Cl. 161 (2001). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

**B. <u>Standard of Review for Contract Interpretation</u>**

The fundamental objective in interpreting a contract is to "ascertain the parties' intent and effectuate the purpose of their agreement." *P.R. Burke Corp. v. U.S.*, 47 Fed.Cl. 340 (2000) (internal citations omitted). "[A]n interpretation that gives a reasonable meaning to all parts of a contract will be preferred to one that leaves portions of the contract meaningless." *Fortec*

*Constructors v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985). To perpetuate this objective in competing contract interpretations, the court must first consider the plain meaning of the contract. *Pete Vicari General Contractor, Inc. v. U.S.*, 51 Fed.Cl. 161 (2001) ("The court's analysis of the parties' competing interpretations of the contract must begin with the plain meaning of the contract itself."); *Chas H. Tompkins Company v. United States,* 43 Fed.Cl. 716 (1999) ("Whenever possible, courts look to a plain language or plain meaning interpretation of contractual documents"); *see also Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479, 1483 (Fed. Cir. 1998).

In determining the plain meaning, a contract must be read "in a manner that gives meaning to all its provisions and makes sense. Thus, if the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning.' *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed. Cir. 1996) (internal citations omitted); *see also Granite Constr. Co. v. United States,* 962 F.2d 998, 1003 (Fed. Cir. 1992). It is a well-established principle of contract interpretation that a court should "attempt to read the contract's various provisions as a harmonious, integrated whole, interpreting these provisions in their larger contractual context, rather than in isolation." *P.R. Burke Corp. v. U.S.*, 47 Fed.Cl. 340, 346 (2000) (internal citations omitted); *see also Granite Construction Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992), *cert. denied* 113 S.Ct. 965; *Gaston & Assocs., Inc. v. United States,* 27 Fed.Cl. 243, 249 n. 7 (1992). Furthermore, the plain meaning given to "the language of a contract must produce an interpretation that would be derived 'by a reasonably intelligent person acquainted with the contemporary circumstances.'" *Metcalf Construction Co. v. United States*, 2002 WL 31116691 (Fed.Cl. 2002) *citing Rice Lake Contracting, Inc. v. United States*, 33

Fed.Cl. 144, 152 (1995) (citing *Firestone Tire & Rubber Co. v. U.S.,* 195 Ct.Cl. 21, 30, 444 F.2d 547 (1971)).

A contract term is unambiguous when there is only one reasonable interpretation. *See Triax Pac., Inc. v. West*, 130 F.3d 1469, 1473 (Fed. Cir. 1998); *A-Transport Northwest Co., Inc. v. United States*, 36 F.3d 1576, 1584 (Fed. Cir. 1994). However, the fact that the parties may disagree with regard to the interpretation of a specific provision does not, in and of itself, render that provision ambiguous. *See Community Heating & Plumbing*, 987 F.2d 1575, 1579 (Fed. Cir. 1993); *Brunswick Corp. v. United States*, 951 F.2d 334, 337 (Fed. Cir. 1991); *see also Perry & Wallis, Inc. v. United States,* 192 Ct.Cl. 310, 315, 427 F.2d 722, 725 (1970). "When contract language is unambiguous, the court's inquiry is at an end and the plain meaning is controlling." See *Textron Defense Systems v. Widnall,* 143 F.3d 1465, 1469 (Fed. Cir. 1998).

"[A] contract is ambiguous if it is susceptible of two different interpretations, each of which is found to be consistent with the contract's language." *Bayou Land & Marine Contractors, Inc.*, 23 Cl.Ct. 764 (1991). If the Court determines that an ambiguity exists, then it must determine whether it is latent or patent. *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed. Cir. 1993). "An ambiguity is latent where it is subtle, or otherwise undetectable, until such time as the parties reasonably ascribe two different meanings." *Metcalf Construction Co. v. United States*, 2002 WL 31116691 (Fed.Cl. 2002). An ambiguity is patent if it is "obvious, gross, glaring, so that plaintiff contractor had a duty to inquire about it at the start." *H & M Moving, Inc. v. U. S.*, 499 F.2d 660 (Ct.Cl. 1974). When an ambiguity exists, the Court may interpret the contract by considering the "reasonableness of the parties proferred interpretation." *Cherry Hills Sand & Gravel Co., Inc. v. United States*, 7 Cl.Ct. 357 (1985); *see also Sturm v. United* States, 190 Ct.Cl. 691, 697, 421 F.2d 723, 727 (1970) ("The test is whether

the contractor, who realistically had to acquiesce in the Government's proffered form, could reasonably construe it that way."). Thus, it places the "risk of ambiguity, lack of clarity, and absence of proper warning on the drafting party which could have forestalled the controversy; it pushes the drafters toward improving contractual forms; and it saves contractors from hidden traps not of their own making." *Id.*

Applying these rules of contract interpretation, as further discussed below, the Court should find that Jacobs reasonably interprets the Contract to permit Jacobs to recover fee as part of its performance costs as a result of the Government's termination for convenience. Clearly, this is the only reasonable interpretation. No ambiguity exists. The Government's interpretation that fee is not recoverable, on the other hand, is unreasonable because it overlooks the direct connection between the "cost-sharing" provision, and the "cost-sharing no fee" provision. Since the Federal Circuit ruled that the cost-sharing provision has no application, the cost-sharing no fee provision would also have no application.

### C. Jacobs Remains Due and Owed $1,485,121 Resulting From the Government's Termination of the Contract for its Convenience.

Jacobs' total performance costs under the Contract is $7,064,721.79 and payments to date total $5,579,600.60. PPFF 8.[1] Thus, Jacobs damages resulting from the termination for convenience by deducting these payments from the total costs of performance are liquidated at $1,485,121.19 plus interest in accordance with the Contract Disputes Act. PPFF 8. Thus, summary judgment in favor of Plaintiff for $1,485,121 is the proper damage calculation resulting from the Government's termination for convenience.

---

[1] Citation to "PPFF" refers to Plaintiff's Proposed Findings of Uncontroverted Fact filed contemporaneously herewith.

**D. Jacobs is Entitled to Recover Fee as Part of Its Reimbursable Costs Under <u>FAR 52.249-6</u>.**

Included in Jacobs' total performance costs is fee of $565,450. PPFF 6. Fee is a recoverable cost under the termination clause of the Contract when the Contract is terminated for convenience of the Government - - which is the case here. PPFF 5. See FAR 52.249-6(g)(4)(i). This FAR provision and interpretation is consistent with the federal common law of government contracts. *See Richerson Construction, Inc.*, GSBCA 1161, 93-1 BCA ¶ 25239 (where the Board stated that "the objective of a termination for convenience settlement is to provide the contractor with fair compensation both for the work that has been completed prior to the termination and for preparations made for the terminated portions of the Contract, including a reasonable allowance for profit").

In this case, the Government apparently attempts to "stretch" the language of the Contract on no fee as it relates to cost-sharing to reach its decision to terminate the Contract for convenience. There is no credence to this argument. There is no precedent for this argument. Specifically, the Government contends that Jacobs is not entitled to fee based upon FAR 52.249-6(m), which states that "[t]he provisions of [FAR 52.249-6(g)(4)] relating to fee are inapplicable if this Contract does not include a fee". Because this Contract incorporates, FAR 52.216-12 – Cost-Sharing No Fee, which states "[t]he Government shall not pay to the Contractor a fee for performing the Contract", the Government "mistakenly" concludes that Jacobs is not entitled to fee. Indeed, this argument misreads the relevant provisions or reads into the Contract language that does not exist.

First, Jacobs does not dispute that pursuant to FAR 52.216-12, the Government was not required to pay Jacobs a fee for performing this Contract in the context of a cost-sharing agreement; the very title of this clause states "Cost-Sharing No Fee". However, because of the

termination for convenience, this Contract is clearly no longer a cost-sharing contract as determined by the Federal Circuit. Rather, Jacobs' Contract is purely a cost reimbursement contract entitling Jacobs to the recovery of 100 percent of its performance costs, including fee under FAR 52.249-6(g)(4). Logically, if this Contract is not a cost-sharing contract, then the no fee provision of the cost-sharing arrangement is also not applicable.

Second, the Government's interpretation is no different than the Government's position that the cost share provision applied in the event of a termination for convenience although the Contract was silent with respect to the same. Previously, the Government read language into the contract that simply did not exist to make its argument regarding application of the cost-sharing provision in the event of a termination for convenience. Similarly, in the case of its argument that fee is not a recoverable cost in the event of a termination for convenience, one must read into the contract language that does not exist in the Contract. Nothing in the Contract suggests this no fee provision applies unless cost-sharing is in effect. To the contrary, the title of the clause suggests it only applies in the event of cost-sharing.

Finally, "foregone fee" has no application to resolution of the amount of damages Jacobs is entitled to due to the termination for convenience issue. As acknowledged by the Government, "foregone fee" is separate and distinct from fee and is only recoverable in the context of a cost-sharing agreement. See Defendants' Supplemental Brief on Foregone Fee at page 4. Nonetheless, the fee included in Jacobs' termination proposal tracked the percentages utilized by the parties for "foregone fee". Thus, regardless of the nomenclature, "foregone fee" or "fee", the amount at issue is the same. For Jacobs and its subcontractors, the total amount of fee added to its claimed costs related to the termination for convenience is $565,450. PPFF 6. In calculating amounts due Jacobs, the Government knowingly included this exact same fee as a

reimbursable cost, albeit in part, if cost-sharing was in force. Now, the circumstances have changed (i.e. no cost sharing is in place) and the Government seeks to reverse its position on this fee. For the stated reasons, the Government's new position is not tenable.

### E. Under the CDA the Government is Precluded From Raising a Question of Fact Regarding Total Reimbursable Costs of Performance.

The plain language of the Contract Disputes Act (the "CDA") makes it clear that "the decision of the Agency Board on any question of fact *shall be final and conclusive and shall not be set aside* unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (emphasis added). Here, the Department of Energy Board of Contract Appeals decision dated January 31, 2006 should be considered final and conclusive on the issue of total costs of performance reimbursable under the Contract. J.App. 281-283.

The Contracting Officer's factual conclusions regarding the total allowable cost of the Project ($7,064,721.79), the total amount paid to date by the Government ($5,579,600.60), and the amount then due Jacobs ($72,176.83)[2] all were considered by the EBCA in Jacobs' appeal to recover the amounts declared due and owed in the Contracting Officer's final decision dated September 13, 2002 but that the Government refused to pay. PPFF8. In its January 31, 2006 decision on a motion for summary judgment, the EBCA concluded that Jacobs was entitled to prompt payment of $72,176.83, plus appropriate interest. PPFF 11.[3] To reach that decision, the EBCA necessarily made factual determinations that the total allowable cost of the Project was $7,064,721.79, and the total amount paid to date by the Government was $5,579,600.60. *Id.*

[2] When Jacobs appealed to the Board, Jacobs reserved $200.00 from the total amount which the Contracting Officer had determined was due to avoid any waiver of claims resulting from what could have been construed as final payment.

[3] The Government has not paid this judgment.

Pursuant to § 609(b) of the CDA, those factual decisions of the EBCA are final and conclusive and, therefore, cannot now be questioned by the Government in this action and cannot now be appealed. *See* 41 U.S.C. § 609(b); *Law Mathematics and Tech, Inc. v. United States*, 779 F.2d 675, 678 (Fed. Cir.1985), cert. denied, 476 U.S. 1106 (1986).

**F. The Government is Collaterally Estopped from Now Claiming that the Total <u>Costs Reimbursable Under the Contract are Less Than $7,064,721</u>.**

Under the doctrine of collateral estoppel, a party is precluded from re-litigating an issue upon which there is already a valid and final judgment. *Bianchi v. United States*, 68 Fed. Cl. 442, 460 (2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979) and explaining that "[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). By precluding parties from contesting matters for which they have already been afforded an opportunity to litigate, the doctrine "protects [the opposing party] from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Bianchi*, 68 Fed. Cl. at 460 (citing *Montana v. United* States, 440 U.S. 147, 153-54 (1979)). *See Seravalli v. United States*, 16 Cl. Ct. 424, 428 (1989) ("...it is the practice of the courts generally to refuse to reopen what has been decided, because no litigant deserves an opportunity to go over the same ground twice."). The doctrine applies equally to judicial proceedings and quasi-judicial/agency proceedings. *Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 971 n. 7 (Fed. Cir.1999) ("the same principles of judicial efficiency which justify application of the doctrine of collateral estoppel in judicial

proceedings also justify its application in quasi-judicial [agency] proceedings.") (citations and quotations omitted).

To determine whether the doctrine of collateral estoppel applies, the courts consider whether: 1) the issue at stake is identical to the one involved in the prior proceeding; 2) the issue at stake was litigated in the prior proceeding; 3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the first action; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceedings. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003). *See Northrop Grumman Corp. v. United States*, 70 Fed. Cl. 230, 233 (2006) (citing the collateral estoppel factors set forth above with approval); *DWS, Inc. v. United States*, 18 Cl. Ct. 453, 458-61 (1989) (applying the four (4) collateral estoppel factors and determining that the ASBCA had previously decided issue of negligence). Applying these legal standards to the facts of this case, the Government is precluded from attempting to re-litigate the total allowable cost of the Project, because it was already litigated by the parties in the proceedings before this Court and the Department of Energy Board of Contract Appeals and for which the Board issued a final decision. PPFF 11.

In the Board proceeding, Jacobs sought a summary judgment ruling against the Government in the amount of $72,176.82 based upon the Contracting Officer's conclusion that this amount remained due and owed after application of the cost share provision in the Contract. The Board granted Jacobs request, but germane here, the Board also necessarily determined that $7,064,721, was the total allowable costs, applied 80 percent to this total ($5,651,777.43) and deducted payments of $5,579,600.60 to reach the judgment amount of $72,176.87 after hearing evidence from the parties. PPFF 11. Thus, the total costs of performance raised by the

Government in this matter is identical to that already litigated in the prior Board proceeding, thereby satisfying the first and second factors of the collateral estoppel doctrine. *See DWS, Inc.*, 18 Cl. Ct. at 459-60.

In addition, the Board's determination regarding the total allowable cost was necessary for the Board's decision as to the $72,176.83 then due, thereby satisfying the third factor of the collateral estoppel doctrine. *See DWS, Inc.*, 18 Cl. Ct. at 461; *Northrop*, 70 Fed. Cl. at 233 (citing *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983) to further explain the third factor as "the determination of those issues in the prior action was necessary and essential to the resulting judgment...."). Lastly, because the Government was a party to the previous Board proceeding and was represented by counsel, the Government had a full and fair opportunity to litigate the issue at the Board proceeding, thereby satisfying the fourth factor of the collateral estoppel doctrine. *See DWS, Inc.*, 18 Cl. Ct. at 461.

For the foregoing reasons, the Government should be precluded from re-litigating the total allowable cost of the Project in the amount of $7,064,721, for which there is already a final judgment validating that finding.

## V. CONCLUSION

There is no dispute that Jacobs' total costs of performance, including fee, is $7,064,721.79. Deducting payments to date of $5,579,600.60, Jacobs is due and owed $1,485,421.19. Accordingly, for the reasons set forth herein, Jacobs Engineering Group Inc. respectfully requests that the Court:

Grant Plaintiff's Motion and summarily enter judgment in favor of Plaintiff Jacobs Engineering Group Inc. in the amount of $1,485,421.19 plus interest in accordance with the Contract Disputes Act.

Respectfully submitted,

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W.
12th Floor
Washington, D.C. 20036
(202) 393-7150

Counsel of Record for Plaintiff
JACOBS ENGINEERING GROUP INC.

July 14, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served this 14th day of July 2006, via electronic and first-class mail, postage prepaid, to the following:

James W. Poirier
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Fax: (202) 514-7969

Robert J. Symon