D. Contractor Press Releases

The DOE policy and procedure on news releases requires that all Contractor press releases be reviewed and approved by DOE prior to issuance. Therefore, the Contractor shall, at least ten (10) days prior to the planned issue date, submit a draft copy to the Contracting Officer of any planned press releases related to the work performed under this contract. The Contracting Officer will then obtain necessary reviews and clearances and provide the Contractor with the results of such reviews prior to the planned issue date.

H.031 OFFEROR REPRESENTATIONS AND CERTIFICATIONS (FEB 1991)

The Representations, Certifications, and other Statements of Bidders/Offerors submitted by the Contractor are incorporated into this contract by reference (Version 5.0; 4/92; 90-10) dated September 28, 1992.

H.032(S) SUSPENSION

The contractor agrees that the GPIF and its operation shall not detrimentally affect the operation of Fort Martin Unit 2. The DOE reserves the right to suspend design and construction of the GPIF until all problems affecting the design or construction as they relate to Fort Martin Unit 2 and its operation have been resolved.

H.033(S) PUBLICITY/USE OF NAME ENDORSEMENT

The Contractor shall not use the name of the U. S. DOE/METC or the Monongahela Power Company (MPC), its agents or affiliates, on any product, process, or service which is directly or indirectly related to either this contract or any patent, license or assignment which implements this contract without the prior written approval of the named entity; nor shall the contractor represent that the DOE or the MPC, by entering into this contract, directly or indirectly endorses any product, process or service provided, or to be provided, arising from the work done under this contract. The Contractor agrees that the restrictions in this Article shall apply to all subcontractors or other agents or representatives involved in this GPIF project.

H.034 SAFETY AND HEALTH (NOV 1991)

A. The contractor shall have in place, within 60 days of contract initiation, a safety and health program for the DOE work being performed consistent and in accordance with applicable Federal, State, and local laws, including codes, ordinances, and regulations.

B. The contractor shall take all necessary precautions in the performance of the work under this contract to protect the safety and health of employees and the public and shall comply with all legally required safety and health regulations and requirements.

C. The Contracting Officer or his authorized representative shall have access to and the right to examine the contractor's safety and health program (e.g., written policies and procedures) related to this contract upon request.

D. The contractor agrees to include Paragraphs A, B, and C of this clause in first-tier subcontracts and agrees to enforce the terms of this clause including corrective action for noncompliance. In addition, the Contracting Officer or his authorized representative shall have access to and the right to examine the subcontractor's safety and health program (e.g., written policies and procedures) related to the subcontract upon request.

H.035(S) PERMITS AND LICENSES (NOV 1991)

A. The contractor shall obtain any and all ES&H approvals (e.g., permits and licenses) required by Federal, State, and local laws (including codes, ordinances, and regulations) necessary to complete the DOE work. The contractor shall not discuss any matter concerning amendments of the Monongahela Power Company's permits with any federal, state or local regulatory agency nor shall the contractor initiate contact with the approving agencies regarding these permits and licenses without DOE prior written approval.

Within 60 days of contract initiation, the contractor shall submit to the COR a list of ES&H approvals which, in the contractor's opinion, shall be required to complete the work under this contract. The list shall include the name of the approval being sought, the granting agency, and the submittal/approval schedule. The COR shall be notified as specific items are added or removed from the list and prosecuted through their approval cycles.

B. In obtaining any ES&H approvals, the contractor shall comply with all Federal, State, and local laws; including codes, ordinances, and regulations.

C. The contractor agrees to include Paragraphs A and B of this clause in first-tier subcontracts and agrees to enforce the terms of this clause including corrective action for noncompliance.

H.036 ENVIRONMENTAL PROTECTION (NOV 1991)

A. The contractor shall have in place, within 60 days of contract initiation, an environmental protection program to safeguard environmental resources with respect to the work being performed as required by applicable Federal, State, and local laws, including codes, ordinances, and regulations and as defined in Paragraph B below.

B. In addition to complying with the requirements set forth in the "Clean Air and Water" clause (FAR 52.223-2) in the performance of this contract, the contractor shall comply, as applicable, with the following:

1. The Clean Air Act, as amended;
2. The Clean Water Act, as amended;
3. The Safe Drinking Water Act, as amended;
4. The Resource Conservation and Recovery Act of 1976, as amended;
5. The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended;
6. The Toxic Substances Control Act, as amended;
7. Noise Control Act, as amended;
8. Endangered Species Act;
9. National Historic Preservation Act;
10. The Marine Protection, Research, and Sanctuaries Act of 1972, as amended;
11. Fish and Wildlife Coordination Act;
12. The Coastal Zone Management Act of 1972, as amended;
13. The Coastal Barrier Resource Act of 1982;
14. The Federal Insecticide, Fungicide, and Rodenticide Act, as amended;
15. The Occupational Safety and Health Act, and
16. Other Federal and non-Federal environmental protection laws, codes, ordinances, and regulations, if identified in writing by the contracting officer.

Failure to list a law above, or to identify a requirement having the force and effect of law, shall not be construed as waiving a requirement for the contractor to comply with such law or requirement.

C. The Contracting Officer or his authorized representative shall have, access to and the right to examine the contractor's environmental protection program (e.g., written policies and procedures) related to this contract upon request.

D. The contractor agrees to include Paragraphs A, B, and C of this clause in first-tier subcontracts and agrees to enforce the terms of this clause including corrective action for noncompliance. In addition, the Contracting Officer or his authorized representative shall have access to and the right to examine the subcontractor's environmental protection program (e.g., written policies and procedures) related to the subcontract upon request.

H.037 <u>QUALITY ASSURANCE/QUALITY CONTROL (QA/QC) PROGRAM (NOV 1991)</u>

The contractor shall have in place, within 60 days of contract initiation, a Quality Assurance/Quality Control (QA/QC) program that ensures:

A. The level of accuracy, precision, and reproducibility of data is adequate to fulfill the objectives of the work to be performed under this contract.

B. The safety and health of employees and the public and compliance with policies and procedures that safeguard environmental resources.

The QA/QC program shall, as determined applicable by the contractor, include the following:

1. A procedure to control experimental conditions using technical standards, instructions, and other appropriate means commensurate with the complexity and risk of the work;

2. A procedure to identify, control, and maintain components, equipment, facilities, hardware, and material;

3. A procedure to control handling, storage, shipping, cleaning, and preservation to prevent damage, loss, or deterioration;

4. A procedure to control calibration, maintenance, accountability, and use of measuring and testing equipment used for monitoring and data collection;

5. A method(s) to ensure that designs use sound engineering/scientific principles and current appropriate standards;

6. A procedure to ensure that purchased items and services meet requirements established for them by the performing organization;

7. A procedure to specify when and what type of inspections are required;

8. A procedure to demonstrate that equipment and processes perform as intended; and

9. Procedures to continually improve the quality of the work done for DOE through the improvement of work practices guided by internal performance assessment.

The Contracting Officer or his authorized representative shall have access to and the right to examine the contractor's QA/QC program (e.g., written policies and procedures) related to this contract upon request.

H.038(S) OBSERVATION OF MONONGAHELA POWER COMPANY (MPC) REGULATIONS

In the performance of work under this contract, while on the Monongahela Power Company's property, the Contractor, its employees and subcontractors shall observe all the rules and regulations of the MPC pertaining to the conduct, safety, and security, as determined appropriate by the DOE Contracting Officer and MPC officials.

H.039(S) CONTRACTOR LICENSING

A. Limited Rights Or Restricted Computer Software

Except as may be otherwise specified in this contract as data not subject to this paragraph, the contractor agrees that upon written application by DOE, it will grant to the Government for purposes of design, construction, operation or modification of the Gasification Product Improvement Facility (GPIF), by or for the Government, a nonexclusive, irrevocable, royalty-free license in any limited rights data or restricted computer software with appropriate provisions for confidentiality.

B. Third Party Background Patents

"Third Party Background Patent" means a domestic patent covering an invention or discovery which is not a subject invention and which is owned or controlled by a third party and utilized in the design, construction, operation or modification of the GPIF, infringement of which cannot reasonably be avoided by performance

of work under this contract or under any Cooperative Research and Development Agreement(s) (CRADA) for the operation of the GPIF.

The contractor will obtain for the Government for purposes of design, construction, operation or modification of the GPIF, a nonexclusive license(s) under any third party background patent.

H.040 RIGHTS IN TECHNICAL DATA

A. Delivery of limited rights data. The Contractor shall, at the option of the Contracting Officer, be required to deliver any limited rights data used in the performance of this contract. Such data shall be subject to the provision of DOE Set 304 clause FAR 52.227-14, Rights in Data—General with Alternates I, II, III and V, paragraph (g), "Protection of limited rights data and restricted computer software," and to the "Contractor Licensing" provisions of clause H.039.

1. The limited rights data subject to FAR 52.227-14 are listed below. This listing of data, which are asserted by the Contractor to be limited rights data, does not constitute an admission by the Government that the data is in fact limited rights data.

   PyGas gasifier design data not disclosed in issued U.S. patents.

2. Subject to clause FAR 52.227-14 paragraph (g)(2), any limited rights data so delivered shall be marked with the appropriate "Limited Rights Notice."

3. The Contractor shall not introduce or utilize any limited rights data not identified in (1) above without advance written notification of the Contracting Officer.

B. Minimum technical data deliverable with unlimited rights. Not withstanding any other provision of this Contract, the following technical data first produced under this Contract as a minimum, shall be delivered to the DOE with unlimited rights:

All deliverables specified in the Statement of Work except for PyGas Gasifier design data not disclosed in issued U.S. patents. All information relating to the input and output streams from the gasifier including, but not limited to, their compositions will be delivered.

C. Technical data not required to be delivered. The following data will not be required to be delivered to the Government but shall, at the option of the Contracting Officer, be available for inspection by a designee of the Contracting Officer at the project facility:

PyGas gasifier design data not disclosed in issued U.S. patents.

PyGas Gasifier design data will be delivered to the Government or its designee to the extent it is needed to operate the gasification facility.

H.041 RESTRICTED COMPUTER SOFTWARE

A. The restricted computer software subject to the provisions of clause FAR 52.227-14, Rights in Data—General with Alternates I, II, III and V, paragraph (g), and to the provisions of clause H.039, Contractor Licensing, are listed below. This list of software programs, which are asserted by the Contractor to be restricted computer software, does not constitute an admission by the Government that the software is in fact restricted computer software.

- PyGas Kinetic Computer Model
- CRS Sirrine Mass Balance Computer Program

B. Subject to clause FAR 52.227-14 paragraph (g)(3), any restricted computer software used in the performance of this Contract shall, at the option of the Contracting Officer, be delivered to the Government. Any restricted computer software so delivered shall be marked with the "Restricted Rights Notice" provided in clause FAR 52.227-14 paragraph (g)(3).

C. The Contractor shall not introduce or utilize any restricted computer software not identified in (A) above without advance written notification of the Contracting Officer.

H.099(S) PROJECT CONTINUANCE

The parties hereto agree that upon completion and delivery of the Conceptual Design in Task 4 of the Statement of Work, continuance of the project is contingent upon the Contractor obtaining adequate cost sharing and upon the Contractor being granted an advanced patent waiver, satisfactory to the Contractor, by the DOE Patent Counsel. A written notification advising the Contracting Officer of their decision to discontinue performance shall be submitted by the Contractor within thirty (30) days of completion of Task 4.

In the event that the Contractor elects to discontinue the project, the Contractor will be liable for 20% of the costs incurred during the performance period. Furthermore, the Contractor is required to submit all documentation generated under this contract as well as any materials and equipment purchased.

As set forth in the Statement of Work, Part III, Section J, Attachment A, the Contractor shall not perform Phase II, nor incur costs or future obligations or liabilities relating to Phase II, until authorized to proceed by the Government Contracting Officer. In the event a determination is made to continue into Phase II, the Contracting Officer will issue a bilateral contract modification.

PART II — SECTION I

CONTRACT CLAUSES

I.001 CLAUSES PROVIDED IN FULL TEXT

A. This section consists of the following:

1. Preprinted CONTRACT CLAUSES, DOE SET 304.

2. Additional CONTRACT CLAUSES, consisting of the following included herewith in full text:

I.010 DEAR 952.209-71 — ORGANIZATIONAL CONFLICTS OF INTEREST—GENERAL (APR 1984)

I.020a FAR 52.216-12 — COST-SHARING CONTRACT — NO FEE (APR 1984)

I.023 FAR 52.220-4 — LABOR SURPLUS AREA SUBCONTRACTING PROGRAM (APR 1984)

I.051 FAR 52.230-3 — COST ACCOUNTING STANDARDS (SEP 1987)

I.052 FAR 52.230-4 — ADMINISTRATION OF COST ACCOUNTING STANDARDS (SEP 1987)

I.116 FAR 52.242-13 — BANKRUPTCY (APR 1991)

I.117 FAR 52.215-39 — REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS OTHER THAN PENSIONS (PRB)(JULY 1991)

I.118 FAR 52.227-14 RIGHTS IN DATA — GENERAL, ALTERNATES I, II, III and V

B. The following changes are made to DOE SET 304:

1. Clauses deleted:

Clause 17. FAR 52.215-23 — PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA — MODIFICATIONS (JAN 1991)

Clause 19. FAR 52.215-25 — SUBCONTRACTOR COST OR PRICING DATA — MODIFICATION (APR 1985)

Clause 23. FAR 52.215-31 — WAIVER OF FACILITIES CAPITAL COST OF MONEY

Clause 26. FAR 52.216-8 — FIXED FEE (APR 1984)

| | |
|---|---|
| Clause 27. | FAR 52.216-11 — COST CONTRACT — NO FEE |
| Clause 34. | FAR 52.222-1 — NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (APR 1984) |
| Clause 44. | FAR 52.222-41 — SERVICE CONTRACT ACT OF 1965, AS AMENDED (MAY 1989) |
| Clause 45. | FAR 52.222-42 — STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES (MAY 1989) |
| Clause 52. | FAR 52.232-20 — LIMITATION OF COST (APR 1984) |
| Clause 65. | DEAR 952.245-5 — GOVERNMENT PROPERTY (COST REIMBURSEMENT, TIME & MATERIAL, OR LABOR HOUR CONTRACTS) ALTERNATE I (JUL 1985) |
| Clause 67. | FAR 52.246-8 — INSPECTION OF RESEARCH AND DEVELOPMENT (COST REIMBURSEMENT) (APR 1984) |
| Clause 69. | FAR 52.247-63 — PREFERENCE FOR U.S. FLAG AIR CARRIERS (APR 1984) |
| Clause 70. | FAR 52.247-64 — PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (APR 1984) |
| Clause 71. | DEAR 952.247-70 — FOREIGN TRAVEL (APR 1984) |
| Clause 72. Deleted | FAR 52.249-5 — TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (EDUCATIONAL AND OTHER NON-PROFIT ORGANIZATIONS) (APR 1984 |
| Clause 76. | DOE PR 9-9.102-1 — AUTHORIZATION AND CONSENT (JUN 1979) |
| Clause 82. | FAR 52.227-17 — RIGHTS IN DATA — SPECIAL WORKS (JUN 1987) |
| Clause 84. | DEAR 952.227-71 — PATENT RIGHTS — SMALL BUSINESS FIRMS OR NONPROFIT ORGANIZATIONS (OTHER THAN M&O'S) (APR 1987) |
| Clause 86. | DEAR 927.300(a) — PATENT RIGHTS — SHORT FORM (APR 1984) |

# CONTRACT CLAUSES
# (DOE SET 304)
# COST-REIMBURSEMENT SERVICE CONTRACTS

## CONTENTS


| GENERAL CLAUSES | | | | PA( |
|---|---|---|---|---|
| 1. | DEAR | 952.202-1 | DEFINITIONS (SEP 1985) | 1 |
| 2. | FAR | 52.203-1 | OFFICIALS NOT TO BENEFIT (APR 1984) | 1 |
| 3. | FAR | 52.203-3 | GRATUITIES (APR 1984) | 1 |
| 4. | FAR | 52.203-5 | COVENANT AGAINST CONTINGENT FEES (APR 1984) | 1 |
| 5. | FAR | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1985) | 2 |
| 6. | FAR | 52.203-7 | ANTI-KICKBACK PROCEDURES (OCT 1988) | 2 |
| 7. | FAR | 52.203-12 | LIMITATIONS ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JAN 1990) | 3 |
| 8. | FAR | 52.203-9 | REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY — MODIFICATION (NOV 1990) | 7 |
| 9. | FAR | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (SEPT 1990) | 8 |
| 10. | DEAR | 952.208-70 | PRINTING (APR 1984) | 9 |
| 11. | FAR | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUN 1991) | 9 |
| 12. | FAR | 52.212-13 | STOP-WORK ORDER—ALTERNATE I (APR 1984) | 10 |
| 13. | DEAR | 952.212-72 | UNIFORM REPORTING SYSTEM (MAY 1987) | 11 |
| 14. | FAR | 52.215-1 | EXAMINATION OF RECORDS BY COMPTROLLER GENERAL (APR 1984) | 11 |
| 15. | FAR | 52.215-2 | AUDIT—NEGOTIATION (DEC 1989) | 11 |
| 16. | FAR | 52.215-22 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (JAN 1991) | 12 |
| 17. | FAR | 52.215-23 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA—MODIFICATIONS (DEC 1991) | 13 |
| 18. | FAR | 52.215-24 | SUBCONTRACTOR COST OR PRICING DATA (DEC 1991) | 15 |
| 19. | FAR | 52.215-25 | SUBCONTRACTOR COST OR PRICING DATA—MODIFICATIONS (DEC 1991) | 15 |
| 20. | FAR | 52.215-26 and Alternate I | INTEGRITY OF UNIT PRICES (APR 1991) AND ALTERNATE I (APR 1991) | 16 |
| 21. | FAR | 52.215-27 | TERMINATION OF DEFINED BENEFIT PENSION PLANS (SEP 1989) | 16 |
| 22. | FAR | 52.215-30 | FACILITIES CAPITAL COST OF MONEY (SEP 1987) | 16 |
| 23. | FAR | 52.215-31 | WAIVER OF FACILITIES CAPITAL COST OF MONEY (SEP 1987) | 17 |
| 24. | FAR | 52.215-33 | ORDER OF PRECEDENCE (JAN 1986) | 17 |
| 25. | DEAR | 952.216-7 Alternates I & II | ALLOWABLE COST AND PAYMENT (JUL 1991) | 17 |
| 26. | FAR | 52.216-8 | FIXED FEE (APR 1984) | 19 |
| 27. | FAR | 52.216-11 | COST CONTRACT—NO FEE (APR 1984) | 19 |
| 28. | DEAR | 952.217-70 | ACQUISITION OF REAL PROPERTY (APR 1984) | 20 |
| 29. | FAR | 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS (FEB 1990) | 20 |
| 30. | FAR | 52.219-9 | SMALL BUSINESS AND SMALL DISADVANTAGED BUSINESS SUBCONTRACTING PLAN (JAN 1991) | 21 |
| 31. | FAR | 52.219-13 | UTILIZATION OF WOMEN-OWNED SMALL BUSINESSES (AUG 1986) | 23 |
| 32. | FAR | 52.219-16 | LIQUIDATED DAMAGES—SMALL BUSINESS SUBCONTRACTING PLAN (AUG 1989) | 24 |
| 33. | FAR | 52.220-3 | UTILIZATION OF LABOR SURPLUS AREA CONCERNS (APR 1984) | 24 |
| 34. | FAR | 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (APR 1984) | 25 |
| 35. | FAR | 52.222-2 | PAYMENT FOR OVERTIME PREMIUMS (JUL 1990) | 25 |
| 36. | FAR | 52.222-3 | CONVICT LABOR (APR 1984) | 26 |
| 37. | FAR | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT—OVERTIME COMPENSATION (MAR 1986) | 26 |
| 38. | FAR | 52.222-18 | NOTIFICATION OF EMPLOYEES RIGHTS CONCERNING PAYMENT OF UNION DUES AND FEES (MAY 1992) | 27 |
| 39. | FAR | 52.222-26 | EQUAL OPPORTUNITY (APR 1984) | 27 |
| 40. | FAR | 52.222-28 | EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS (APR 1984) | 28 |
| 41. | FAR | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (APR 1984) | 28 |
| 42. | FAR | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (APR 1984) | 30 |
| 43. | FAR | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (JAN 1988) | 31 |
| 44. | FAR | 52.222-41 | SERVICE CONTRACT ACT OF 1965, AS AMENDED (MAY 1989) | 32 |
| 45. | FAR | 52.222-42 | STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES (MAY 1989) | 37 |
| 46. | FAR | 52.223-2 | CLEAN AIR AND WATER (APR 1984) | 37 |

| | | | | |
|---|---|---|---|---|
| 47. | FAR | 52.223-6 | DRUG-FREE WORKPLACE (JUL 1990) | 38 |
| 48. | DEAR | 952.224-70 | PAPERWORK REDUCTION ACT (APR 1984) | 40 |
| 49. | FAR | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (MAY 1992) | 40 |
| 50. | FAR | 52.228-7 | INSURANCE—LIABILITY TO THIRD PERSONS (APR 1984) | 41 |
| 51. | FAR | 52.232-17 | INTEREST (JAN 1991) | 42 |
| 52. | FAR | 52.232-20 | LIMITATION OF COST (APR 1984) | 43 |
| 53. | FAR | 52.232-22 | LIMITATION OF FUNDS (APR 1984) | 44 |
| 54. | FAR | 52.232-23 | ASSIGNMENT OF CLAIMS (JAN 1986) | 45 |
| 55. | FAR | 52.232-25 | PROMPT PAYMENT (APR 1989) | 45 |
| 56. | FAR | 52.232-28 | ELECTRONIC FUNDS TRANSFER PAYMENT METHODS (APR 1989) | 48 |
| 57. | FAR | 52.233-1 | DISPUTES ALTERNATE I (DEC 1991) | 49 |
| 58. | FAR | 52.233-3 and Alternate I | PROTEST AFTER AWARD (AUG 1989) AND ALTERNATE I (JUN 1985) | 50 |
| 59. | DEAR | 952.235-70 | KEY PERSONNEL (APR 1984) | 51 |
| 60. | FAR | 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS (APR 1984) | 51 |
| 61. | FAR | 52.243-2 Alternates I & V | CHANGES (COST-REIMBURSEMENT) ALTERNATES I AND V (AUG 1987) | 51 |
| 62. | FAR | 52.244-2 | SUBCONTRACTS (COST-REIMBURSEMENT AND LETTER CONTRACTS) (JUL 1985) | 52 |
| 63. | FAR | 52.244-5 | COMPETITION IN SUBCONTRACTING (APR 1984) | 54 |
| 64. | DEAR | 952.245-5 | GOVERNMENT PROPERTY—COST-REIMBURSEMENT, TIME-AND-MATERIAL, OR LABOR-HOUR CONTRACTS (JAN 1986) | 54 |
| 65. | DEAR | 952.245-5 | GOVERNMENT PROPERTY (COST REIMBURSEMENT, TIME & MATERIAL, OR LABOR HOUR CONTRACTS) ALTERNATE I (JUL 1985) | 59 |
| 66. | FAR | 52.246-5 | INSPECTION OF SERVICES—COST-REIMBURSEMENT (APR 1984) | 60 |
| 67. | FAR | 52.246-8 And Alternate I | INSPECTION OF RESEARCH AND DEVELOPMENT (COST-REIMBURSEMENT) BASIC AND ALTERNATE I (APR 1984) | 60 |
| 68. | FAR | 52.246-25 | LIMITATION OF LIABILITY—SERVICES (APR 1984) | 62 |
| 69. | FAR | 52.247-63 | PREFERENCE FOR U.S.-FLAG AIR CARRIERS (APR 1984) | 62 |
| 70. | FAR | 52.247-64 | PREFERENCE FOR PRIVATELY OWNED U.S.-FLAG COMMERCIAL VESSELS (APR 1984) | 63 |
| 71. | DEAR | 952.247-70 | FOREIGN TRAVEL (APR 1984) | 64 |
| 72. | FAR | 52.249-5 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (EDUCATIONAL AND OTHER NON-PROFIT INSTITUTIONS) (APR 1984) | 64 |
| 73. | FAR | 52.249-6 | TERMINATION (COST-REIMBURSEMENT) (MAY 1986) | 66 |
| 74. | FAR | 52.249-14 | EXCUSABLE DELAYS (APR 1984) | 69 |
| 75. | DEAR | 952.251-70 | CONTRACTOR EMPLOYEE TRAVEL DISCOUNTS (APR 1989) | 69 |
| 76. | DOE PR | 9-9.102-1 | AUTHORIZATION AND CONSENT (JUN 1979) | 70 |
| 77. | DOE PR | 9-9.102-2 | AUTHORIZATION AND CONSENT (JUN 1979) | 70 |
| 78. | DOE PR | 9-9.104 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (JUN 1979) | 70 |
| 79. | DOE PR | 9-9.110(c) | REPORTING OF ROYALTIES (JUN 1979) | 71 |
| 80. | FAR | 52.227-14 | RIGHTS IN DATA—GENERAL WITH ALTERNATES I AND V (JUN 1987) | 71 |
| 81. | FAR | 52.227-16 | ADDITIONAL DATA REQUIREMENTS (JUN 1987) | 75 |
| 82. | FAR | 52.227-17 | RIGHTS IN DATA—SPECIAL WORKS (JUN 1987) | 75 |
| 83. | FAR | 52.227-23 | RIGHTS TO PROPOSAL DATA (TECHNICAL) (JUN 1987) | 76 |
| 84. | DEAR | 952.227-71 | PATENT RIGHTS—SMALL BUSINESS FIRMS OR NONPROFIT ORGANIZATIONS (OTHER THAN M&Os) (APR 1987) | 76 |
| 85. | DEAR | 927.300(a) | PATENT RIGHTS—LONG FORM (APR 1984) | 81 |
| 86. | DEAR | 927.300(a) | PATENT RIGHTS—SHORT FORM (APR 1984) | 88 |


JApp 00030

1. DEAR 952.202-1 DEFINITIONS (SEP 1985)

(a) The term "Head of Agency" means the Secretary, Deputy Secretary or Under Secretary of the Department of Energy and the Chairman, Federal Energy Regulatory Commission.

(b) "Contracting Officer" means a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings. The term includes certain authorized representatives of the Contracting Officer acting within the limits of their authority as delegated by the Contracting Officer.

(c) Except as otherwise provided in this contract, the term "subcontracts" includes, but is not limited to, purchase orders and changes and modifications to purchase orders under this contract.

(d) The term "DOE" means the Department of Energy and "FERC" means the Federal Energy Regulatory Commission.

2. FAR 52.203-1 OFFICIALS NOT TO BENEFIT (APR 1984)

No member of or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this contract, or to any benefit arising from it. However, this clause does not apply to this contract to the extent that this contract is made with a corporation for the corporation's general benefit.

3. FAR 52.203-3 GRATUITIES (APR 1984)

(a) The right of the Contractor to proceed may be terminated by written notice if, after notice and hearing, the agency head or a designee determines that the Contractor, its agent, or another representative— (1) Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and

(2) Intended, by the gratuity, to obtain a contract or favorable treatment under a contract.

(b) The facts supporting this determination may be reviewed by any court having lawful jurisdiction.

(c) If this contract is terminated under paragraph (a) above, the Government is entitled—

(1) To pursue the same remedies as in a breach of the contract; and

(2) In addition to any other damages provided by law, to exemplary damages of not less than 3 nor more than 10 times the cost incurred by the Contractor in giving gratuities to the person concerned, as determined by the agency head or a designee.

(This subparagraph (c)(2) is applicable only if this contract uses money appropriated to the Department of Defense).

(d) The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

4. FAR 52.203-5 COVENANT AGAINST CONTINGENT FEES (APR 1984)

(a) The Contractor warrants that no person or agency has been employed or retained to solicit or obtain this contract upon an agreement or understanding for a contingent fee, except a bona fide employee or agency. For breach or violation of this warranty, the Government shall have the right to annul this contract without liability or in its discretion, to

deduct from the contract price or consideration, or otherwise recover the full amount of the contingent Fee.

(b) "Bona fide agency," as used in this clause, means an established commercial or selling agency, maintained by a contractor for the purpose of securing business, that neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds itself out as being able to obtain any Government contract or contracts through improper influence.

"Bona fide employee," as used in this clause, means a person, employed by a contractor and subject to the contractor's supervision and control as to time, place, and manner of performance, who neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds out as being able to obtain any Government contract or contracts through improper influence.

"Contingent fee," as used in this clause, means any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing a Government contract.

"Improper influence," as used in this clause, means any influence that induces or tends to induce a Government employee or officer to give consideration or to act regarding a Government contract on any basis other than the merits of the matter.

5. <u>FAR 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1985)</u>

(a) Except as provided in (b) below, the Contractor shall not enter into any agreement with an actual or prospective subcontractor, nor otherwise act in any manner, which has or may have the effect of restricting sales by such subcontractors directly to the Government of any item or process (including computer software) made or furnished by the subcontractor under this contract or under any follow-on production contract.

(b) The prohibition in (a) above does not preclude the Contractor from asserting rights that are otherwise authorized by law or regulation.

(c) The Contractor agrees to incorporate the substance of this clause, including this paragraph (c), in all subcontracts under this contract.

6. <u>FAR 52.203-7 ANTI-KICKBACK PROCEDURES (OCT 1988)</u>

(a) Definitions.

"Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

"Person," as used in this clause, means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual.

"Prime contract," as used in this clause, means a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment, or services of any kind.

"Prime Contractor" as used in this clause, means a person who has entered into a prime contract with the United States.

"Prime Contractor employee," as used in this clause, means any officer, partner, employee, or agent of a prime Contractor.

"Subcontract," as used in this clause, means a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services of any kind under a prime contract.

JApp 00032

"Subcontractor," as used in this clause, (1) means any person, other than the prime Contractor, who offers to furnish or furnishes any supplies, materials, equipment, or services of any kind under a prime contract or subcontract entered into in connection with such prime contract, and (2) includes any person who offers to furnish or furnishes general supplies to the prime Contractor or a higher tier subcontractor.

"Subcontractor employee," as used in this clause, means any officer, partner, employee, or agent of a subcontractor.

(b) The Anti-Kickback Act of 1986 (41 U.S.C. 51-58)(the Act) prohibits any person from—

(1) Providing or attempting to provide or offering to provide any kickback;

(2) Soliciting, accepting, or attempting to accept any kickback; or

(3) Including, directly or indirectly, the amount of any kickback in the contract price charged by a prime Contractor to the United States or in the contract price charged by a subcontractor to a prime Contractor or higher tier subcontractor.

(c)(1) The Contractor shall have in place and follow reasonable procedures designed to prevent and detect possible violations described in paragraph (b) of this clause in its own operations and direct business relationships.

(2) When the Contractor has reasonable grounds to believe that a violation described in paragraph (b) of this clause may have occurred, the Contractor shall promptly report in writing the possible violation. Such reports shall be made to the inspector general of the contracting agency, the head of the contracting agency if the agency does not have an inspector general, or the Department of Justice.

(3) The Contractor shall cooperate fully with any Federal agency investigating a possible violation described in paragraph (b) of this clause.

(4) The Contracting Officer may (i) offset the amount of the kickback against any monies owed by the United States under the prime contract, and/or (ii) direct that the Prime Contractor withhold from sums owed a subcontractor under the prime contract monies withheld, the amount of the kickback. The Contracting Officer may order that monies withheld under subdivision (c)(4)(ii) of this clause be paid over to the Government unless the Government has already offset those monies under subdivision (c)(4)(i) of this clause. In either case, the Prime Contractor shall notify the Contracting Officer when the monies are withheld.

(5) The Contractor agrees to incorporate the substance of this clause, including subparagraph (c)(5) but excepting subparagraph (c)(1), in all subcontracts under this contract.

7. <u>FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JAN 1990)</u>

(a) Definitions.

"Agency," as used in this clause, means executive agency as defined in 2.101.

"Covered Federal action," as used in this clause, means any of the following Federal actions:

(a) The awarding of any Federal contract.

(b) The making of any Federal grant.

(c) The making of any Federal Loan.

(d) The entering into of any cooperative agreement.

(e) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

"Indian tribe" and "tribal organization" as used in this clause, have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B) and include Alaskan Natives.

"Influencing or attempting to influence," as used in this clause, means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

"Local government," as used in this clause, means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

"Officer or employee of an agency," as used in this clause, includes the following individuals who are employed by an agency:

(a) An individual who is appointed to a position in the Government under title 5, United States Code, including a position under a temporary appointment.

(b) A member of the uniformed services, as defined in subsection 101(3), title 37, United States Code.

(c) A special Government employee, as defined in section 202, title 18, United States Code.

(d) An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, United States Code, appendix 2.

"Person," as used in this clause, means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit, or not for profit. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Reasonable compensation," as used in this clause, means with respect to a regularly employed officer or employee of any person, compensation that is consistent with the normal compensation for such officer or employee for work that is not furnished to, not funded by, or not furnished in cooperation with the Federal Government.

"Reasonable payment," as used in this clause, means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

"Recipient," as used in this clause, includes the Contractor and all subcontractors. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Regularly employed," as used in this clause,means, with respect to an officer or employee of a person requesting or receiving a Federal contract, an officer or employee who is employed by such person for at least 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract. An officer or employee who is employed by such person for less than 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

"State," as used in this clause, means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, an agency or instrumentality of a State, and multi-State, regional, or interstate entity having governmental duties and powers.

JApp 00034

(b) Prohibitions (1) Section 1352 of title 31, United States Code, among other things, prohibits a recipient of a Federal contract, grant, loan, or cooperative agreement from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions: the awarding of any Federal contract; the making of any Federal grant; the making of any Federal loan, the entering into of any cooperative agreement; or the modification of any Federal contract, grant, loan, or cooperative agreement.

(2) The Act also requires Contractors to furnish a disclosure if any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, or an officer or employee of Congress, or an employee of a Member of Congress in connection with a Federal contract, grant, loan, or cooperative agreement.

(3) The prohibitions of the Act do not apply under the following conditions:

(i) Agency and legislative liaison by own employees. (A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action if the payment is for agency and legislative liaison activities not directly related to a covered Federal action.

(B) For purposes of subdivision (b)(3)(i)(A) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(C) The following agency and legislative liaison activities are permitted at any time where they are not related to a specific solicitation for any covered Federal action:

(1) Discussing with an agency the qualities and characteristics (including individual demonstrations) of the person's products or services, conditions or terms of sale, and service capabilities.

(2) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(D) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action.

(1) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(2) Technical discussions regarding the preparation of an unsolicited proposal prior to its official submission; and

(3) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Pub.L.95-507, and subsequent amendments.

(E) Only those services expressly authorized by subdivision (b)(3)(i)(A) of this clause are permitted under this clause.

(ii) Professional and technical services (A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of—

(1) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification or a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(2) Any reasonable payment to a person other than an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action. Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(B) For purposes of subdivision (b)(3)(ii)(A) of this clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline. For example, drafting of a legal document accompanying a bid or proposal by a lawyer is allowable.

Similarly, technical advice provided by an engineer on the performance or operational capability of a piece of equipment rendered directly in the negotiation of a contract is allowable. However, communications with the intent to influence made by a professional (such as a licensed lawyer) or a technical person (such as a licensed accountant) are not allowable under this section unless they provide advice and analysis directly applying their professional or technical expertise and unless the advice or analysis is rendered directly and solely in the preparation, submission or negotiation of a covered Federal action. Thus, for example, communications with the intent to influence made by a lawyer that do not provided legal advice or analysis directly and solely related to the legal aspects of his or her client's proposal, but generally advocate one proposal over another are not allowable under this section because the lawyer is not providing professional legal services. Similarly, communications with the intent to influence made by an engineer providing an engineering analysis prior to the preparation or submission of a bid or proposal are not allowable under this section since the engineer is providing technical services but not directly in the preparation, submission, or negotiation of a covered Federal action.

(C) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those required by law or regulation and any other requirements in the actual award documents.

(D) Only those services expressly authorized by subdivisions (b)(3)(ii)(A)(1) and (2) of this clause are permitted under this clause.

(E) The reporting requirements of FAR 3.803(a) shall not apply with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(iii) Disclosure (A) The Contractor who requests or receives from an agency a Federal contract shall file with that agency a disclosure form, OMB standard form LLL, Disclosure of Lobbying Activities, if such person has made or has agreed to make any payment using nonappropriated funds (to include profits from any covered Federal action), which would be prohibited under subparagraph (b)(1) of this clause, if paid for with appropriated funds.

(B) The Contractor shall file a disclosure form at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under subparagraph (c)(1) of this clause. An event that materially affects the accuracy of the information reported includes—

(1) A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

(2) A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or

(3) A change in the officer(s), employee(s), or Member(s) contacted to influence or attempt to influence a covered Federal action.

JApp 00036

(C) The Contractor shall require the submittal of a certification, and if required, a disclosure form by any person who requests or receives any subcontract exceeding $100,000 under the Federal contract.

(D) All subcontractor disclosure forms (but not certifications) shall be forwarded from tier to tier until received by the prime Contractor. The prime Contractor shall submit all disclosures to the Contracting Officer at the end of the calendar quarter in which the disclosure form is submitted by the subcontractor. Each subcontractor certification shall be retained in the subcontract file of the awarding Contractor.

(iv) Agreement. The Contractor agrees not to make any payment prohibited by the clause.

(v) Penalties (A) Any person who makes an expenditure prohibited under paragraph (a) of this clause or who fails to file or amend the disclosure form to be filed or amended by paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352. An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

(B) Contractors may rely without liability on the representation made by their subcontractors in the certification and disclosure form.

(vi) Cost allowability. Nothing in this clause makes allowable or reasonable any cost which would otherwise be unallowable or unreasonable. Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any other provision.

8. <u>FAR 52.203-9 REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY — MODIFICATION (NOV 1990)</u>

(a) Definitions. The definitions set forth in FAR 3.104-4 are hereby incorporated in this clause.

(b) The Contractor agrees that it will execute the certification set forth in paragraph (c) of this clause when requested by the Contracting Officer in connection with the execution of any modification of this contract.

(c) Certification. As required in paragraph (b) of this clause, the officer or employee responsible for the modification proposal shall execute the following certification:

CERTIFICATE OF PROCUREMENT INTEGRITY — MODIFICATION (NOV 1990)

(1) I, [Name of certifier] am the officer or employee responsible for the preparation of this modification proposal and hereby certify that, to the best of my knowledge and belief, with the exception of any information described in this certification, I have no information concerning a violation or possible violation of subsection 27(a), (b), (d), or (f) of the Office of Federal Procurement Policy Act, as amended* (41 U.S.C. 423), (hereinafter referred to as "the Act"), as implemented in the FAR, occurring during the conduct of this procurement (contract and modification number).

(2) As required by subsection 27(e)(1)(B) of the Act, I further certify that to the best of my knowledge and belief, each officer, employee, agent, representative, and consultant of [Name of Offeror] who has participated personally and substantially in the preparation or submission of this proposal has certified that he or she is familiar with, and will comply with, the requirements of subsection 27(a) of the Act, as implemented in the FAR, and will report immediately to me any information concerning a violation or possible violation of subsections 27(a), (b), (d), or (f) of the Act, as implemented in the FAR, pertaining to this procurement.

---

* Subsections 27(a), (b), and (d) are effective on December 1, 1990. Subsection 27(f) is effective on June 1, 1991.

(3) Violations or possible violations: (Continue on plain bond paper if necessary and label Certificate of Procurement Integrity—Modification (Continuation Sheet), ENTER NONE IF NONE EXISTS) ______

______

______

[Signature of the officer or employee responsible for title modification proposal and date]

[Typed name of the officer or employee responsible for the modification proposal]

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER TITLE 18, UNITED STATES CODE, SECTION 1001.

(End of certification)

(d) In making the certification in paragraph (2) of the certificate, the officer or employee of the competing Contractor responsible for the offer or bid, may rely upon a one-time certification from each individual required to submit a certification to the competing Contractor, supplemented by periodic training. These certifications shall be obtained at the earliest possible date after an individual required to certify begins employment or association with the contractor. If a contractor decides to rely on a certification executed prior to the suspension of section 27 (i.e., prior to December 1, 1989), the Contractor shall ensure that an individual who has so certified is notified that section 27 has been reinstated. These certifications shall be maintained by the Contractor for a period of 6 years from the date a certifying employee's employment with the company ends or, for an agency, representative, or consultant, 6 years from the date such individual ceases to act on behalf of the contractor.

(e) The certification required by paragraph (c) of this clause is a material representation of fact upon which reliance will be placed in executing this modification.

9. FAR 52.203-10 PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (SEP 1990)

(a) The Government, at its election, may reduce the price of a fixed-price type contract or contract modification and the total cost and fee under a cost-type contract or contract modification by the amount of profit or fee determined as set forth in paragraph (b) of this clause if the head of the contracting activity or his or her designee determines that there was a violation of subsection 27(a) of the Office of Federal Procurement Policy Act, as amended (41 U.S.C. 423), as implemented in the FAR. In the case of a contract modification, the fee subject to reduction is the fee specified in the particular contract modification at the time of execution, except as provided in subparagraph (b)(5) of this clause.

(b) The price or fee reduction referred to in paragraph (a) of this clause shall be—

(1) For cost-plus-fixed-fee contracts, the amount of the fee specified in the contract at the time of award;

(2) For cost-plus-incentive-fee contracts, the target fee specified in the contract at the time of award, notwithstanding any minimum fee or "fee floor" specified in the contract;

(3) For-cost-plus-award-fee contracts—

(i) The base fee established in the contract at the time of contract award;

(ii) If no base fee is specified in the contract, 30 percent of the amount of each award fee otherwise payable to the Contractor for each award fee evaluation period or at each award fee determination point

JApp 00038

(4) For fixed-price-incentive contracts, the Government may—

(i) Reduce the contract target price and contract target profit both by an amount equal to the initial target profit specified in the contract at the time of contract award; or

(ii) If an immediate adjustment to the contract target price and contract target profit would have a significant adverse impact on the incentive price revision relationship under the contract, or adversely affect the contract financing provisions, the Contracting Officer may defer such adjustment until establishment of the total final price of the contract. The total final price established in accordance with the incentive price revision provisions of the contract shall be reduced by an amount equal to the initial target profit specified in the contract at the time of contract award and such reduced price shall be the total final contract price.

(5) For firm-fixed-price contracts or contract modifications, by 10 percent of the initial contract price; 10 percent of the contract modification price; or a profit amount determined by the Contracting Officer from records or documents in existence prior to the date of the contract award or modification.

(c) The Government may, at its election, reduce a Prime contractor's price or fee in accordance with the procedures of paragraph (b) of this clause for violations of the Act by its subcontractors by an amount not to exceed the amount of profit or fee reflected in the subcontract at the time the subcontract was first definitively priced.

(d) In addition to the remedies in paragraphs (a) and (c) of this clause, the Government may terminate this contract for default. The rights and remedies of the Government specified herein are not exclusive, and are in addition to any other rights and remedies provided by law or under this contract.

10. DEAR 952.208-70 PRINTING (APR 1984)

The contractor shall not engage in, nor subcontract for, any printing (as that term is defined in Title I of the U.S. Government Printing and Binding Regulations in effect on the effective date of this contract) in connection with the performance of work under this contract. Provided, however, that performance of a requirement under this contract involving the duplication of less than 5,000 copies of a single unit, or no more than 25,000 units in the aggregate of multiple units, will not be deemed to be printing. A unit is defined as one sheet, size 8 1/2 by 11 inches one side only, one color. A requirement is defined as a single publication document.

(1) The term "printing" includes the following processes: composition, plate making, presswork, binding, microform publishing, or the end items produced by such processes.

(2) If fulfillment of the contract will necessitate reproduction in excess of the limits set forth above, the contractor shall notify the contracting officer in writing and obtain the contracting officer's approval prior to acquiring on DOE's behalf production, acquisition, and dissemination of printed matter. Such printing must be obtained from the Government Printing Office (GPO), a contract source designated by GPO or a Joint Committee on Printing authorized federal printing plant.

(3) Printing services not obtained in compliance with this guidance will result in the cost of such printing being disallowed.

(4) The Contractor will include in each of his subcontracts hereunder a provision substantially the same as this clause including this paragraph (4)

11. FAR 52.209-6 PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUN 1991)

(a) The Government suspends or debars Contractors to protect the Government's interests. The Contractor shall not enter into any subcontract in excess of the small purchase limitation at FAR 13.000 with a Contractor that has been debarred, suspended, or proposed for debarment unless there is a compelling reason to do so.

(b) The Contractor shall require each proposed first-tier subcontractor, whose subcontract will exceed the small purchase limitation at FAR 13.000, to disclose to the Contractor, in writing, whether as of the time of award of the subcontract, the subcontractor, or its principals, is or is not debarred, suspended, or proposed for debarment by the Federal Government.

(c) A corporate officer or a designee of the Contractor shall notify the Contracting Officer, in writing, before entering into a subcontract with a party that is debarred, suspended, or proposed for debarment (see FAR 9.404 for information on the List of Parties Excluded from Procurement Programs). The notice must include the following:

(1) The name of the subcontractor.

(2) The Contractor's knowledge of the reasons for the subcontractor being on the list of Parties Excluded from Procurement Programs.

(3) The compelling reason(s) for doing business with the subcontractor notwithstanding its inclusion on the List of Parties Excluded From Procurement Programs.

(4) The systems and procedures the Contractor has established to ensure that it is fully protecting the Government's interests when dealing with such subcontractor in view of the specific basis for the party's debarment, suspension, or proposed debarment.

12. FAR 52.212-13 STOP-WORK ORDER—ALTERNATE I (APR 1984)

(a) The Contracting Officer may, at any time, by written order to the Contractor, require the Contractor to stop all, or any part, of the work called for by this contract for a period of 90 days after the order is delivered to the Contractor, and for any further period to which the parties may agree. The order shall be specifically identified as a stop-work order issued under this clause. Upon receipt of the order, the Contractor shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allowable to the work covered by the order during the period of work stoppage. Within a period of 90 days after a stop-work order is delivered to the Contractor, or within any extension of that period to which the parties shall have agreed, the Contracting Officer shall either—

(1) Cancel the stop-work order; or

(2) Terminate the work covered by the order as provided in the Termination clause of the contract.

(b) If a stop-work order issued under this clause is canceled or the period of the order or any extension thereof expires, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule, the estimated cost, the fee, or a combination thereof, and in any other terms of the contract that may be affected, and the contract shall be modified, in writing, accordingly, if—

(1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and

(2) The Contractor asserts its right to the adjustment within 30 days after the end of the period of work stoppage; provided, that, if the Contracting Officer decides the facts justify the action, the Contracting Officer may receive and act upon the claim submitted at any time before final payment under this contract.

(c) If a stop-work order is not canceled and the work covered by the order is terminated for the convenience of the Government, the Contracting Officer shall allow reasonable costs resulting from the stop-work order in arriving at the termination settlement.

(d) If a stop-work order is not canceled and the work covered by the order is terminated for default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable costs resulting from the stop-work order.

JApp 00040

13. DEAR 952.212-72 UNIFORM REPORTING SYSTEM (MAY 1987)

Contractor shall prepare and submit (postage prepaid) the plans and reports indicated on the DOE Form 1332.1, Reporting Requirements Checklist or amendments to this checklist included in this contract, to the addressees and in the specified number of copies as designated in the attachment to the checklist. The contractor shall prepare the specified plans and reports in accordance with the formats and structure set forth in DOE Order 1332.1A, or any later version in effect on the effective date of the contract. The contractor shall be responsible for levying appropriate reporting requirements on any subcontractors in such a manner to ensure that data submitted by the subcontractor to the contractor is timely and compatible with the data elements that the contractor is responsible for submitting to DOE. Plans and reports submitted in compliance with this clause are in addition to any other reporting requirements of this contract.

14. FAR 52.215-1 EXAMINATION OF RECORDS BY COMPTROLLER GENERAL (APR 1984)

(a) This clause applies if this contract exceeds $10,000 and was entered into by negotiation.

(b) The Comptroller General of the United States or a duly authorized representative from the General Accounting Office shall, until 3 years after final payment under this contract or for any shorter period specified in Federal Acquisition Regulation (FAR) Subpart 4.7, Contractor Records Retention, have access to and the right to examine any of the Contractor's directly pertinent books, documents, papers, or other records involving transactions related to this contract.

(c) The Contractor agrees to include in first-tier subcontracts under this contract a clause to the effect that the Comptroller General or a duly authorized representative from the General Accounting Office shall, until 3 years after final payment under the subcontract or for any shorter period specified in FAR Subpart 4.7, have access to and the right to examine any of the subcontractor's directly pertinent books, documents, papers, or other records involving transactions related to the subcontract.

"Subcontract," as used in this clause, excludes (1) purchase orders not exceeding $10,000 and (2) subcontracts or purchase orders for public utility services at rates established to apply uniformly to the public, plus any applicable reasonable connection charge.

(d) The periods of access and examination in paragraphs (b) and (c) above for records relating to (1) appeals under the Disputes clause, (2) litigation or settlement of claims arising from the performance of this contract, or (3) costs and expenses of this contract to which the Comptroller General or a duly authorized representative from the General Accounting Office has taken exception shall continue until such appeals, litigation, claims, or exceptions are disposed of.

15. FAR 52.215-2 AUDIT—NEGOTIATION (DEC 1989)

(a) Examination of costs. If this is a cost-reimbursement, incentive, time-and-materials, labor-hour, or price-redeterminable contract, or any combination of these, the Contractor shall maintain—and the Contracting Officer or representatives of the Contracting Officer shall have the right to examine and audit—books, records, documents, and other evidence and accounting procedures and practices, regardless of form (e.g. machine readable media such as disk, tape, etc.) or type (e.g., data bases, applications software, data base management software, utilities, etc.), sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred in performing this contract. This right of examination shall include inspection at all reasonable times of the Contractor's plants, or parts of them, engaged in performing the contract.

(b) Cost or pricing data. If, pursuant to law, the Contractor has been required to submit cost or pricing data in connection with pricing this contract or any modification to this contract, the Contracting Officer or representatives of the Contracting Officer who are employees of the Government shall have the right to examine and audit all of the Contractor's books, records, documents, and other data, regardless of form (e.g., machine readable media such as disk, tape, etc.) or type (e.g., data bases, applications software, data base management software, utilities, etc.), including computations and projections, related to