PyGAS™ TERMINATION

## CONTRACT COSTS -- ACTUAL HOURS SUMMARY TO DATE

| | Dept. | 1993 | 1994 | 1995 Total YTD | Aug-95 9001 | Aug-95 9002 | 1995 Base |
|---|---|---|---|---|---|---|---|
| Project Mgmt | 5 | - | - | 235.0 | | | 235.0 |
| Boiler Systems Mgmt | 58 | - | - | 33.5 | | | 33.5 |
| Project Mgmt | 83 | - | - | 162.0 | | 4.0 | 158.0 |
| *Total Project Management* | | - | - | 430.5 | - | 4.0 | 426.5 |
| *Production Control* | 6 | - | - | 630.5 | | | 630.5 |
| *Purchasing* | 23 | - | - | 119.0 | | | 119.0 |
| *Research & Development* | 40 | 561.0 | 3,027.3 | 6,816.9 | 79.6 | 218.2 | 6,519.1 |
| Engineering Administration | 4 | 20.0 | 223.0 | - | | | - |
| Riley Environmental | 31 | - | - | 11.0 | | | 11.0 |
| Product Design | 33 | 6.0 | 44.0 | - | | | - |
| Structural Steel Eng | 38 | - | 11.5 | - | | | - |
| Boiler Design & Results | 39 | 67.0 | - | 402.0 | | | 402.0 |
| Mechanical Design | 62 | - | 11.0 | 111.0 | | | 111.0 |
| Design Graphics | 64 | - | 28.0 | 198.5 | | | 198.5 |
| Controls & Auxiliary Systems | 70 | - | 2.5 | 23.0 | | | 23.0 |
| Stress Analysis | 72 | 8.0 | 52.0 | 783.0 | | 14.0 | 769.0 |
| Fuel Engineering Design | 75 | 109.0 | - | | | | - |
| Performance Desing Engr | 81 | 58.0 | 251.0 | 2.0 | | | 2.0 |
| Engineering | 86 | 74.0 | - | - | | | - |
| *Total Engineering* | | 342.0 | 623.0 | 1,530.5 | - | 14.0 | 1,516.5 |
| TOTALS | | 903.0 | 3,650.3 | 9,527.4 | 79.6 | 236.2 | 9,211.6 |

JApp 00221

## OTHER DIRECT COSTS DETAIL

| | BASE CONTRACT COSTS | | | EWA 9002 - CLOSURE COSTS | | | |
|---|---|---|---|---|---|---|---|
| FISCAL YEAR | 1995 | 1996 | TOTAL | 1995 | 1996 | TOTAL | REF |
| **I. PROFESSIONAL SERVICES** | | | | | | | |
| Price Waterhouse | | | $ - | $ 2,500 | | $ 2,500 | |
| Legal Fees-L.Rawicz | | | $ - | $ 10,000 | | $ 10,000 | |
| Pygas Patents[1] | | | $ - | $ 20,000 | | $ 20,000 | |
| Totals | $ - | $ - | $ - | $ 32,500 | $ - | $ 32,500 | |
| **II. TRAVEL** | | | | | | | |
| TO: Greenville, SC, 1 Day, 2 Trips, 2 People at | | | $ - | $ 2,978 | | $ 2,978 | |
| AF=$650; Per Diem=$77; Car Rental=$35/day | | | $ - | | | $ - | |
| Miscellaneous | | | $ - | $ 200 | | $ 200 | |
| Totals | $ - | $ - | $ - | $ 3,178 | $ - | $ 3,178 | |
| **III. SUBCONTRACTS** | | | | | | | |
| RCI | $ 28,471 | | $ 28,471 | | | $ - | *Attach I-1* |
| PACE | $ 8,065 | | $ 8,065 | | | $ - | *Attach I-2* |
| BLK | $ 254,950 | | $ 254,950 | | | $ - | *Attach I-3* |
| | | | $ - | | | $ - | |
| | | | $ - | | | $ - | |
| Totals | $ 291,486 | $ - | $ 291,486 | $ - | $ - | $ - | |
| TOTAL OTHER DIRECT COSTS | $ 291,486 | $ - | $ 291,486 | $ 35,678 | $ - | $ 35,678 | |

(1) Patent costs are related to outside legal firms hired for patent litigation. DB Riley has had to defend several international patent challenges related to the PyGAS™ technology.

JApp 00222

ATTACHMENT 2

# DEFENSE CONTRACT AUDIT AGENCY
# AUDIT REPORT

NOV 20 1995

**Prepared For:** U. S. Department of Energy
ATTN: Michael L. Tiberio, Contract Cost Price Analyst
Morgantown Energy Technology Center
Acquisition and Assistance Division
P. O. Box 880
Morgantown, WV 26507-0880

**Prepared By:** Waltham Branch Office
424 Trapelo Road, Bldg. No. 141
Waltham, MA 02154-6397
Telephone No. 617-647-8728
FAX No. 617-893-8682

**Subject:** Report on Audit of Partial Termination Settlement Proposal to Jacobs-Sirrine Engineers, Subcontract No. 16N25706, under Prime Contract No. DE-AC21-92MC28202

**References:** ACO: DoE Billing No. 102-6
DCAA: Audit Report No. 2181-96J17100001

**Subcontractor:** D. B. Riley, Inc.
5 Neponset Street
Worcester, MA 01606

**Report Release Restrictions:** See Page 15

**Contents:**


| | |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 1 |
| Results of Audit | 2 |
| Subcontractor's Organization and Systems | 13 |
| DCAA Personnel and Report Authorization | 14 |
| Audit Report Distribution and Restrictions | 15 |




FOR OFFICIAL USE ONLY

The termination settlement proposal and related supporting data are the responsibility of the contractor. Our responsibility is to express an opinion on the termination proposal based on our audit.

## RESULTS OF AUDIT

AUDITOR'S OPINION:

In our opinion, the subcontractor has submitted adequate cost or pricing data. The settlement proposal was prepared in accordance with FAR Parts 31.2 and 49 and the DoE FAR Supplement Part 931.2. Therefore, we consider the proposal to be acceptable as a basis for negotiating an equitable price. This statement should not be interpreted to mean that the data are necessarily accurate, complete, and current in accordance with 10 USC 2306, since a postaward review may disclose evidence not now discernible.

The subcontractor's termination settlement proposal and our recommendations are summarized as follows:

| Elements of Proposal | Subcontractor's Settlement Proposal | Results of Audit: Questioned Costs | Results of Audit: Difference (Note 1) | Ref. |
|---|---|---|---|---|
| Subcontract Costs | $1,456,555 | -0- | $1,456,555 | 2 |
| Cost Share | 364,139 | $364,139 | -0- | 3 |
| Reassignment Expenses | 180,438 | 180,438 | -0- | 4 |
| Revision 1 | 9,443 | -0- | 9,443 | 5 |
| Settlement Expenses | 229,199 | 142,133 | 87,067 | Exh. A |
| | $2,239,774 | $686,710 | $1,553,065 | |

FOR OFFICIAL USE ONLY

b. Audit Evaluation:

We reviewed the subcontract agreement and found that it stated that the seller (D.B. Riley) agreed to share in the costs with the buyer (CRS Sirrine Engineers, Inc.) at a level of 20 percent. The agreement was silent relating to recouping the amount cost shared if the subcontract was terminated.

c. Summary of Conclusions:

Based on our review of the subcontract agreement, we can find no basis for allowing D.B. Riley to recoup the amount of costs it previously shared in. Therefore, we have questioned the subject cost in its entirety.

d. D. B. Riley's Reaction:

The subcontractor's representative Ms. Ann Marie Schiavitti-Smith, Financial Analyst understands our position on the claimed cost. She stated that Riley would pursue recouping this cost with the prime contractor and DoE. We have included as Appendix 2 to this report the subcontractor's rationale for recouping the amount previously cost shared.

4. <u>Reassignment Expense</u>

a. Basis of Proposed Cost:

Reassignment expense is direct labor, labor overhead, G&A, and cost of money expenses associated with labor hours for individuals who were previously working on this procurement which can not be claimed as subcontract costs or as settlement expenses. Also, the subcontractor applied a fee of 13.3 percent to total reassignment costs.

b. Audit Evaluation:

Our review of the proposed cost determined that the amount proposed is simply payment for "down time" for the individuals noted. This is time for which the individuals are not working on the termination, and are not working on any of the subcontractor's other contracts or projects.

## STATEMENT OF SUBCONTRACTOR'S COSTS CLAIMED FOR SETTLEMENT EXPENSES AND RESULTS OF AUDIT

| Element of Proposal | Subcontractor's Settlement Expenses | Results of Audit Questioned Costs | Ref. |
|---|---|---|---|
| Labor | $57,116 | $32,226 | 1 |
| Overhead | 97,742 | 73,260 | 2 |
| Professional Services | 32,500 | 20,000 | 3 |
| Travel | 3,178 | | 4 |
| G&A | 32,297 | 10,280 | 5 |
| Cost of Money | 6,367 | 6,367 | 6 |
| Total | $229,200 | $142,133 | |

Explanatory Notes

1. Labor

a. Basis of Proposed Cost:

The proposed amount is for labor for the preparation, presentation, including supporting data, and negotiation of the settlement claim. The proposed amount is based on actual labor costs incurred in August 1995, subsequent to the effective date of termination, and a projection of future labor costs required to support the subject termination.

b. Audit Evaluation:

We requested Ms. Schiavitti-Smith to provide supporting documentation for labor costs incurred through 29 October 1995. Also, we requested documentation on the subcontractor's projection of labor hours to support and complete the subject termination. At this time, Ms. Schiavitti-Smith informed us that the prime contractor required D.B. Riley to prepare a commercialization plan for the PyGas™-GPIF Project technology to be presented to DoE. The subcontractor has included the labor costs associated with this

The proposed rates are based on actual expenses for its FY ended 30 September 1995, and budgeted expenses for its FY ending 30 September 1996.

b. Audit Evaluation:

We reviewed the proposed rates, and adjusted the expenses in each pool to reflect only payroll taxes, fringe benefits, occupancy costs, and immediate supervision costs as noted in FAR 31.205-42(g)(iii). Based on our review, we calculated recommended overhead rates as follows:

| Overhead Pool | CFY 1995 | CFY 1996 |
|---|---|---|
| R&D | 98.9% | 97.8% |
| E&D | 94.5% | 94.3% |

c. Summary of Conclusions:

Based on our review, we calculated questioned costs as follows:

| R&D | | CFY 1995 | CFY 1996 | Subtotal |
|---|---|---|---|---|
| | Labor | $16,635 | $ 6,960 | |
| | Rate | 98.9% | 97.8% | |
| | Expense | $16,452 | $ 6,808 | $23,260 |

| E&D | | CFY 1995 | CFY 1996 | Subtotal |
|---|---|---|---|---|
| | Labor | $ 666 | $ 629 | |
| | Rate | 98.9% | 97.8% | |
| | Expense | $ 629 | $ 593 | $ 1,222 |

| Proposed | Per Audit | Questioned |
|---|---|---|
| $97,742 | $24,482 | $73,260 |

d. D. B. Riley's Reaction:

Ms. Schiavitti-Smith reserved comment on the overhead issue pending negotiations with the prime contractor and TCO.

FOR OFFICIAL USE ONLY

b. Audit Evaluation:

We reviewed the subcontractor's supporting documentation for airfare, car rental, and miscellaneous amounts. We verified the proposed per diem rate with the amount noted in the JTR.

c. Summary of Conclusions:

Based on our evaluation noted above, we have take no exception to the amount proposed.

5. G&A

a. Basis of Proposed Cost:

The proposed cost is based on application of a 16.3 percent rate, and a 17.6 percent rate to total settlement costs (less COM) proposed for the subcontractor's fiscal years 1995 and 1996 respectively. The subcontractor chose not to direct charge G&A expenses to the termination.

b. Audit Evaluation:

We reviewed the subcontractor's calculation of the proposed G&A rates. Also, we reviewed the method the subcontractor used to allocate G&A expenses to the termination to determine that it did not result in an inequitable allocation of G&A to other contracts.

c. Summary of Conclusions:

Based on our review, we take no exception to the G&A rates as proposed. Also, we determined the method the subcontractor used to allocate G&A expenses to the termination did not result in an inequitable allocation of G&A to other contracts. Cost questioned were calculated as follows:

In response to your request for additional information the following is provided:

a. We have not performed a Financial Capability review at D.B. Riley Stoker, Inc.. However, we note that since the contract is terminated and no work remains to be done, other than negotiating a settlement, Riley's financial capability to perform would not seem to be an issue.

b. We are unaware of any government organization reviewing the subcontractor's purchasing system. Cognizance of these types of reviews is not with this office.

c. See the section of this report entitled "Subcontractor's Organization and Systems" regarding comments on Riley's accounting system.

We discussed the audit results with Ms. Ann Marie Schiavitti-Smith, Financial Analyst, Mr. Vijay Dixit, Project Manager, and Mr. John Zicconi, Corporate Controller, on 6 November 1995.

This report confirms the information furnished by telephone to Mr. Michael L. Tiberio, Contract Cost Price Analyst, on 7 November 1995, by Robert C. Grudzinskas, Senior Staff Auditor of our office.

Audit Report No. 2181-96J17100001

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit: | |
| Robert Grudzinskas, Senior Auditor | (617)647-8728 |
| Gregory A. Paul, Supervisory Auditor | (617)647-8728 |
| | FAX No. |
| | (617)893-8628 |

## RELEVANT DATES

Request for Audit: PCO - dated 6 October 1995; received 17 October 1995

## AUDIT REPORT AUTHORIZATION BY:

Robert W. Grady

ROBERT W. GRADY
Branch Manager
DCAA Waltham Branch Office

FOR OFFICIAL USE ONLY

DEUTSCHE BABCOCK

DB RILEY, INC

November 6, 1995
*AMS-95-018*

Mr. Robert Grudzinskas
Defense Contract Audit Agency
424 Trapelo Road
Waltham, MA 02154

Subject: Audit of the PyGas(TM) Termination Proposal, Contract # DE-AC21-92MC28202

D.B. Riley does not object to releasing DCAA's audit report to our prime, Jacobs-Sirrine. Please also forward a copy of the subject report to me at the address below.

Sincerely,

AnnMarie Schiavitti-Smith
D.B. Riley, Inc

JApp 00231

Mailing Address:
Research Center

Shipping Address:
Research Center

Telephone:
(508) 792-4800
Fax:

GPIF Project
Riley Contract 93856
Basis for the Closure Costs

| Name | Hours | Work Performed |
|---|---|---|
| V. Dixit, Project Manger | 546 | 1. Estimate closure costs and prepare documentation<br>2. Prepare back up data for the estimates<br>3. Prepare Termination cost proposal<br>4. Participate in closure negotiations<br>5. Support fact finding<br>6. Review subcontractor costs<br>7. Coordinate contract close-out activities<br>8. Review and monitor costs and approve invoices<br>9. Liaison between JSE and Riley<br>10. Provide support to the DCAA audit<br>11. Support management reviews<br>12. Consolidate project files |
| A. Schiavitti-Smith, Financial Analyst | 482 | 1. Estimate closure costs<br>2. Prepare termination cost proposal<br>3. Support negotiations and fact finding<br>4. Prepare back up data for the estimates<br>5. Participate in the DCAA audit<br>6. Review invoices<br>7. Support management reviews |
| R. Lisauskas, Director-R&D | 86 | 1. Review termination proposal cost data<br>2. Approve cost proposal<br>3. Participate in negotiations |
| R. Mongeon, Administrative Manger | 88 | 1. Provide administrative support in the preparation o[f] termination proposal<br>2. Review termination cost proposal<br>3. Participate in negotiations |
| W. Place, Advanced Technology Manager | 92 | 1. Review termination cost proposal |
| P. Thamaraichelvan, Principal Investigator | 60 | 1. Consolidate technical files |
| J. Kennedy, Drafter | 16 | 1. Consolidate drafting files on the computer and coo[rdinate] activities with document control |

# PHYSICAL SCIENCES INC.
# TERMINATION
# PROPOSAL

PSI

PHYSICAL SCIENCES INC.

30 April 1996

Jacobs Engineering Group Inc.
125 Broadway Avenue
Oak Ridge TN 37830

Attention: Forrest V. Schweitzer

Subject: Subcontract No. 16N25706; Settlement of Termination for Convenience Costs
GPIF Contract

Dear Mr. Schweitzer:

This letter serves as notification of our agreement to a settlement of $163,895.03, in consideration of release of claims for the above contract. We are aware that this settlement is subject to review and approval of the Department of Energy.

If you have any questions, please feel free to call me at 508/689-0003.

Sincerely,
PHYSICAL SCIENCES INC.

Anthony N. Pirri
President, PSI Technologies

wp/ANP

JApp 00234

20 New England Business Center ▪ Andover, MA 01810-1077 ▪ t 508.689.0003 f 508.689.3232

# FINAL RELEASE FORM

TO: JACOBS ENGINEERING GROUP INC.
125 BROADWAY AVENUE
OAK RIDGE, TENNESSEE 37830
ATTENTION: Forrest V. Schweitzer

Subcontractor: Physical Sciences Inc. Owner: ______

Subcontract No.: 16N25706 Customer: Department of Energy

Jacobs' Project No.: 2108.21
Contract No.: DE-AC21-92MC28202

This release is made in accordance with the provisions of the above referenced Subcontract, including any and all modifications thereto.

In consideration of payments made heretofore, or to be made, by Jacobs to the Subcontractor for labor, materials, and services furnished by the Subcontractor in the performance of the above referenced Subcontract, the Subcontractor hereby unconditionally releases Jacobs, the Customer and the Owner, their officers, agents, employees, assignees or heirs from any and all claims whatsoever arising out of, or during, the performance of said Subcontract, other than such claims, if any, that have the consent of Jacobs, the Customer and the Owner as being specifically excepted from the terms of this Release, stated as follows: (None unless expressly stated herein) ______

______

Subcontract further certifies that all labor, materials and services furnished in connection with the performance of said Subcontract and all applicable state and federal payroll taxes and payroll insurance have been paid.

Executed this 30th day of April, 19 96.

Physical Sciences Inc.
PSI Technologies Division (formerly PSI Powerse
Subcontractor

[signature]
Signature

Anthony N. Pirri
Name

President, PSI Technologies
Title

WITNESS
[signature]
Signature

JApp 00235

PSI

PHYSICAL SCIENCES INC.

11 September 1995

Jacobs Engineering Group Inc.
125 Broadway Avenue
Oak Ridge, Tennessee 37830

Attention: Mr. Forrest V. Schweitzer, CPCM
Contract Administrator

Subject: Termination for Convenience Cost Proposal

Reference: 1) Jacobs Engineering Group Inc. Correspondence dated 10 August 1995 Requesting Physical Sciences Inc. Submit a Termination Cost Proposal

Dear Mr. Schweitzer:

Pursuant to the reference 1 letter, Physical Sciences Incorporated (PSI) hereby submits its termination for convenience cost proposal under GPIF Contract No. DE-AC21-92MC28202. PSI's proposal, in the amount of $194,744, is submitted in accordance with FAR Part 31.205.42 titled: Termination Costs.

Although PSI has submitted its costs associated with terminating its subcontract, a significant portion of PSI's proposal includes the cost sharing amount contributed by Spectrum Diagnostix (SDx), formerly known as PSI Environmental. SDx contributed 50% of its incurred costs on this abbreviated program for an opportunity to commercialize the end product resulting from this contract. SDx is pursuing recovery of its cost share amount because its contribution was granted based on SDx's reliance on the Department of Energy's (DOE) commitment to building the Gasification Process Improvement Facility (GPIF).

PSI and SDx have modified the Spectrascan continuous ammonia monitor for operation on a pressurized gasifier. A prototype instrument was built and tested at METC with the expectation that a custom designed system would be delivered and demonstrated at the GPIF facility. As a result of the contract's cancellation, PSI and SDx are unable to realize an end product that will be used to minimize ammonia formation solely in the PYGAS process.

PSI and SDx thoroughly researched and analyzed the commercial marketplace and were convinced that there would be wide-spread acceptance of the PYGAS System. Consequently, PSI and SDx each made a commitment to pursue this contract. SDx's commitment involved a substantial use of corporate funds for this purpose.

This termination for convenience decision presents a difficult situation for both PSI and SDx. Both small businesses have pursued a collaborative course that would culminate in each party



20 New England Business Center ■ Andover, MA 01810-1077 ■ t 508.689.0003 f 508.689.3232

retaining a vested interest in commercializing the PYGAS system. In SDx's situation, a significant amount of corporate funds were invested, at no cost to the DOE, with the understanding that dividends would be recognized when the product was sold commercially. In fact, PSI and SDx relied on the fact that an end product would be developed under this effort when SDx contracted to cost share a significant amount of corporate funds.

In light of the present circumstances, PSI and SDx would certainly have structured its subcontract with Jacobs Engineering Group Inc (JSE). differently from its current formation. In fact, SDx would not have agreed to cost share if SDx believed that their was a liklihood that the DOE was not committed to the project. The significant commitments made by both PSI and SDx reflect overwhelming evidence that each party relied, solely, on the PYGAS product being delivered to the GPIF under this contract.

Therefore, PSI formally requests that JSE submit PSI's proposal as part of its termination costs proposal to the DOE and to vigorously represent the interests of PSI and SDx for reimbursement of their termination costs.

PSI's Overhead and General & Administrative expense rates and its facilities cost of money rates for fiscal year 1996 and subsequent fiscal years are established and detailed in accordance with the provisions of FAR Section 31. PSI regards its indirect rates as proprietary to PSI. PSI's rates have been submitted to and reviewed by the local DCAA branch office in Burlington, MA. Questions relative to this proposal may be addressed to Mr. Edward Marudzinski, DCAA Branch Manager, at 617-229-6450.

PSI looks forward to working with JSE on this matter. Questions regarding this proposal may be addressed to the undersigned at (508) 689-0003 extension 257.

Sincerely,
Physical Sciences Incorporated

William J. McManus
Contracts Manager

JApp 00237

PSI PROPOSAL NO. :Termination Costs
PSI TITLE: PSI's Termination Costs Proposal for Submittal to Jacobs Engineering Group Inc.

| * Burdened Costs | | HOURS | TOTAL $ |
|---|---|---|---|
| Contract Personnel | | 16 | 1241 |
| Accounting Personnel | | 8 | 418 |
| A. DIRECT COSTS | | | |
| DIRECT LABOR | | 24 | 1,659 |
| SUBCONTRACT COSTS -EXPENDED (SDx formerly PSI Environmental) | | | 1 179,935 |
| SUBCONTRACT - SETTLEMENT COSTS | | 8 | 410 |
| TOTAL DIRECT COSTS: | | | $182,005 |
| D. FEE/PROFIT (excludes FCCOM) | 7% | | $12,739 |
| E. TOTAL COST PLUS FIXED FEE | | | $194,744 |

CONTRACT 460-008
GPIF
PART ONE LABOR (Alpha)

PSI
Date: January 31, 1994
Invoice No. 10
Period of Performance: December 31, 1993 through January 31, 1994

| | | Current Hours | Current Billing | Cumulative Hours | Cumulative Billed |
|---|---|---|---|---|---|
| Direct Labor: | | | | | |
| Art Boni | {113.33} | 0 | $0.00 | 42 | $4,759.86 |
| Mickey Frish | {87.50} | 0 | $0.00 | 677 | $59,237.50 |
| Dana Tremblay | {65.00} | 0 | $0.00 | 602 | $39,130.00 |
| Mark Warshofsky | {51.25} | 0 | $0.00 | 244 | $12,505.00 |
| Charlie Shibilia | {48.75} | 0 | $0.00 | 321 | $15,648.75 |
| Randy Severance | {58.75} | 0 | $0.00 | 719 | $42,241.25 |
| | | 0 | $0.00 | 2605 | $173,522.36 |

Sharon S. Bean

Sharon Sanborn-Bean
Office Administrator

# PSI ENVIRONMENTAL INSTRUMENTS CORPORATION

CONTRACT 460-008
GPIF
PART TWO (ALPHA) MISCELLANEOUS

PSI
Date: January 31, 1994
Invoice No. 10
Period of Performance: December 31, 1993 through January 31, 1994

| | P.O. # | Current Billing | Cumulative Billed |
|---|---|---|---|
| A. Boni expense report 2-7-93 CRS Sirrine | | | $143.40 |
| A. Boni airline tickets to CRS Sirrine | | | $782.50 |
| **Purchases:** | | | |
| Active Electronics | EI-210 | | $16.68 |
| High Tech Machine | EI-216 | | $384.00 |
| Edmund Scientific | EI-196 | | $190.45 |
| Epitaxx | EI-194 | | $153.73 |
| Digi-Key | EI-192 | | $153.62 |
| Melles Griot | EI-174 | | $14.82 |
| Pioneer | EI-193 | | $77.87 |
| Pioneer | EI-203 | | $68.89 |
| dmund Scientific | EI-171 | | $297.65 |
| ana Tremblay (Active Electronics) | | | $11.23 |
| AAA Metals Company | EI-211 | | $122.09 |
| J. W. Miller | EI-212 | | $372.57 |
| Digi-key | EI-191 | | $15.00 |
| A. Boni/D. Tremblay {Mini-Circuits} | EI-173 | | $297.25 |
| J. W. Miller | EI-179 | | $215.75 |
| Mass. Department of Revenue {Sales & use tax} | | | $71.91 |
| American Express Travel | | | $844.50 |
| Doran Limo {A. Boni - 2-3 & 2-5-93} | | | $85.00 |
| Lasertron | EI-231 | | $3,500.00 |
| Omega Engineering | EI-221 | | $265.00 |
| Future Electronics | EI-229 | | $312.75 |
| Newark | EI-200 | | $309.06 |
| AT&T/Unites States Rental | EI-195 | | $1,037.00 |
| Pioneer Standard | EI-193 | | $41.54 |
| Matheson Gas Products | EI-222 | | $78.96 |
| Pasternack Enterprises | EI-225 | | $323.92 |
| Cambridge Valve & Fitting | EI-220 | | $246.20 |
| Art Boni {expense report} | | | $129.15 |
| Epitaxx, Inc. | EI-224 | | $157.23 |
| Rose Enclosures | EI-227 | | $124.11 |
| Rose Enclosures | EI-233 | | $185.22 |
| NSG America, Inc. | EI-232 | | $306.35 |
| Digi-Key | EI-209 | | $16.59 |
| Digi-Key | EI-209 | | $31.94 |
| Pioneer | EI-213 | | $130.84 |
| Pioneer | EI-213 | | $201.57 |
| Machine Technology | EI-228 | | $71.00 |
| Cambridge Valve & Fitting | EI-234 | | $46.28 |