# PSI ENVIRONMENTAL INSTRUMENTS CORPORATION

PSI
Date: January 31, 1994
Invoice No. 10
Period of Performance: December 31, 1993 through January 31, 1994

CONTRACT 460-008
GPIF
PART TWO (ALPHA) MISCELLANEOUS

| | P.O. # | Current Billing | Cumulative Billed |
|---|---|---|---|
| Zero Corporation | EI-238 | | $261.90 |
| CTR Enterprises | EI-245 | | $225.00 |
| Mark Warshofsky {Expense report} | | | $51.95 |
| Marblehead Engineering | EI-217 | | $262.50 |
| Abbott Electronics | EI-230 | | $44.86 |
| Fico | EI-241 | | $85.50 |
| Zero | EI-239 | | $434.59 |
| Newark | EI-226 | | $403.25 |
| Newark | EI-252 | | $62.62 |
| Newark | EI-243 | | $186.11 |
| Newark | EI-246 | | $56.93 |
| Newark | EI-235 | | $63.50 |
| Newark | EI-214 | | $180.95 |
| Newark | EI-223 | | $187.79 |
| Newark | EI-260 | | $37.80 |
| Matheson Gas | EI-249 | | $327.60 |
| McMaster-Carr | EI-263 | | $47.67 |
| Active Electronics | EI-237 | | $96.02 |
| Pioneer | EI-213 | | $209.01 |
| Future Electronics | EI-242 | | $323.00 |
| Cambridge Valve & Fitting | EI-236 | | $29.48 |
| Small Parts | EI-247 | | $32.29 |
| Machine Technology | EI-240 | | $262.50 |
| American Express | | | $500.75 |
| NSG America | EI-269 | | $157.00 |
| Mass. Department of Revenue | | | $87.53 |
| Zero Corporation | EI-238 | | ($101.30) |
| Strato Repro | EI-268 | | $128.18 |
| Allied Electronics | EI-276 | | $90.03 |
| Cambridge Valve & Fitting | EI-274 | | $87.57 |
| Machine Technology | EI-278 | | $225.75 |
| Machine Technology | EI-275 | | $202.65 |
| CVI Laser Corporation | EI-267 | | $677.55 |
| Newport/Klinger Systems Corp. | EI-272 | | $93.75 |
| Mickey Frish Expense report | | | $45.75 |
| Omega Engineering | EI-266 | | $295.10 |
| Marblehead Engineering | EI-279 | | $210.00 |
| American Express Travel | | | ($582.50) |
| Art Boni expense report 7-25-93 | | | $178.06 |
| Newark Electronics | EI-280 | | $97.92 |
| Machine Technology | EI-283 | | $162.75 |
| Fico | EI-281 | | $152.67 |
| Newark | EI-277 | | $164.72 |
| Newark | EI-285 | | $121.94 |
| Active Electronics | EI-286 | | $55.52 |

JApp 00241

# PSI ENVIRONMENTAL INSTRUMENTS CORPORATION

PSI
Date: January 31, 1994
Invoice No. 10
Period of Performance: December 31, 1993 through January 31, 1994

CONTRACT 460-008
GPIF
PART TWO (ALPHA) MISCELLANEOUS

| | | | |
|---|---|---|---|
| Abbott Electronics | EI-282 | | $25.52 |
| Machine Technology | EI-278 | | $433.65 |
| American Express | | | ($150.00) |
| Mickey Frish Expense report 8-29-93 | | | $379.63 |
| Newark | EI-287 | | $59.52 |
| Mark Warshofsky Expense report 8-22-93 | | | $93.75 |
| Peeco | EI-288 | | $531.35 |
| Omega | EI-289 | | $47.75 |
| Abbott Electronics | EI-290 | | $83.03 |
| Cambridge Valve & Fitting | EI-291 | | $9.97 |
| Accurate Fasteners | EI-302 | | $161.44 |
| Accurate Fasteners | EI-302 | | $70.95 |
| Accurate Fasteners | EI-302 | | $15.38 |
| Electronic Precepts of Florida, Inc. | EI-304 | | $20.75 |
| Petty Cash | | | $60.00 |
| TWA Travel | | | $333.50 |
| vtron, Inc. | EI-296 | | $123.90 |
| .mega Engineering | EI-289 | | $27.75 |
| Newark | EI-280 | | $12.33 |
| Harbor Controls | EI-301 | | $28.25 |
| Harbor Controls | EI-301 | | $16.77 |
| Mass Department of Revenue/Sales & Use tax | | | $85.12 |
| Stephen Gould | EI-292 | | $324.25 |
| Cosmo Optics | EI-273 | | $1,480.80 |
| Matheson Gas Products | EI-249 | ($116.00) | ($116.00) |
| Total Miscellaneous | | ($116.00) | $22,917.19 |
| Total Labor | | $0.00 | $173,522.36 |
| Total charges billed | | ($116.00) | $196,439.55 |
| - 50 % cost share {total billable charge} | | ($58.00) | $98,219.78 |

Sharon S-Bean

Sharon Sanborn-Bean
Office Administrator

JApp 00242

**PSI ENVIRONMENTAL INSTRUMENTS CORPORATION**

**CONTRACT 460-018/461-002**
**GPIF**

**PSI**
**Date: January 31, 1995**
**Invoice No. 10**
**Period of Performance: November 1 through January 31, 1995**

| | | Current Hours | Current Billing | Cumulative Hours | Cumulative Billed |
|---|---|---|---|---|---|
| **Direct Labor:** | | | | | |
| Art Boni | {113.33} | 0 | $0.00 | 9 | $1,019.97 |
| Mickey Frish | {87.50} | 2 | $175.00 | 366 | $32,025.00 |
| Dana Tremblay | {65.00} | 0 | $0.00 | 358 | $23,270.00 |
| Mark Warshofsky | {51.25} | 0 | $0.00 | 184 | $9,430.00 |
| Charlie Shibilia | {48.75} | 0 | $0.00 | 142 | $6,922.50 |
| Randy Severance | {58.75} | 0 | $0.00 | 448 | $26,320.00 |
| Steve Johnson | {110.00} | 18 | $1,980.00 | 78 | $8,580.00 |
| John Comer | {53.75} | 0 | $0.00 | 27 | $1,451.25 |
| | | **20** | **$2,155.00** | **1612** | **$109,018.72** |

Sharon S. Bean

**Sharon Sanborn-Bean**
**Office Administrator**

**PSI ENVIRONMENTAL INSTRUMENTS CORPORATION**

**CONTRACT 460-018/461-002**
**GPIF**

(BETA)

**PSI**
**Date: January 31, 1995**
**Invoice No. 10**
**Period of Performance: November 1994 through January 1995**

| | P.O. # | Current Billing | Cumulative Billed |
|---|---|---|---|
| **Purchases:** | | | |
| VICI Metronics | EI-674 | $0.00 | $124.25 |
| Comer, John (Expense report) | | $0.00 | $103.90 |
| Overnight Inc. | | $0.00 | $385.84 |
| Frish, Mickey (Expense report) | | $0.00 | $105.85 |
| TWA | | $601.00 | $601.00 |
| Previous | | | $4,493.74 |
| | | ============ | ============ |
| **Total Miscellaneous** | | **$601.00** | **$5,814.58** |
| Total Labor | | $2,155.00 | $109,018.72 |
| Total charges billed | | $2,756.00 | $114,833.30 |
| **- 50% cost share - billable charge** | | **$1,378.00** | **$57,416.65** |

# SUPPORTING DOCUMENTATION AND CERTIFICATIONS

(a) Certifications (Close-Out documentation)
(b) Assignment and Release of Claims

# TERMINATION INVENTORY SCHEDULE E
(SHORT FORM FOR USE WITH SF 1438 ONLY)
(See FAR Section 45.606 for instructions)

☐ PARTIAL ☒ FINAL

DATE: 7/22/96 | PAGE NO.: 1 | NO. OF PAGES: 1 | FORM APPROVED OMB NO. 9000-0015

Public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition and Regulatory Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0015), Washington, D.C. 20503.

THIS SCHEDULE APPLIES TO (Check one)

☒ A PRIME CONTRACT WITH THE GOVERNMENT ☐ SUBCONTRACT(S) OR PURCHASE ORDER(S)

GOVERNMENT PRIME CONTRACT NO.: DE-AC21-92MC28202

SUBCONTRACT OR P.O. NO.:

REFERENCE NO.:

COMPANY PREPARING AND SUBMITTING SCHEDULE: Jacobs Engineering Group Inc.

STREET ADDRESS: 251 South Lake Avenue

CITY AND STATE (Include ZIP Code): Pasadena, CA 91101

LOCATION OF MATERIAL: N/A

CONTRACTOR WHO SENT NOTICE OF TERMINATION

NAME:

ADDRESS (Include ZIP Code):

PRODUCT COVERED BY CONTRACT OR ORDER:

| FOR USE OF CONTRACTING AGENCY ONLY | ITEM NO. (a) | ITEM DESCRIPTION (b) | GOVERNMENT PART OR DRAWING NUMBER AND REVISION NUMBER (b1) | TYPE OF PACKING (Bulk, bbls., crates, etc.) (b2) | CONDITION (Use code) (c) | QUANTITY (d) | UNIT OF MEASURE (d1) | COST (For finished product, show contract price instead of cost) UNIT (e) | COST TOTAL (f) | CONTRACTOR'S OFFER (g) | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | None | | | | | | | | | |

## TERMINATION INVENTORY SCHEDULE CERTIFICATE

The undersigned, personally and as representative of the Contractor, certifies that this inventory Schedule consisting of page numbers ____ to ____ inclusive, dated ____ has been examined, and that in the exercise of the signer's best judgement and to the best of the signer's knowledge, based upon information believed by the signer to be reliable, said Schedule has been prepared in accordance with applicable instructions; that the inventory described is allocable to the designated contract and is located at the places specified; if the property reported is termination inventory, that the quantities are not in excess of the reasonable quantitative requirements of the terminated portion of the contract; that this Schedule does not include any items reasonably usable, without loss to the Contractor, on its other work; and that the costs shown on this Schedule are in accordance with the Contractor's records and books of account.

The Contractor agrees to inform the Contracting Officer of any substantial change in the status of the inventory shown in this Schedule between the date hereof and the final disposition of such inventory.

Subject to any authorized prior disposition, title to the inventory listed in this Schedule is hereby tendered to the Government and is warranted to be free and clear of all liens and encumbrances.

NAME OF CONTRACTOR: Jacobs-Sirrine Engineers, Inc.

BY (Signature of Authorized Official): [signature]

TITLE: Roger L. Williams, Group VP, Southern Region

DATE: 7-31-96

NAME OF SUPERVISORY ACCOUNTING OFFICIAL: for Louise Burns [signature: Kenneth W. ...]

TITLE: Manager, Office of Federal Contract Compliance

JApp 00246

# REPORT OF INVENTIONS AND SUBCONTRACTS

*(Pursuant to "Patent Rights" Contract Clause) (See Instructions on Reverse side)*

*Form Approved OMB No. 0704-0297 Expires Jun 30, 1992*

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0297), Washington DC 20503.

| 1a. NAME OF CONTRACTOR/SUBCONTRACTOR | c. CONTRACT NUMBER | 2a. NAME OF GOVERNMENT PRIME CONTRACTOR | c. CONTRACT NUMBER | 3. TYPE OF REPORT (X one) |
|---|---|---|---|---|
| Jacobs Engineering Group Inc. | DE-AC21-92MC28202 | Jacobs-Sirrine Engineering | DE-AC21-92MC28202 | a. INTERIM X b. FINAL |
| b. ADDRESS (Include ZIP Code) | d. AWARD DATE (YYMMDD) | b. ADDRESS (Include ZIP Code) | d. AWARD DATE (YYMMDD) | 4. REPORTING PERIOD (YYMMDD) |
| 251 South Lake Avenue Pasadena, CA 91101 | 92/09/30 | | | a. FROM<br>b. TO |

## SECTION I – SUBJECT INVENTIONS

5. "SUBJECT INVENTIONS" REQUIRED TO BE REPORTED BY CONTRACTOR/SUBCONTRACTOR (If "None," so state.)

| a. NAME(S) OF INVENTOR(S) (Last, First, MI) | b. TITLE OF INVENTION(S) | c. DISCLOSURE NO., PATENT APPLICATION SERIAL NO. OR PATENT NO. | d. ELECTION TO FILE PATENT APPLICATIONS (1) United States (a) Yes | (b) No | (2) Foreign (a) Yes | (b) No | e. CONFIRMATORY INSTRUMENT OR ASSIGNMENT FORWARDED TO CONTRACTING OFFICER (1) Yes | (2) No |
|---|---|---|---|---|---|---|---|---|
| None | | | | | | | | |

f. EMPLOYER OF INVENTOR(S) NOT EMPLOYED BY CONTRACTOR/SUBCONTRACTOR

(1)(a) Name of Inventor (Last, First, MI)

(b) Name of Employer

(c) Address of Employer (Include ZIP Code)

(2)(a) Name of Inventor (Last, First, MI)

(b) Name of Employer

(c) Address of Employer (Include ZIP Code)

g. ELECTED FOREIGN COUNTRIES IN WHICH A PATENT APPLICATION WILL BE FILED

(1) Title of Invention

(2) Foreign Countries of Patent Application

## SECTION II – SUBCONTRACTS (*Containing a "Patent Rights" clause*)

6. SUBCONTRACTS AWARDED BY CONTRACTOR/SUBCONTRACTOR (If "None," so state)

| a. NAME OF SUBCONTRACTOR(S) | b. ADDRESS (Include ZIP Code) | c. SUBCONTRACT NO.(S) | d. DEAR "PATENT RIGHTS" (1) Clause Number | (2) Date (YYMMDD) | e. DESCRIPTION OF WORK TO BE PERFORMED UNDER SUBCONTRACT(S) | f. SUBCONTRACT DATES (YYMMDD) (1) Award | (2) Estimated Completion |
|---|---|---|---|---|---|---|---|
| None | | | | | | | |

## SECTION III – CERTIFICATION

7. CERTIFICATION OF REPORT BY CONTRACTOR/SUBCONTRACTOR (Not required if: Small Business or Non-Profit organization) (X appropriate box)

a. NAME OF AUTHORIZED CONTRACTOR/SUBCONTRACTOR OFFICIAL (Last, First, MI)

b. TITLE for Louise Burns

c. I certify that the reporting party has procedures for prompt identification and timely disclosure of "Subject Inventions," that such procedures have been followed and that all "Subject Inventions" have been reported.

d. SIGNATURE Kenneth W. Soles

e. DATE SIGNED 7-26-96

JApp 00247

# ROYALTY REPORT

## INSTRUCTIONS TO CONTRACTOR

This report shall be furnished to the Buyer as soon as possible after contract execution, but in any event prior to final payment (ref. DOE-PR 9-9.110). A separate report is required for each separate item of royalty or license fee paid:

| | |
|---|---|
| 1. Name and Address of Contractor<br>Jacobs Engineering Group Inc.<br>251 South Lake Avenue<br>Pasadena, CA 91101 | 2. Contract Number<br>DE-AC21-92MC28202<br>3. Contract Type (Ck. one)<br>XX Cost Reimbursement<br>Fixed Price<br>x Time & Materials |
| 4. Name and Address of Licensor | 5. Date of License Agreement<br>N/A |

6. Patent Number, Patent Application Serial Numbers Or Other Basis Which The Royalty is Payable.

7. Brief Description, Including Any Part Or Model Numbers Of The Contract Item Or Component On Which The Royalty Is Payable.

N/A

COMPUTATION OF ROYALTIES

| 8. Percentage Or Dollar Rate or Royalty Per Unit | 9. Unit Price of the Parts, Items or Components described in 7 | 10. Number of Units | 11. Total Dollar Amounts of Royalties | 12. Total Number of Licensors Under the Contract |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

CERTIFICATION (Portion Only)

CONTRACTOR CERTIFIES, IF ITEMS 3 THROUGH 12 HAVE NOT BEEN COMPLETED, THAT ROYALTIES HAVE NOT BEEN PAID AND ARE NOT TO BE PAID IN CONNECTION WITH THE PERFORMANCE OF THE ABOVE IDENTIFIED CONTRACT. CONTRACTOR CERTIFIES THAT ITEMS 4 THROUGH 12, IF COMPLETED, AND ALL ATTACHMENTS REQUIRED FOR SUCH ITEMS ARE TRUE AND CORRECT AS TO PAST TRANSACTIONS AND REPRESENT CONTRACTOR'S BEST ESTIMATE AS TO FUTURE TRANSACTIONS INCLUDED IN THIS REPORT.

| Date | Name and Title of Authorized Official (Print or Type) | Signature |
|---|---|---|
| 7-31-96 | [signature] | Roger L.Williams<br>Group VP,Southern Region |

RFPD-48(8/90)

# Termination Settlement Proposal
# Contract NO. DE-AC21-92-MC28202

## CONTRACTOR'S ASSIGNMENT AND RELEASE OF CLAIMS

**Contract No. DE-AC21-92-MC28202**

Pursuant to the terms of the above contract, in consideration of the amounts paid to date under the Department of Energy contract, and the amounts to be paid under the termination agreement, which has been or is to be paid under said contract to Jacobs Engineering Group Inc. (hereinafter called "Contractor") or its assignees, if any, the Contractor, upon payment of said sum by the United States of America (hereinafter called "Government") does remise, release and discharge the Government, its officers, agents and employees, of and from all liabilities, obligations, claims and demands whatsoever under or arising from said contract.

IN WITNESS WHEREOF, This release has been executed this TWENTY-SEVENTH day of JULY, 1996.

Jacobs Engineering Group Inc.
(Contractor)

WITNESS:

BY: ______________________
(Paul A. Miskimin)

Title: Senior Vice President, Federal Programs

## CERTIFICATE

I, Roger L. Williams, certify that I am the Group Vice President Southern Reigon (insert official title) of the Corporation names as contractor in the forgoing release, that Paul A. Miskimin, who signed said release on behalf of the Contractor was the Senior Vice President, Federal Programs (insert official title) of said corporation; that said release was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

(Roger L. Williams)

DRAFT

**RESULTS OF AUDIT**

1. In our opinion, except for the unresolved FYs1994 and forward indirect rates and their potential impact on the audit results, the cost or pricing data submitted by JEG is adequate. The proposal was prepared in accordance with applicable Cost Accounting Standards and appropriate provisions of FAR including Part 49, Termination of Contracts and DEAR. Therefore, we consider the proposal to be acceptable as a basis for negotiation of a fair and reasonable price. JEG's termination proposal and results of our audit are summarized below:

| | Proposed | Questioned | Unresolved | Difference | |
|---|---|---|---|---|---|
| Direct Labor | $ 1,603,312 | $ 94,981 | | $ 1,508,332 | Exhibit A |
| Overhead/Fringe Benefit | $ 1,180,709 | $ 388,303 | | $ 792,406 | Exhibit A |
| Other Costs | $ 2,367,790 | $ 82,912 | | $ 2,284,879 | Exhibit A |
| Gen. & Admin. Expense | $ 569,737 | $ - | $ 569,737 | $ - | Exhibit A |
| Total Costs | $ 5,721,548 | $ 592,328 | | $ 5,129,220 | |
| Fee and FCCOM | $ 354,483 | $ 11,942 | | $ 342,541 | Subpara 2 |
| Settlement Expenses | $ 358,911 | $ 155,391 | | $ 203,520 | Exhibit B |
| Settlement with Subcontractor | $ 686,838 | $ 540,186 | $ - | $ 146,652 | Exhibit C |
| Gross Proposed Settlement | $ 12,843,328 | $ 1,866,042 | $ 569,737 | $ 10,407,549 | |
| Disposal and Other Credits | $ - | $ - | | $ - | |
| Prior Payments to Contractor | $ (5,579,583) | $ - | | $ (5,579,583) | |
| Net Payment Requested | $ 7,263,745 | $ 1,866,042 | $ 569,737 | $ 4,827,966 | |
| 20% Cost Share | $ - | $ 1,498,443 | $ - | $ (1,498,443) | Subpara 3 |
| Total | $ 7,263,745 | $ 3,364,485 | $ 569,737 | $ 3,329,523 | |

2. Fee and FCCOM. JEG proposed $338,365 in fee and $16,118 in FCCOM. We questioned FCCOM of $11,942. See Exhibit A, note 7; and Exhibit B, note 3.

3. Cost Sharing. The subject contract contained a 20% cost share clause which was flowed down to the two major subcontractors, PSIT (50%) and D.B. Riley (20%). JEG and the two subcontractors were seeking recovery for the shared costs due to contract termination. Therefore, the above proposal reflects total costs incurred by JEG and the two subcontractors.

Included in the $7,263,745 is $1,498,443 of JEG's cost share amount. Included in the $686,838 settlement with subcontractors were $161,682 of PSIT's cost share amount, and $365,194 of D.B. Riley's cost share amount. DCAA is taking the position that in the absence of contract modifications, JEG, PSIT, and D.B. Riley are subject to cost share. Therefore, we are questioning these amounts in their entirety and they are reflected in the questioned cost column above.

3. Results of audit were discussed with JEG representative Mr. Larry Lukas, Manager of Federal Compliance, on .

# DRAFT

Exhibit A

| Fiscal year | 1993 (Note 1) | 1994 (Note 1) | 1995 | 1996 | Total | |
|---|---|---|---|---|---|---|
| | *Claimed Costs as of 30 April 1996* | | | | | |
| Direct Labor | $ 239,057 | $ 306,199 | $ 1,026,421 | $ 31,635 | $ 1,603,312 | 2 |
| Fringe Benefit Expenses | | | $ 252,151 | $ 7,909 | $ 260,059 | 3 |
| Overhead Expenses | $ 363,367 | $ 557,283 | | | $ 920,649 | 1 |
| Other Direct Costs-PC/CAD | $ 3,611 | $ 7,317 | $ 23,913 | $ 196 | $ 35,037 | 4 |
| Other Direct Costs | $ 24,722 | $ 45,262 | $ 132,191 | $ 5,210 | $ 207,386 | 4 |
| Subcontract costs - PSIT | $ 88,000 | $ 491,999 | $ 66,724 | | $ 646,723 | 5 |
| Subcontract costs - Riley | | $ 205,101 | $ 884,106 | $ 387,364 | $ 1,476,571 | 5 |
| Subcontract costs - Other | | | | $ 2,074 | $ 2,074 | 5 |
| G&A Expense | $ - | $ - | $ 558,672 | $ 11,065 | $ 569,737 | 6 |
| Subtotal Costs | $ 718,756 | $ 1,613,161 | $ 2,944,177 | $ 445,453 | $ 5,721,548 | |
| FCCOM | $ 2,749 | $ 2,664 | $ 8,843 | $ 279 | $ 14,535 | 7 |
| Total Costs Claimed | $ 721,506 | $ 1,615,825 | $ 2,953,020 | $ 445,732 | $ 5,736,082 | |
| | | | | | | |
| | *Questioned Costs* | | | | | |
| Direct Labor | $ (652) | $ 68,624 | $ 35,964 | $ (8,955) | $ 94,981 | 2 |
| Fringe Benefit Expenses | $ - | $ - | $ 8,835 | $ (1,957) | $ 6,878 | 3 |
| Overhead Expenses | $ 104,481 | $ 276,944 | | | $ 381,424 | 1 |
| Other Direct Costs-PC/CAD | $ - | $ 7,317 | $ 8,438 | $ (1,192) | $ 14,564 | 4 |
| Other Direct Costs | $ (160) | $ (1,233) | $ 53,120 | $ (879) | $ 50,848 | 4 |
| Subcontract costs - PSIT | | | $ - | $ - | $ - | 5 |
| Subcontract costs - Riley | $ - | $ 86 | $ (371,654) | $ 387,364 | $ 15,796 | 5 |
| Subcontract costs - Other | | | $ (370) | $ 2,074 | $ 1,704 | 5 |
| G&A Expense | $ - | $ - | $ 558,672 | $ 11,065 | $ 569,737 | 6 |
| Subtotal Costs | $ 103,668 | $ 351,738 | $ 293,005 | $ 387,520 | $ 1,135,932 | |
| FCCOM | $ 472 | $ 858 | $ 8,802 | $ 227 | $ 10,359 | 7 |
| Total Costs Questioned | $ 104,141 | $ 352,596 | $ 301,807 | $ 387,747 | $ 1,146,291 | |
| | | | | | | |
| | *Audit Adjusted* | | | | | |
| Direct Labor | $ 239,709 | $ 237,575 | $ 990,457 | $ 40,590 | $ 1,508,332 | 2 |
| Fringe Benefit Expenses | $ - | $ - | $ 243,316 | $ 9,865 | $ 253,181 | 3 |
| Overhead Expenses | $ 258,886 | $ 280,339 | $ - | $ - | $ 539,225 | 1 |
| Other Direct Costs-PC/CAD | $ 3,611 | $ (0) | $ 15,474 | $ 1,388 | $ 20,473 | 4 |
| Other Direct Costs | $ 24,882 | $ 46,495 | $ 79,071 | $ 6,089 | $ 156,538 | 4 |
| Subcontract costs - PSIT | $ 88,000 | $ 491,999 | $ 66,724 | | $ 646,723 | 5 |
| Subcontract costs - Riley | | $ 205,015 | $ 1,255,760 | | $ 1,460,775 | 5 |
| Subcontract costs - Other | $ - | $ - | $ 370 | | $ 370 | 5 |
| G&A Expense | $ - | $ - | $ - | $ - | $ - | 6 |
| Subtotal Costs | $ 615,088 | $ 1,261,423 | $ 2,651,173 | $ 57,933 | $ 4,585,617 | |
| FCCOM | $ 2,277 | $ 1,806 | $ 41 | $ 52 | $ 4,176 | 7 |
| Audit Adjusted Costs | $ 617,365 | $ 1,263,229 | $ 2,651,214 | $ 57,985 | $ 4,589,793 | |

DRAFT

Exhibit A

Notes to Exhibit A

1. FY 1993 and FY 1994 Incurred Costs.

a. Summary of Conclusion.

Based on audits of CRS Sirrene, we questioned $104,141 and $352,296 of JEG's proposed costs for FY 1993 and FY 1994, respectively.

b. Basis of Proposed Costs.

The subject contract DE-AC21-92MC-2802 was originally entered into between CRS Sirrene and Department of Energy in 30 September 1992. CRS Sirrene was subsequently sold to JEG in August 1994. Incurred costs proposed are based on accounting records transferred from CRS Sirrene.

c. Audit Evaluation.

Results of our audit incorporated assist audit result of CRS incurred costs. Appendix 1 is a copy of assist audit report 3521-95S10250009, dated 29 September 1998.

d. Contractor's Reaction.

e. Auditor's Response.

2. Direct Labor

a. Summary of Conclusion.

We adjusted JEG proposed labor based on actual labor costs. Our adjustments resulted in $35,964 decrease to FY 1995 labor and $8,955 increase to FY 1996 labor costs.

b. Basis of Proposed Costs.

JEG proposed costs based on actual labor cost as of 30 April 1996. Proposed costs included $74,805 shut-down costs incurred subsequent to August 1995. FY 1995 incurred costs included August and September 1995 CRS Sirrene labor costs incurred subsequent to the JEG's acquisition but prior to JEG's FY 1995 started 1 October 1994.

c. Audit Evaluation.

We obtained electronic download of actual labor and identified billable costs. Questioned costs represented the difference between proposed and billable costs per labor history.

d. Contractor's Reaction.

e. Auditor's Response.

DRAFT

Exhibit A

Notes to Exhibit A

3. Fringe Benefit.

a. Summary of Conclusion.
We questioned fringe benefits as a result of questioned labor bases for FY 1995 and FY 1996; and the application of final rates proposed for the two FYs.

b. Basis of Proposed Costs.
JEG's proposed 24.566% and 25.0% fringe benefit rates to FYs 1995 and 1996, respectively, Proservice labor and overtime premium.

c. Audit Evaluation.
As indicated in the qualification paragraph of this report, we were unable to audit determine final indirect rates including fringe benefit rates for FY 1994 and forward. In the absence of audit determined rates, we compared the proposed rates to JEG final rates of 24.57% and 24.305% for FY 1995 and 1996, respectively. Questioned amounts only reflected the results of the above comparisons. We considered G&A expenses an unresolved issue until JEG and the U.S. Government settles the pending litigation.

d. Contractor's Reaction.
e. Auditor's Response.

4. Other Direct Costs (ODC).

a. Summary of Conclusion.
ODC questioned were based on project cost history.

b. Basis of Proposed Costs.
JEG's proposed ODC based on cost history. Proposed costs included PC usage, CAD design, travel, and reproduction expenses.

c. Audit Evaluation.
We obtained electronic download of JEG's project cost history. We questioned the difference between the proposed costs and billable expenses.

d. Contractor's Reaction.
e. Auditor's Response.

5. Subcontract Cost.

a. Summary of Conclusion.
We questioned subcontract costs based on results of subcontract assist audits.

b. Basis of Proposed Costs.
JEG proposed subcontract costs based on subcontractors' invoices.

DRAFT

Exhibit A

Notes to Exhibit A

c. Audit Evaluation.

Results of audit were based on assist audits of Physical Science Inc. (PSIT) and D.B. Riley subcontract costs. Appendix 2 is a copy of assist audit report no. 2161-97A17100063, issued 20 November 1996 for audit of PSIT; Appendix 3 is a copy of assist audit report no. 2161-99V17100001, issued 29 January 1999 for audit of D.B. Riley, Inc.

Results of PSIT took no exceptions to the proposed incurred costs. D.B. Reily submitted a revision to proposed costs on 1 March 1996. We requested assist audit of D.B. Reily's revision and questioned the difference between revised assist audit recommendations and JEG's original proposal.

JEG also proposed $2,074 subcontract costs that was not supported by any documentation. Accordingly, we questioned the proposed amount. Actual showed that $370 was incurred in FY 1995.

d. Contractor's Reaction.

e. Auditor's Response.

6. General and Administrative (G&A) Due to pending litigation between JEG and the U.S. Government, we are unable to audit determine final indirect rates for FY 1994 and forward. Accordingly, we are unable to resolve the cost issue associated with G&A expenses.

7. FCCOM

a. Summary of Conclusion.

Our evaluation indicated that the primary performance unit did not have FCCOM rates for FY 1995 and FY 1996. Accordingly, we questioned the majority of the proposed FCCOM. Audit adjusted amount represents FCCOM applicable to labor incurred by those performance units that had FCCOM rates.

b. Basis of Proposed Costs.

JEG applied a FCCOM rate of .00133 to FY 1995 and FY 1996 direct labor base.

c. Audit Evaluation.

Our analyses of the proposed costs indicated that JEG did not apply FCCOM in a basis consistent with the bases by performance units. The majority of the labor efforts were performed by Greenville and therefore its G&A rate was applied. However, there was not FCCOM rate proposed based on JEG's final indirect rate claim. Accordingly, we questioned the FCCOM for Greenville, but applied FCCOM to those labor efforts that had applicable FCCOM. Based on our audit adjustments, we questioned JEG's proposed costs.

d. Contractor's Reaction.

e. Auditor's Response.

DRAFT

Exhibit B

Schedule of JEG Proposed Termination Expenses and Results of Audit

| | JEG's Labor & ODC Estimate | Estimated Sadowski's Labor Contract | Proposed Termination Expenses | FY 1996 Actual After May 1996 | Balance of Sadowski's Contract Amount | Total | Questioned |
|---|---|---|---|---|---|---|---|
| Direct Labor | $ 26,247 | $153,295 | $ 179,542 | $ 8,950 | $ 109,053 | $118,003 | $ 61,538 |
| Fringe Benefit Expense | 6,562 | 38,324 | 44,885 | 2,175 | 26,505 | 28,681 | 16,205 |
| Gen. & Admin. Expense | 9,180 | 53,617 | 62,797 | 5,302 | 41,812 | 47,114 | 15,683 |
| ODC: | | | | | | | |
| Misc. H/O | 147 | | 147 | 3,568 | | 3,568 | (3,421) |
| Telephone | 102 | | 102 | 222 | | 222 | (120) |
| Postage | 183 | | 183 | 349 | | 349 | (166) |
| Reproduction | 897 | | 897 | 364 | | 364 | 533 |
| Mainframe Computer | 147 | | 147 | 704 | | 704 | (557) |
| Travel | 10,942 | | 10,942 | 253 | | 253 | 10,689 |
| Personal Computer | 5,141 | | 5,141 | 950 | | 950 | 4,191 |
| S/T - ODC | $ 17,558 | $ - | $ 17,558 | $ 6,409 | $ - | $ 6,409 | $ 11,149 |
| Subcontract: | | | | | | | |
| Jones & Donovan | 8,000 | | 8,000 | 3,313 | | 3,313 | 4,687 |
| Peat Marwick LLP | 43,800 | | 43,800 | | | - | 43,800 |
| Unidentified | 2,329 | | 2,329 | | | - | 2,329 |
| S/T - Subcontract | $ 54,129 | $ - | $ 54,129 | $ 3,313 | $ - | $ 3,313 | $ 50,816 |
| Total Costs | $113,676 | $245,236 | $ 358,911 | $ 26,150 | $ 177,370 | $203,520 | $155,391 |
| JEG FCCOM | $ 185 | $ 50 | $ 1,533 | | | | $ 1,533 |





FOR OFFICIAL USE ONLY

DRAFT

Exhibit B

## Explanatory Notes to Exhibit B

1. Summary of Conclusion.

We questioned $155,391 of JEG's proposed $358,911 settlement expenses. In addition, we questioned FCCOM proposed since the primary performance unit did not have FCCOM rate.

2. Basis of Proposed Costs.

JEG proposed termination expense consisted of:

a. Estimate of $113,676 labor, applicable fringe benefit, G&A, legal services, consulting services, and ODC to be incurred for termination settlement effort subsequent to 1 May 1996.
b. The remaining balance of a three-year employment contract with a key employee for the duration of the subject contract. The remaining balance plus fringe benefit and G&A total $245,236.
c. FCCOM applicable to the above estimated labor and allocable fringe benefit.

3. Audit Evaluation.

a. Except for the specific employee discuss in paragraph 2.b. below, we compared JEG's estimate to cost history as of 30 September 1997 and questioned the differences.
b. For the specific employee who had an employment agreement with JEG, we verified the employee's actual time charges. Our verification noted the employee was charging directly to the contract until May 1996. Subsequently, the employee charged the majority of his time to non-chargeable labor, indirect account. The employee also charged some time to bidding and proposing efforts. In light of JEG's claim that this employee possessed the sole expertise in performing the contract, we do not question JEG's reasonableness in entering into an employment agreement with this employee to secure the success of the program. However, we are not in a position to validate this employee's expertise. We believe contract performance would be the best validation that can be obtained from your office. Nevertheless, we questioned the difference between the remaining balance and the employee's actual labor charges to the project and nonbillable labor account.
c. Since the employee was performing primarily in Greenville which did not have a FCCOM rate, we questioned the amount.

DRAFT

Exhibit C

Schedule of JEG Proposed Subcontract Costs, Subcontractor's Termination Expenses and Results of Audit

| | Proposed | Audit Adjusted | Questioned |
|---|---|---|---|
| Subcontract Costs | | | |
| PSIT | $ 161,680 | $ - | $ 161,680 |
| D.B. Riley | $ 369,143 | $ 65,685 | $ 303,458 |
| Subtotal | $ 530,823 | $ 65,685 | $ 465,138 |
| Subcontractor's Termination Expense | | | |
| PSIT | $ 2,214 | $ - | $ 2,214 |
| D.B. Riley | $ 153,801 | $ 80,967 | $ 72,834 |
| Subtotal | $ 156,015 | $ 80,967 | $ 75,048 |
| Total | $ 686,838 | $ 146,652 | $ 540,186 |

1. Summary of Conclusion.
As shown above, we questioned $540,188 of the $686,839 proposed subcontract settlement expense.

2. Basis of Proposed Subcontract Costs.
JEG proposed subcontract costs included unsettled incurred costs and termination settlement expenses. Included in the subcontract costs were PSIT proposal to recover $161,682 (50%) cost share amount, and D.B. Riley's proposal to recover $365,194 (20%) cost share amount. JEG proposed these costs based on PSIT and D.B. Riley submissions.

3. Audit Evaluation.
We requested assist audits of PSIT and D.B. Riley submissions and subsequent revisions. Appendices 2 and 3, respectively, are copies of assist audit reports of PSIT and D.B. Riley submissions. The assist audit took no exception to PSIT incurred cost of $161,681. However, we questioned this amount which represents PSIT's cost share amount as stated in Result of Audit, subpargraph note 3, page 3 of this report. The assist audit of D.B. Riley also questioned the cost share amount in its entirety. For your convenience, we incorporated the assist audit results in the above audit adjusted column and calculated questioned costs against JEG's initial proposal.

DRAFT

## CONTRACTOR ORGANIZATION AND SYSTEMS

1. ORGANIZATION

Jacobs Engineering Group Inc. (JEG) was originally incorporated in California on 23 August 1957 as a successor to a business organized by Dr. Joseph J. Jacobs in 1947. On 8 January 1987, JEG became incorporated in the state of Delaware. JEG is an engineering and construction organization that specializes in providing engineering, design, construction services, and maintenance in the petroleum refining, petrochemical, mineral, chemical, fertilizer, energy, environmental biotechnology, and pharmaceutical industries. JEG also performs process planning, marketing site planning and economic studies in the foregoing fields. In addition, its provides technical assistance in remedial design and construction management in the environmental hazardous waste field, as well as designing and building high-tech facilities. JEG's annual sales volume for the fiscal year ended 30 September 1998 was$2.1 billion. Of the$2.1 billion, 8.5 percent is government sales.

2. ESTIMATING SYSTEM

The Pricing Department is responsible for preparing cost estimates used in individual price proposals. JEG's detailed estimating policies and procedures are described in its "Estimating System Disclosure Statement." The last revision made to this manual was dated May 1998. In our opinion, JEG's estimating system and internal control policies and procedures are adequate.

3. ACCOUNTING SYSTEM

JEG maintains a job cost accounting system, wherein, contracts are assigned individual project numbers and direct costs are accumulated thereunder. Indirect costs are identified with and accumulated under individual departments, which in turn are identified to the various indirect cost pools. Indirect expenses are recorded and billed to projects via provisional rates. The provisional rates are adjusted to actual rates at year-end, if there is a material impact. In our opinion, JEG's accounting system and the related internal control policies and procedures are adequate for the accumulation and reporting of costs under government contracts.

4. PURCHASING SYSTEM

JEG's purchasing system had been reviewed by DCMC--Van Nuys and is approved through 16 March 2000.

DRAFT

**DCAA PERSONNEL**

| Primary contacts regarding this audit: | Telephone Numbers |
|---|---|
| Stephen Siu, Auditor | (626) 578-6390 |
| Dennis J. Umade, Supervisory Auditor | (626) 579-6930 |
| Other contact regarding this audit report: | |
| Barbara E. Armstrong, Branch Manager | (626) 918-5922 |
| DCAA Office Fax Numbers | FAX Numbers |
| Jacobs Engineering Group Suboffice | (626) 578-6996 |
| San Gabriel Valley Branch Office | (626) 917-4813 |
| | e-Mail Address |
| | dcaa-fao4901@dcaa.mil |

General information on audit matters is available at http://www.dtic.mil/dcaa.

## RELEVANT DATES

*Use this section in demand assignments. These should include, at a minimum, the dates of ACO and PCO requests and the dates of any extensions. The format should facilitate computation of elapsed days (see 10-211 and Fig. 10-2-3).*

**AUDIT REPORT AUTHORIZED BY:**

Barbara E. Armstrong
Branch Manager
DCAA San Gabriel Valley Branch Office

DRAFT

**AUDIT REPORT DISTRIBUTION AND RESTRICTIONS**

DISTRIBUTION

| | |
|---|---|
| Department of Energy<br>Morgantwon Energy Technology Center<br>ATTN: Mr. Joseph Maurey<br>3610 Collins Ferry Road<br>Morgantown, West Virginia 26507-0880 | **e-Mail Address** |

**RESTRICTIONS:**

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requestor.

3. The Defense Contract Audit Agency has no objection to release of this report, at the discretion of the contracting agency, to authorized representatives of Jacobs Engineering Group Inc.

   Nor does this Agency or D.B. Riley Inc. objects to release of the subcontract audit report to authorized representatives of JEG. See Appendix 3 for a copy of the subcontractor's release statement.

   CRS Sirrene incurred cost audit report information should be considered proprietary and should not be released to the prime contractor, Jacobs Engineering Group Inc. until CRS Sirrene give such express authorization. Accordingly, the contracting officer should protect such information from improper disclosure in accordance with FAR 15.407-1(f).

   Physical Science Inc. (PSI) considers the information contained in the subcontract audit report to be proprietary. PSI requested that the subcontract audit report not be release outside of DCAA and DOE, nor to the prime contractor Jacobs Engineering Group Inc. Accordingly, the contracting officer should protect such information from improper disclosure in accordance with FAR 15.407-1(f).

4. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

DRAFT

***[CONTRACTOR'S NAME] WRITTEN RESPONSE***

***[If applicable, include the contractor's written comments]***