IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACOBS ENGINEERING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1500C |
| | ) | |
| THE UNITED STATES, | ) | (Judge George W. Miller) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully requests that the Court grant our cross-motion for summary judgment in this case.

We respectfully request that judgment be entered against the United States in the amount of $919,672, plus interest pursuant to 41 U.S.C. § 611, from April 29, 2002, until the date of payment, and that the complaint be dismissed with prejudice. We further request that the judgment state that payment of the judgment will satisfy the judgment, if any, of the Energy Board of Contract Appeals ("board"), EBCA No. C-0510396, dated January 31, 2006 (copy set forth at A281-83) ("Board Decision")

It is undisputed that $919,672 is the amount of allowable costs incurred by the plaintiff, Jacobs Engineering Group, Inc. ("Jacobs"), during contract performance that has not yet been paid by the United States.

We respectfully request that the Court deny the motion for summary judgment filed by Jacobs, dated July 14, 2006 ("Jacobs Mot."). In its motion for summary judgment, Jacobs seeks an

additional payment in the amount of $565,450 for fee (both for itself and for its subcontractors). E.g., Jacobs Mot. at 9 ("Included in Jacobs' total performance costs is fee of $565,450"). As a matter of law, Jacobs is not entitled to payment for fee.

STATEMENT OF THE CASE

I. Summary Of Recent Proceedings

In proceedings to date, this case has centered upon the proper interpretation of the termination for convenience clause. Specifically, the litigation has centered upon subsection 52.249-6(g). This subsection provides that, if the parties do not agree upon the amount owed the contractor following a termination for convenience, the contracting officer shall pay the following costs:

> All costs reimbursable under this contract, not previously paid, for performance of the contract before the effective date of the termination, and part of those costs that may continue for a reasonable time with the approval of or as directed by the Contracting Officer . . .

A97 (emphasis added); see 48 C.F.R. § 52.249-6 (1986).[1]

In January 2005, this Court interpreted the phrase "all costs reimbursable under the contract" to incorporate all limits

[1] "A" refers to the appendix filed on July 14, 2006 with Jacobs Mot.

upon the obligation to reimburse costs contained in the contract, including the special cost-sharing provision:

> Thus, only those costs that would be reimbursed under the Contract will be paid to the contractor in the event of a termination for convenience. Here 80 percent of Jacob's costs were reimbursable under the cost-sharing provision, B.007(S), J.App. 3, and therefore, under the termination for convenience clause, Jacobs is entitled to only 80 percent of its costs not previously paid.

Jacobs Engineering Group, Inc. v. United States, 65 Fed. Cl. 451, 457 (2005).

(In general, the cost-sharing provision limited reimbursement to 80 percent of costs incurred. Id.; A3 (contract clause B.007(S)(B)). However, the cost-sharing provision permitted Jacobs to treat "foregone fee" as a deemed cost incurred for the purpose of calculating total costs before applying the .8 multiplier. As a result, the cost-sharing formula permitted reimbursement of slightly more than 80 percent of allowable costs. A3.)

The court of appeals reversed, concluding that the contract phrase "all costs reimbursable under the contract" did not incorporate the cost-sharing provision:

> Throughout the contract, when the parties intended the 80 percent -- 20 percent division of costs to cover particular situations, they explicitly so provided. . .

> . In these circumstances, it seems most unlikely that if the parties had intended the termination clause to limit the contractor to 80 percent of the termination costs, they would not have said so instead of providing that the government would pay "all costs reimbursable" under the contract.

Jacobs Engineering Group, Inc. v. United States, 434 F.3d 1378, 1381 (Fed. Cir. 2006).

The court of appeals held that the term "all costs reimbursable under the contract" referred to categories of costs identified in the regulations as allowable costs. Id., at 1380.

The court of appeals remanded this case for a determination of the amount of damages. Id., at 1381.

## II. The Waiver Issue Has Become Moot

During earlier proceedings before this Court, Jacobs could have claimed $72,176.83 – based upon the proper application of the cost-sharing provision to its settlement proposal. This is the amount that the contracting officer determined was owed to Jacobs (after applying the cost-sharing formula, and deducting past payments by Energy) in his final decision.

Jacobs failed to request that this Court enter judgment in the amount of $72,176.83. Accordingly, Jacobs waived this claim.

However, the issue of how much Jacobs might be owed if the cost-sharing formula were applied to its termination settlement proposal is no longer relevant to the decision of this case. The

court of appeals has ruled that the amount owed to Jacobs should be calculated without regard to the cost-sharing formula. Id. Thus, the earlier dispute between the parties (concerning what amount might be owed if the cost-sharing formula is applied) is now moot.

III. The Remaining Dispute Concerns Liability For Fee

The parties have reached agreement concerning certain amounts owed for allowable costs incurred during contract performance.

In its proposed findings of fact, Jacobs admits the contracting officer's calculation of allowable costs plus foregone fee (a total used when calculating the amount owed pursuant to the cost-sharing formula), and Jacobs admits the contracting officer's calculation of past payments made by Energy. Jacobs PFUF 8, fn 2.[2]

The United States, in turn, admits the allegation by Jacobs, in its proposed finding no. 6, that $565,450 is the total amount of foregone fee that was claimed by Jacobs (including the amount of fee for subcontractors) in its claim to the contracting

[2] "Jacobs FFUF" refers to "Plaintiff Jacobs Engineering Group Inc.'s proposed findings of uncontroverted fact," filed by Jacobs on July 14, 2006.

officer. Jacobs PFUF 6 ("which includes $565,450 as fee for Jacobs and its subcontractors").

The agreement between the parties concerning the amount of allowable costs incurred by Jacobs, and not yet paid: $919,672, is established by simple arithmetic:

| | | |
|---|---|---|
| 1. | Total Allowable Costs Plus Fee Claimed By Jacobs on July 14, 2006: | $7,064,722 |
| 2. | Jacobs & Subcontractor Claimed Fee Included In Item 1: | $ 565,450 |
| 3. | Difference Between 1 & 2: | $6,499,272 |
| 4. | Amount Previously Paid To Jacobs: | $5,579,600 |
| 5. | Difference Between 3 & 4: | $ 919,672 |

Thus, the parties agree that $919,672 is the amount of allowable costs incurred by Jacobs and not yet paid.

The only remaining dispute is whether Jacobs is entitled to be paid fee. This dispute concerns an issue of law.

## STATEMENT OF FACTS

The United States relies upon the findings of fact in the Court's previous decision regarding the existance of a contract, and regarding the agency's decision to terminate the contract for convenience.

The following facts, which are material to the calculation of damages at issue in this case, are undisputed:

| | | |
|---|---|---|
| 1. | Total Allowable Costs Plus Fee Claimed By Jacobs on July 14, 2006: | $7,064,722 |
| 2. | Jacobs & Subcontractor Claimed Fee Included In Item 1: | $ 565,450 |
| 3. | Difference Between 1 & 2: | $6,499,272 |
| 4. | Amount Previously Paid To Jacobs: | $5,579,600 |
| 5. | Difference Between 3 & 4: | $ 919,672 |

6. Under contract no. DE-AC21-92MC-28202, the United States agrees that Jacobs is currently due and owed $919,672 for allowable costs (as defined in Federal Acquisition Regulation) incurred by Jacobs, plus interest in accordance with 41 U.S.C. § 611, commencing from April 29, 2002 until paid, provided that an agreement or judgment states that payment of the amount described above will satisfy the judgment, if any, of the Energy Board of Contract Appeals, EBCA No. C-0510396, dated January 31, 2006.

For clarity, the United States further asserts that it does not agree that $565,450 is owed for fee. To the contrary, the United States contends that no payment for fee is owed under contract no. DE-AC21-92MC-28202.

To the extent that it may be deemed relevant, the United States further contends that no payment for fee has ever been made pursuant to the contract.

SUMMARY OF THE ARGUMENT

The United States admits that it owes Jacobs $919,672, plus interest, for allowable costs incurred and not yet paid.

The United States denies that it owes Jacobs $565,450, or any amount, for fee.

This Court has already ruled that Jacobs is not entitled to fee. This ruling became part of the mandate of the court of appeals, as a matter of law. Accordingly, the previous ruling of this Court is binding upon Jacobs.

Moreover, the previous ruling of this Court is correct. The contract expressly states that no fee will be paid. In addition, the contract expressly states that no fee will be paid in the event of a termination for convenience (if no fee is generally payable under the contract). The plain meaning of the contract should be enforced.

In its motion, Jacobs admits the plain meaning of the contract, but seeks reformation. The request for reformation is unreasonable upon its face.

Jacobs alleges that express provisions of the contract should be ignored, and that the contract should be reformed to permit the payment of fee, because exercise of the termination for convenience clause changed the essential nature of the contract. Jacobs cites no legal authority for this vague contention. Indeed, Jacobs has ignored binding precedent concerning the necessary elements of a reformation claim. Jacobs

has not demonstrated the facts necessary to prove a right to reformation.

The alternative argument advanced by Jacobs – that fee is a cost – lacks merit. As a matter of law, fee is not a cost.

Moreover, the Government's exercise of its rights under the termination for convenience clause did not transform fee into a cost. The termination for convenience clause expressly establishes separate rules for the reimbursement of costs and for the reimbursement of fee. Thus, the contract expressly provides that claims for fee are treated differently from claims for cost in the event of a termination for convenience.

The second alternative ground advanced by Jacobs – that this Court is bound by determinations made in the Board Decision – also lacks merit.

First, collateral estoppel may not be applied to any determination in the Board Decision because the board never possessed jurisdiction. The board purported to exercise jurisdiction over a portion of a claim already in litigation. The board lacked jurisdiction to consider such a redundant claim.

Second, even assuming for the sake of argument that the board possessed jurisdiction, there is no basis for applying collateral estoppel in this case. The board never addressed the issue before this Court.

The board never addressed fee at all.

To the extent that the board addressed costs, the board sought to interpret the application of the cost-sharing provision to the termination costs. Relying upon the calculations in the final decision by the contracting officer, the Board Decision assumed that foregone fee, a deemed cost pursuant to the cost sharing agreement, was included in total costs, for the purposes of applying the cost-sharing provision.

The court of appeals has subsequently ruled that the cost-sharing provision is irrelevant to the determination of "all costs reimbursable under the contract." The court of appeals has ruled that Jacobs is entitled to the sum of all allowable costs, not already paid.

The Board Decision did not address whether fee is an allowable cost, and so did not make the finding that is relevant here.

## ARGUMENT

### I. Standard Of Review

Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United

States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989).

A court may consider a motion for summary judgment in stages. The initial inquiry should be whether the movant has presented an adequate legal basis for its motion. If there is no legal foundation for the claim, then no further inquiry is required. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. at 43.

Once a movant has established an adequate legal basis for its motion, the Court must consider whether the opposing party has identified any genuine issues of material fact. The first step is to determine whether the issues raised are truly factual issues, or are issues of law. The second step is to determine what subset of the truly factual issues are material to the decision of the case. The third step is to examine the evidence presented by the parties to determine whether there is any genuine issue concerning any material factual issue. Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. at 43 (describing

three steps); accord Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

In this case, the legal basis for liability is the ruling of the court of appeals that the United States is liable for all allowable costs (as defined by the Federal Acquisition Regulation) not previously paid.

It is undisputed that the amount of allowable costs (as defined by the Federal Acquisition Regulation) not previously paid is $919,672. Thus, no factual issue relevant to our cross-motion is in dispute, and our motion should be granted.

In contrast, Jacobs cannot demonstrate even the first stage of the three-step analysis; Jacobs cannot demonstrate any legal basis for requiring the payment of fee. Thus, there is no need to address any factual issues related to fee. The Jacobs motion is flawed, as a matter of law, and should be denied.

## II. The United States Is Liable For All Allowable Costs (As Defined In The Federal Acquisition Regulation) Incurred By Jacobs But Not Yet Paid

The court of appeals ruled that the cost-sharing provision is not incorporated by reference into the phrase "all costs reimbursable under the contract" in the first sentence of sub-paragraph (g)(1) of the termination for convenience clause (set forth at A97). Instead, the court of appeals ruled that the phrase "all costs reimbursable under the contract" refers to all

allowable costs (as defined in the Federal Acquisition Regulation):

> We conclude, however, that the term "all costs reimbursable" defines the type or kind of costs for which the contract provides reimbursement and not the amount of such costs.
>
> . . . The termination clause's reference to "all costs reimbursable" appears designed to incorporate the contract's division between reimbursable and non-reimbursable costs."

Jacobs Engineering Group, Inc. v. United States, 434 F.3d at 1380-81 (emphasis added).

The court of appeals tracked the "division between reimbursable and non-reimbursable costs" to provisions in the Federal Acquisition Regulation setting forth allowable costs:

> The contract specifies a substantial number of costs that are reimbursable and some that are not. Reimbursable costs include "fabricated or unfabricated, parts, work in process, completed work, supplies, and other materials procured or acquired for the work terminated, . . . completed or partially completed plans, drawings, information, and other property that . . . would be required to be furnished to the Government, . . . and the jigs, dies, fixtures, and other special tools, and tooling acquired or manufactured for this contract." FAR § 52.249-6(c)(6) (may 1986). The also include costs allowable under FAR § 31.2 (see FAR § 52.249-6(h) (May 2004), such as labor relations costs (FAR § 31.205-21), plant protection costs (FAR 31.205-29), and help-wanted advertising costs for jobs specific to the project (FAR § 31.205-34(a)(1). On the other hand,

> entertainment costs (FAR § 31.205-14), fines and penalties (FAR § 31.205-15) and general help-wanted advertisement costs (FAR § 31.205-34(b)) are not reimbursable. The termination clause's reference to "all costs reimbursable" under the contract appears designed to incorporate the contract's division between reimbursable and non-reimbursable costs.

Id. (emphasis added).

Pursuant to the ruling of the court of appeals, the United States concedes that it is liable for all allowable costs (as defined in the Federal Acquisition Regulation) incurred by Jacobs, and not already paid.

It is undisputed that the amount of allowable costs (as defined in the Federal Acquisition Regulation) incurred by Jacobs, and not already paid, is $919,672. Jacobs PFUF 8 (total allowable costs claimed plus total fee claimed equals $7,064,722); Jacobs PFUF 6 (total fee claimed equals $565,450); Jacobs PFUF 8 (past payments by Energy equals $5,579,600).

It is also undisputed that Jacobs is entitled to interest upon the principal amount of $919,672, from the date that the claim was received by the contracting officer (April 29, 2002) until the judgment is paid, pursuant to 41 U.S.C. § 611.

We respectfully request that that the Court enter judgment against the United States accordingly. We further request that the judgment state that payment of the judgment will satisfy the

judgment, if any, of the Energy Board of Contract Appeals, EBCA No. C-0510396, dated January 31, 2006; the judgment of the board was for a portion of the amount owed in connection with the termination for convenience.

III. Jacobs Is Not Entitled To Be Paid Fee

To the extent that the motion for summary judgment filed by Jacobs seeks payment for fee (in addition to payment for allowable costs, plus interest, which the United States admits is owed), the Court should deny the motion for summary judgment filed by Jacobs.

A. The Court Has Already Ruled That Jacobs Is Not Entitled To Fee

In its earlier decision, the Court correctly ruled that Jacobs is not entitled to be paid fee. Jacobs Engineering Group, Inc. v. United States, 65 Fed. Cl. at 459. The Court's previous ruling is the law of the case. Jacobs could have appealed the ruling, and so the trial court's previous ruling falls within the mandate of the court of appeals, and the previous ruling concerning fee is now binding upon Jacobs. Tronzo v. Bioment, Inc. 236 F.3d 1342, 1348 (Fed. Cir. 2001) ("we consider whether the amount of punitive damages was an issue within the scope of the initial judgment of the district court. If so, it was necessarily incorporated within the scope of our mandate in

Tronzo I and foreclosed from further review on remand”) (emphasis added).

B. The Contract Expressly Provides For No Fee

The Court’s previous ruling regarding the payment of fee is plainly correct. The contract expressly provides that Jacobs will not be paid fee:

> The Government shall not pay to the Contractor a fee for performance of this contract.

A121 (emphasis added). The relevant subcontracts also expressly provided that no fee would be paid. SA321[3] (“the clauses of the Federal Acquisition Regulations (FAR) and the Department of Energy FAR Supplement set forth in Part II - Section I of the Prime Contract are hereby incorporated by reference to this Subcontract”); SA406 (same cross reference to standard clauses in the prime contract); see A27 (beginning of Part II - Section I); A121 (no fee provision in Part II - Section I).

Furthermore, the termination for convenience clause contains express provisions describing when, and to what extent, fee will be paid (in the event of a termination for convenience), and

[3] “SA” means the supplemental appendix filed by the United States along with this cross-motion. The supplemental appendix begins at page 284, in order to conveniently distinguish the pages in the appendix filed by Jacobs (1-283).

these provisions make it even more clear that Jacobs is not entitled to fee. Pursuant to subsections (g)(4)(5) of the termination for convenience clause, the contractor may be reimbursed a "portion" of the fee "payable under the contract." A98.[4]

In this case, as the court of appeals recognized, no fee is payable under the contract. Jacobs Engineering Group, Inc. v. United States, 434 F.3d at 1379 ("no fee was payable to the contractor"). Any portion of zero fee is zero fee; thus, no fee is payable pursuant to subsections (g)(4)(5).

---

[4] (4) A portion of the fee payable under the contract, determined as follows:

> (i) If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract, but excluding subcontract effort included in subcontractors' termination proposals, less previous payments for fee.
>
> (ii) If the contract is terminated for default . . .
>
> (5) If the settlement includes only fee, it will be determined under paragraph (g)(4) above.

A98 (emphasis added).

While it is quite apparent that any "portion" of no fee is no fee, nonetheless, the termination for convenience clause contains an express provision addressing a circumstance where the contract provides for no fee:

> (m) The provisions of this clause relating to fee [e.g., subsections (g)(4)(5)] are inapplicable if this contract does not include a fee.

A99 (brackets added).

The language of the contract is plain, and should be enforced. Indeed, it is black-letter law that the plain meaning of contract language is binding:

> We begin with the plain language. [Citations omitted.] We must interpret the contract in a manner that gives meaning to all its provisions and makes sense. [Citations omitted.] Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning."

McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

C. Jacobs Has Failed To Demonstrate Entitlement to Reformation Of The Contract

In its brief, Jacobs urges the Court to ignore the plain meaning of the contract, and to reform the contract. In essence, Jacobs contends that the language in the contract was intended to be reformed in the event of a termination for convenience. In

its view, the contract should be reformed to effectively delete contract terms barring the payment of fee:

> Jacobs does not dispute that pursuant to FAR 52.216-12 [set forth at A121], the Government was not required to pay Jacobs a fee for performing this Contract in the context of a cost-sharing agreement; the very title of this clause states "Cost-Sharing No Fee." However, because of the termination for convenience, this Contract is clearly no longer a cost-sharing contract as determined by the Federal Circuit. Rather, Jacobs' Contract is purely a cost reimbursement contract entitling Jacobs to the recovery of 100 percent of its performance costs, including fee under FAR 52.249-6(g)(4). Logically, if this Contract is not a cost-sharing contract, then the no fee provision of the cost-sharing arrangement is also not applicable.

Jacobs Mot. at 9-10 (emphasis added). This argument lacks merit for several reasons.

First, Jacobs has misconstrued the holding of the decision of the court of appeals. The court of appeals did not hold that any provisions of the contract should be deleted, or declared void, simply because the agency elected to terminate the contract for convenience.

Instead, the court of appeals merely interpreted the meaning of the phrase "all costs reimbursable under the contract" in subsection (g)(1) of the contract. In other words, the court

applied the terms of subsection (g)(1) in the contract as written:

> We conclude, however, that the term "all costs reimbursable" defines the type or kind of costs for which the contract provides reimbursement and not the amount of such costs.
>
> . . . The termination clause's reference to "all costs reimbursable" appears designed to incorporate the contract's division between reimbursable and non-reimbursable costs."

Jacobs Engineering Group, Inc. v. United States, 434 F.3d at 1380-81 (emphasis added). The court of appeals did not need to delete any language of the contract to reach its conclusion, and the court of appeals did not suggest that any clause was constructively deleted or declared void.

Second, we urge the Court to take notice that the court of appeals interpreted a subsection of the termination for convenience clause addressing costs payable in the event of a termination for convenience. Id., at 1380. The court of appeals did not address the separate subsections concerning fee (e.g., subsections (g)(4)(5) and (m)), except to note that "no fee was payable to the contractor"). Id., at 1379.

Third, Jacobs' citation to its own "logical" conclusion (that the contract was no longer a cost-sharing "arrangement" so the provision regarding fee should be deleted) – without any

citation to legal authority – is unconvincing. It is also contrary to binding precedent.

It is black-letter law that contracts are interpreted to give meaning to all of the provisions in the contract:

> interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous

Hol-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965).

In this case, there are express contract clauses providing for the payment of fee in certain limited circumstances following a termination for convenience. A98 (subsections (g)(4)(5)); A99 (subsection (m)). The conditions are not met here. Thus, to give meaning to subsections (g)(4)(5), the contract should be interpreted to not provide for the payment of fee in this case.

Similarly, subsection 52-259-6(m) states that the provisions related to the payment of fee (in the event of a termination for convenience) do not apply if the contract does not generally provide for a fee. To give meaning to subsection (m), one must conclude that no fee is owed to Jacobs.

Fourth, in making its argument about deleting the "no fee" provision, Jacobs implies that subsection (g)(4) describes a category of costs:

> entitling Jacobs to the recovery of 100 percent of its performance costs, including fee under FAR 52.249-6(g)(4) . . .

Jacobs Mot. at 10. This contention lacks merit. As a matter of law, fee is not a cost. 48 C.F.R. § 15.901 (distinguishing "profit or fee" from cost); see 48 C.F.R. § 31.201-1 (describing cost generally); see generally 48 C.F.R. Part 31 (cost principles).

Fifth, the true nature of the argument advanced by Jacobs is a claim for reformation of the contract. Jacobs contends that a termination for convenience transforms the nature of the contract, and so express provisions in the contract should be ignored:

> because of the termination for convenience, this Contract is clearly no longer a cost-sharing contract . . . Rather, Jacobs' Contract is purely a cost reimbursement contract entitling Jacobs to the recovery of 100 percent of its performance costs, including fee under FAR 52.249-6(g)(4).
>
> . . . in the case of [the Government's] argument that fee is not a recoverable cost in the event of a termination for convenience, one must read into the contract language that does not *exist* in the Contract. Nothing in the Contract suggests that this no fee provision applies unless cost-sharing is in effect. To the contrary, the title of the clause suggests it only applies in the event of cost sharing.

Jacobs Mot. at 10 (underlining added; italics indicate emphasis in the original).

Jacobs imples that "the event of cost sharing" was somehow essential to the contractual relationship – without citing to any regulation of contract language. Jacobs further implies that after the contract was terminated, the nature of the contract was so entirely changed that the contract should be re-written.

To the contrary, the right to terminate the contract for convenience was a right established by an express provision <u>in the contract as originally signed</u>. A96. The termination for convenience provision was always an integral part of the cost-sharing contract executed by the parties.

Similarly, the rights to payment conferred upon Jacobs – and the limits on payments -- in the event of a termination for convenience were also established by express provisions in the contract as originally signed. A97-99. Again, these rights and limitations were always integral parts of the cost-sharing contract executied by the parties.

As a necessary corrolary to its argument, Jacobs implies that new provisions providing for some rate of fee payment should be constructed and read into the contract. Jacobs never quite states this point, but it is clearly implied by the definite

amount of fee claimed by Jacobs. In other words, fee cannot be calculated without assuming some standard of entitlement.

Jacobs cites no legal authority for reforming the contract to construct a provision providing for a certain rate of fee, and we know of no such legal authority.

Indeed, Jacobs has not demonstrated any right to reformation of any part of the contract.

A contract will not be reformed because a contractor reaches the conclusion, after contract award and performance, that the contract provisions are not fair, or, at least, not as favorable to the contractor as it originally believed. Manufacturer's Finance Company v. McKey, 294 U.S. 442, 449 (1935) (in the absence of fraud, accident, or mistake, a court of equity cannot change the terms of a contract); accord American President Lines, Ltd. v. United States, 821 F.2d 1571, 1582 (Fed. Cir. 1987).

Reformation of contract terms is only available to correct certain mistakes or illegal actions, and so conform the contract to the real intent of the parties:

> The purpose and function of the reformation of a contract is to make it reflect the true agreement of the parties on which there was a meeting of the minds.

American President Lines, Ltd. v. United States, 821 F.2d at 1582; accord Atlas Corporation v. United States, 895 F.2d 745,

750-51 (Fed. Cir. 1990); American Telephone and Telegraph Company v. United States, 307 F.3d 1374, 1381 (Fed. Cir. 2002).

In its brief, Jacobs does not allege – much less prove – any mutual mistake concerning the payment of fee. See Dairyland Power Cooperative v. United States, 16 F.3d 1197, 1202-03 (Fed. Cir. 1994) (elements of mutual mistake).

At most, Jacobs alleges a right to reformation based upon the title of a contract clause:

> Nothing in the Contract suggests that this no fee provision applies unless cost-sharing is in effect. To the contrary, the title of the clause suggests it only applies in the event of cost sharing.

Jacobs Mot. at 10 (emphasis added). This argument lacks merit.

It is true that the title of the relevant contract clause mentions cost sharing:

> FAR 52.216.12 – Cost-Sharing Contract – No Fee (Apr 1984).

A121. However, this title does not suggest any clerical error, any mutual mistake, or any other basis for reformation. Indeed, the title is not even inaccurate.

The contract is a cost-sharing agreement within the meaning of the regulations:

> A cost-sharing contract is a cost-reimbursement contract in which the contractor receives no fee and is reimbursed

> only for an agreed upon portion of allowable costs.

48 C.F.R. § 16.303(a) (emphasis added). The regulatory definition describes the contract at issue in this case. The mere fact that a cost-sharing contract includes a termination for convenience clause does not imply that all of the terms of the contract are malleable, and that all terms of the contract shall be subject to reformation in the event of a termination for convenience.

To the contrary, the termination for convenience clause was a part of the written contract. The express terms can be enforced without changing any other express terms, and such contract interpretation is preferred, as a matter of law. Hol-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. At 395, 351 F.2d at 979 (an interpretation that gives meaning to all express provisions is preferred).

Jacobs's claim for fee in the amount of $565,450 lacks merit. Accordingly, its motion for summary judgment should be denied to the extent that Jacobs seeks payment for fee.

IV. Fee Is Not A Cost

In its motion, Jacobs seeks to recover fee as fee, pursuant to standard clause 52.249-6(g)(4), set forth at A98. Jacobs Mot.

at 10 ("including fee under FAR 52.249-6(g)(4)"). We addressed such arguments in the previous section of this brief.

In the alternative, Jacobs also seeks to recover fee as a "cost."

There are several examples of Jacobs's contention that fee is recoverable as a cost in its motion:

> the principal issue for this Court is whether fee is proper for inclusion in the total costs of performance

Jacobs Mot. at 1 (emphasis added);

> Included in Jacobs' total performance costs is fee of $565,450. PPFF 6. Fee is a recoverable cost under the termination clause of the Contract when the Contract is terminated for convenience – which is the case here. PPFF 5. See FAR 52.249-6(g)(4)(i).

Jacobs Mot. at 9 (emphasis added); see Jacobs Mot. at 8 (calculating total costs owed without separating out the fee included in its claim).

Jacobs is mistaken. Fee is not a "cost" under the contract.

Indeed, fee is not a "cost" at all. 48 C.F.R. § 15.901 (distinguishing "profit or fee" from cost); see 48 C.F.R. § 31.201-1 (describing cost generally); see generally 48 C.F.R. Part 31 (cost principles).

Moreover, nothing in the termination for convenience clause states or implies that fee should be treated as a cost in the

event of a termination for convenience. To the contrary, the relevant section of the termination for convenience clause addresses cost and fee issues separately. Compare A97 (subsections (g)(1)(2)(3) concerning costs) with A98 (subsections (g)(4)(5) concering fee) and A99 (subsection (m) concerning fee).

The initial sentence of subsection (g) of the termination for convenience clause references both costs and fee:

> (g) If the Contractor and the Contracting Officer fail to agree in whole or in part on the amount of costs and/or fee to be paid because of the termination of work, the Contracting Officer shall determine, on the basis of information available, the amount, if any, due the Contractor, and shall pay that amount, which shall include the following:

A97 (emphasis added). However, the subsequent subsections treat costs and fee separately.

Subsections (g)(1)(2)(3) address "costs" recoverable pursuant to a termination for convenience. A97-98. Subsequently, and separately, the contract addresses the issue of fee:

> (4) A portion of the fee payable under the contract, determined as follows:
>
> (i) If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract, but excluding subcontract effort included in

> subcontractors' termination proposals, less previous payments for fee.
>
> (ii) If the contract is terminated for default . . .
>
> (5) If the settlement includes only fee, it will be determined under paragraph (g)(4) above.

A98 (emphasis added). By the plain meaning of subsection (g)(4), the fee payable to Jacobs pursuant to a termination for convenience is a portion of the "fee payable under the contract." A98. Because no fee was payable under the contract, no fee is payable to Jacobs.

Contrary to Jacobs' contention, Jacobs Mot. at 9, fee does not become a "recoverable cost" when a contract is terminated for convenience. Recoverable costs are defined in subsections (g)(1)(2)(3). A97-98. Entirely different rules are established for fee in subsections (g)(4)(5). A98.

In its brief, the only legal authority other than subsection (g)(4)(i) that Jacobs cites for its extraordinary contention that fee turns into cost upon a termination for convenience is a single case decided by the board of contract appeals. Richerson Construction, Inc., GSBCA 1161, 93-1 BCA ¶ 25239. This case is inapposite.

Richerson does not hold that fee is transformed into a cost upon a termination for convenience. Richerson was concerned with

the termination for default of a fixed price contract; no fee claim was ever at issue.

In Richerson, the agency terminated for default a fixed-price construction contract. The termination for default was not upheld; the termination was declared to be for the convenience of the Government; and the agency was ordered to pay costs and 12 percent profit (the rate of profit that the contractor proved that it was likely to make, taking into account certain regulatory factors). In other words, fee was paid as fee.

In summary, the decision to permit 12 percent profit in Richerson (instead of the 10.7 percent profit advocated by the agency) was based upon different contract provisions and different facts. Richerson in no way supports Jacobs' contention that fee is transformed into cost.

In conclusion, there is no merit to Jacobs's claim that fee in the amount of $565,450 is recoverable as a cost. We respectfully request that the Court deny the motion for summary judgment regarding this claim. The claim fails as a matter of law.

Furthermore, assuming for the sake of argument that the Court were rule that fee should be reimbursed as a cost, the Jacobs fails for lack of a factual foundation. Jacobs has not demonstrated that it incurred $565,450 in costs for fee.

V. The Decision Of The Board Of Contract Appeals In January 2006 Does Not Establish That Jacobs Has Any Right To Be Paid Fee

In its motion, Jacobs seeks to apply collateral estoppel to the Board Decision (copy set forth at A281-83) to establish that the calculation of total costs incurred on the project includes fee. Jacobs Mot. at 11-14.

There are two fundamental flaws in this contention.

First, the Board Decision is void because there was never any jurisdiction for the board to consider the complaint filed by Jacobs.

Second, there is no basis for applying collateral estoppel to the Board Decision because the board never addressed the issue in dispute before this Court.

The Board Decision is void because it arose from an appeal of a redundant claim. Specifically, in August 2005, Jacobs sought to submit a "claim" for a portion of an earlier claim that Jacobs had submitted in April 2002. The 2002 claim was subject to a final decision, and ultimately appealed to this Court, so initiating this proceeding.

The board possessed no jurisdiction over the August 2005 claim (which was a portion of the 2002 claim). Once a claim has been submitted, has been subject to a final decision, and the final decision has been appealed to this Court, the Department of

Justice gains exclusive authority to handle the matter, and the contracting officer is divested of any authority to address the same claim further. Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed. Cir. 1996). Without a final decision concerning a subsequent submission of the same claim (or any portion of the same claim), there can be no jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. ("CDA"). Sharman Company v. United States, 2 F.3d 1564, 1571-72 (Fed. Cir. 1993), rev'd on other grounds sub nom. Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995); see D.L. Braughler Company v. West, 127 F.3d 1476, 1480-81 (Fed. Cir. 1997).

In any event, the board never made the finding that Jacobs alleges.

The board never found that fee should be included in a calculation of allowable costs. This issue was never before the board.

Instead, the board accepted the contracting officer's determination (in its 2002 final decision) of the proper application of cost-sharing provision. The board determined that Energy was still liable for the debt found by the contracting officer by application of the cost-sharing provision.

The cost-sharing provision permitted "foregone fee" to be treated as a deemed cost for the purpose of making the cost-

sharing calculation. A3. Thus, to the extent that the board decision can be construed as making any finding independent of the findings in the final decision, the board decision only states the amount of allowable costs plus foregone fee.

Foregone fee is fundamentally different than fee (as the latter is defined in the Federal Acquisition Regulation). Foregone fee is a mere deemed cost used for the purposes of the cost sharing provision – and for no other purpose in the contract.

The court of appeals has ruled that the cost-sharing provision is not relevant to the calculation of "all costs reimbursable under the contract" referenced in section 52.249-6(g)(1) of the contract. Instead, the court of appeals ruled that the calculation of "all costs reimbursable under the contract" should be interpreted as encompassing allowable costs, as set forth in the Federal Acquisition Regulation, without regard to the terms of the cost-sharing provision. Jacobs Engineering Group, Inc. v. United States, 434 F.3d at 1380-81.

Neither the final decision nor the board sought to determine the total amount of allowable costs not yet paid. Thus, even assuming for the sake of argument that the board possessed jurisdiction, there is no finding in the Board Decision that may

serve as a basis for collateral estoppel in the present dispute concerning the total amount of allowable costs.

A. The Board Never Possessed Jurisdiction

The genesis of the board proceeding was a mistake committed by Jacobs during earlier proceedings in this case.

During proceedings before this Court, Jacobs argued that the cost-sharing provision should not be applied to its termination settlement proposal. However, Jacobs neglected to argue, in the alternative, that even if the cost-sharing provision were applied, then Jacobs was entitled to $72,176.83 (the amount awarded by the contracting officer in the final decision).

In other words, Jacobs waived its alternative claim for $72,176.83 (an amount that the United States did not dispute) by failing to request the money from this Court, and by failing to support any such request with proof. Wilner v. United States, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (when a contractor appeals a final decision to the Court of Federal Claims, review is de novo, and the contractor must prove all damages at trial – even those damages previously awarded in the contracting officer's final decision).

After Jacobs had filed a notice of appeal from this Court's previous decision, counsel for the United States alerted counsel for Jacobs to the waiver, and stated that the United States would

not oppose a motion to remand the case to this Court in order to address the matter. Jacobs decided not to file any such motion for remand.

While Jacobs's appeal was still pending before the court of appeals, Jacobs submitted an invoice to Energy for the amount awarded by the contracting officer in 2002 (minus $200, to avoid any Government claim that final payment had been made). Subsequently, in August 2005, Jacobs submitted a claim for the invoiced amount. Shortly thereafter, Jacobs filed a complaint at the board seeking &71,976.83 ($72,176.83 minus $200) – based upon the contracting officer's application of the cost-sharing provision to its settlement proposal in the 2002 final decision:

> In response to Jacobs' termination settlement proposal, the Government refused to pay the costs for certain elements of work [unallowable costs]. In addition, the Government asserted that it was only required to pay 80% of the total approved costs [allowable costs plus "foregone fee," which was a deemed cost for the purposes of the cost-sharing formula] pursuant to the cost sharing provision set forth at Section B.007(S) of the Contract.
>
> . . . the Contracting Officer concluded that Jacobs was entitled to a payment in the amount of $72,176.83.
>
> . . . On May 9, 2005 [while its appeal from this Court's earlier decision was pending], Jacobs submitted an invoice to the Government in the amount of $71,976.83 . . . Jacobs reserved $200.00 from the total amount due in

> order to avoid any waiver of claims resulting from what could have been construed as final payment.
>
> . . . On August 9, 2005, Jacobs submitted a certified claim and requested . . . $71,976.83 for amounts due Jacobs as determined by the Contracting Officer's final decision dated September 13, 2002.
>
> . . . WHEREFORE, Appellant Jacobs prays that this Board find that Appellant's entitled to payment in the amount of $71,976.83 . . . .

SA287-88 (underlining and brackets added).

The board possessed no jurisdiction to consider the redundant August 2005 "claim" alleged in the complaint to the board. The August 2005 claim was a claim for a portion of its earlier April 2002 claim (the portion that had been ruled to be valid by the contracting officer in the 2002 final decision).

Both the April 2002 claim and the August 2005 claim sought amounts beyond the threshold amount of payments already made by Energy.

The April 2002 claim asserted a right to 100 percent of allowable costs plus fee, minus the payments already made. The August 2005 "claim" seeks a right to 80 percent of allowable costs plus the deemed cost "foregone fee," minus the payments already made. These claims overlap to the extent of the August 2005 claim. Compare A282-83 (board decision awarding Jacobs $72,176.83 for the difference between $5,651,777.43 and

$5,579,600.60 already paid) and Jacobs Mot. at 3 (seeking difference between 7,065,721 (allowable cost plus fee) and $5,579,600.60 already paid).

This August 2005 "claim" was thus not a new claim for the purposes of the Contract Disputes Act, 41 U.S.C. § 601 et seq., because the August 2005 claim was based upon the same underlying facts as the April 2002 claim and because the August 2005 claim sought a portion of the same damages sought as part of the April 2002 claim. Case, Inc. v. United States, 88 F.3d at 1010-11 (a claim is the same if it involves not only the same underlying facts, but also seeks the same damages).

The only new aspect of the August 2005 claim was its reliance upon the contracting officer's 2002 final decision. However, this aspect of the second claim added nothing of legal significance. As a matter of law, the contracting officer's award of damages in the 2002 final decision became a nullity at the moment that Jacobs appealed from that final decision. Wilner v. United States, 24 F.3d at 1403, n.8 (when a final decision is appealed, the final decision is "deemed vacated").

In summary, the August 2005 claim was merely a second filing of a portion of the April 2002 claim.

The contracting officer lacked authority to act upon the second submission of a portion of the same claim. Case, Inc. v.

United States, 88 F.3d at 1009. Because there could be no final decision regarding this second submission, there could be no jurisdiction to consider the second submission at either the board or at this Court. Sharman Company v. United States, 2 F.3d at 1571-72 see D.L. Braughler Company v. West, 127 F.3d at 1480-81.

Thus, the board erred by asserting jurisdiction over the second submission.

As a result of its own actions and the board's mistake, Jacobs is now in the awkward position of asking this Court to enter a judgment requiring the United States to reimburse certain costs for which Jacobs already has a board judgment.[5] This is a harm that might be expected when two tribunals consider the same matter simultaneously.

In any event, the board never possessed jurisdiction to consider the April 2002 claim, or any part of the April 2002 claim (i.e., the August 2005 claim), which had already been subject to a final decision in 2002, and which had already been appealed to this Court in 2002. Thus, the decision and judgment of the board are nullities.

---

[5] We assume that Jacobs will admit that it is not entitled to be paid this amount twice.

Because Jacobs has not identified any valid prior proceeding, no collateral estoppel is available. Montana v. United States, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (emphasis added).

B. The Board Did Not Find That Fee Was A Cost

In its motion, Jacobs bases its claim for collateral estoppel upon misleading semantics.

Jacobs inaccurately implies that "total allowable costs" found by the board for the purposes of application of the cost-sharing provision is the same determination of "total allowable costs" within the meaning of the Federal Acquisition Regulation which is required to be made by this Court pursuant to the decision of the court of appeals:

> the Board also necessarily determined that $7,064,721, was the total allowable costs, applied 80 percent of this total ($5,651,777.43) and deducted payments of $5,579,600.60 to reach the judgment amount of $72,176.87 . . .

Jacobs Mot. at 13 (emphasis added);

> the total costs of performance raised by the Government in this matter is identical to

> <u>that already litigated</u> in the prior Board proceeding . . .

Jacobs Mot. at 13-14 (emphasis added);

> the Board's determination regarding <u>total allowable cost</u> was necessary for the Board's decision . . .

Jacobs Mot. at 14 (emphasis added);

> the Government had a full and fair opportunity to litigate <u>the issue</u> at the Board proceeding . . .

Jacobs Mot. at 14 (emphasis added).

By equating "foregone fee" (included in the calculations – pursuant to the terms of the cost-sharing provision – of both the final decision and the board decision) with ordinary fee, Jacobs has not been candid with the Court.

Foregone fee is fundamentally different than fee (as the latter is defined in the Federal Acquisition Regulation). Foregone fee is a mere deemed cost used for the purposes of the cost sharing provision – and for no other purpose in the contract. A3 (contract).

Indeed, Jacobs has made a binding party admission that foregone fee is fundamentally different from fee:

> As acknowledged by the Government, <u>"foregone fee" is separate and distinct from fee</u> and is <u>only recoverable in the context of a cost-sharing agreement</u>.

Jacobs Mot at 10 (emphasis added) (party admission). Judicial admissions are binding, and conclusive. E.C. McAfee A/C Bristol Metal Industries of Canada, Ltd. v. United States, 832 F.2d 152, f* (Fed. Cir. 1987); De Brousse v. United States, 28 Fed. Cl. 187, 188-89 (1993).

Fee, unlike foregone fee, is not a deemed cost – or any kind of cost. 48 C.F.R. § 15.901 (distinguishing "profit or fee" from cost); see 48 C.F.R. § 31.201-1 (describing cost generally); see generally 48 C.F.R. Part 31 (cost principles).

Similarly, the allegation by Jacobs that the United States "had a full and fair opportunity to litigate the issue at the Board proceeding," Jacobs Mot. at 14, lacks merit. The issues before the board were entirely different from the issues now before this Court.

At the board, both parties agreed that foregone fee was a deemed cost that should be included for the purposes of making the cost-sharing calculation. It was uncontested before the board, and it remains uncontested today, that the 2002 final decision awarded Jacobs $72,176.87 by application of the cost-sharing provision. E.g., A172 ("Neither clause provides relief from the cost sharing requirement in the event of termination") (final decision).

It was uncontested before the board, and we believe that it remains uncontested today, that the contracting officer properly included "foregone fee" as a deemed cost in his calculation of the amount owed pursuant to the cost-sharing provision:

> Clause I.020a, Cost Sharing - No Fee clearly states that the Government shall not pay a fee to the contractor performing this contract. Consistent with DOE practice, CRS was allowed to consider foregone fee as part of its cost share. Therefore, foregone fee was included in the total project cost and was part of the basis against which the cost sharing formula was applied.
>
> . . . in accordance with Clause I.020a and FAR 52,249-6(m), JEG is not entitled to reimbursement of fee on contract or termination costs, however, foregone fee is included in the total project cost for cost sharing purposes.

A172 (final decision) (emphasis added); A173 (chart in final decision lists foregone fee for prime contractor – though subcontractor fee is not separately identified on the chart); A3 (cost-sharing provision); see Jacobs Mot. at 10-11 (admitting that final decision included only foregone fee) ("the [contracting officer] knowingly included the exact same fee as a reimbursable cost, albeit in part, if cost-sharing was in force. Now, the circumstances have changed (i.e. no cost sharing is in place) and the Government seeks to reverse its position on this fee") (emphasis and brackets added).

In the Board Decision, there is no finding concerning the proper calculation of allowable costs. Furthermore, there is no finding regarding whether fee is a reimbursable cost. See A281-83. Instead, the board merely recited the calculations made by the contracting officer in the final decision before discussing the issue that the board considered to be the one before it:

> Under the contract, Jacobs was not to receive a fee. . . . In his final decision, the Contracting Officer found that Jacobs was only entitled to reimbursement for 80% of the costs. He found that the total allowable cost of performance was $7,064,721.79, and that Jacobs had been paid$5,579,600.60. Therefore, he found that Jacobs was entitled to be paid $72,176.83 to bring payments up to 80% of allowable costs.
>
> . . . The issue to be decided here is whether the claimed $72,176.83 is part of the claim that was appealed to the Court of Federal Claims . . . or is an independent claim

A281-82 (emphasis added). The board did not mention whether foregone fee was an element of the "basis" for the cost-sharing calculation, and there was no need for the board to decide the issue.

How the contracting officer had arrived at the amount awarded in the final decision (by application of the cost-sharing provision) was not in dispute before the board. Instead, the dispute before the board was whether the August 2005 claim was the "same" as the April 2002 claim, and so whether there was

jurisdiction for the board to consider Jacobs's claim for payment pursuant to the cost-sharing provision.

Whether foregone fee was included in the final decision's determination of the basis for the cost-sharing calculation was irrelevant to the board decision.

In summary, Jacobs has failed to demonstrate any of the elements required to be proven before collateral estoppel will be applied:

(1) identity of issues in the prior proceeding;

(2) the issues were actually litigated;

(3) the determination of issues was necessary to the resulting judgment; and

(4) the party defending against preclusion had a full and fair opportunity to litigate the issues.

Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360, 1366 (Fed. Cir. 2000) (required elements).

CONCLUSION

For the reasons stated above, we respectfully request that the Court grant judgment in favor of Jacobs, and against the United States, in the amount of $919,672, plus interest pursuant to 41 U.S.C. § 611, from April 29, 2002, until the date of payment. We further request that the judgment state that payment of the judgment will satisfy the judgment, if any, of the Energy Board of Contract Appeals, EBCA No. C-0510396, dated January 31,

2006. Finally, we request that the Court deny all other requests for relief and enter final judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

S/ David M. Cohen
DAVID M. COHEN
Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-307-6289
Fax: 202-514-7969

October 2, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 2, 2006, a copy of the foregoing "DEFENDANT’S CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier