incorporated by reference in Exhibit "C" into this Subcontract.

8. CLAUSE HEADINGS

The headings and subheadings of clauses contained herein are used for convenience and ease of reference and do not limit the scope or intent of the clause.

9. COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS

Seller, as a contractor, will comply with all Federal, State, Municipal and local laws, rules and regulations that may be applicable to this Subcontract and, at the request of Buyer or the Government, Seller will furnish certificates to the effect that it has complied with said laws and regulations. Seller represents that it has complied and will continue to comply during the performance of this Subcontract with the provisions of the "Fair Labor Standards Act" of 1938, as amended, and the "Occupational Safety and Health Act" of 1970, and with the regulations and standards issued pursuant thereto.

10. [NOT USED]

11. FALSE CLAIMS AND INDEMNITY

The Seller shall indemnify the Buyer for any cost incurred and any payments made by the Buyer resulting from false claims submitted by the Seller under this Subcontract, or as a result of a Seller's misrepresentation of fact or fraud under appeals made by the Buyer or Seller under Article 1 entitled "Applicable Law and Disputes". The Buyer shall notify the Seller, in writing, of any allegations of a false claim, misrepresentation of fact or fraud to which this indemnity applies.

12. <u>GOVERNMENT VISITS</u>

The Government and/or its designated representative(s) shall be permitted to visit the Seller with respect to this Subcontract only after arrangements have been made with the Buyer's Project Director. Visits of a routine nature, e.g., audit and inspection are not covered by this article.

13. <u>GRATUITIES</u> (FAR 52.203-3)

A. The Buyer may, by written notice to the Seller, terminate the right of the Seller to proceed under this Subcontract if it is found that gratuities, (in the form of entertainment, gifts, or otherwise), were offered or given by the Seller, or any agent or representative of the Seller to any officer or employee of the Government or the Buyer with a view toward securing this Subcontract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing of this Subcontract; provided, that the existence of the facts upon which the Buyer makes such findings shall be in issue and may be reviewed in any competent court.

B In the event this Subcontract is terminated as provided in paragraph A. hereof, the Buyer shall be entitled to pursue the same remedies against the Seller as it could pursue in the event of a breach of the Subcontract by the Seller.

C. The rights and remedies of the Buyer provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Subcontract.

14. <u>IDENTIFICATION OF DATA</u> (FAR 52.227-14)

Technical Data, as defined in the "Rights in Technical Data and Computer Software" clause of the Prime Contract, delivered under this Subcontract shall be marked with the

Prime contract Number, this Subcontract Number, the Buyer's name, the Seller's name, and, if applicable, the name of the subcontractor who generated the data.

Seller restricted computer software subject to Paragraph (g)(i) of FAR 52.227-14 are listed below and as being restricted computer software:

- ABHITZEKESSEL (HRSG thermal design)
- ATTACH (design and analysis of structural steel attachments)
- BACKPASS (Convective heat transfer in Circofluid boilers)
- BASEPLT ()design and analysis of column base plates)
- BASICS (combustion system calculations)
- BEAMGRID (design and analysis of beam/floor platform systems)
- BPHT (convective heat transfer
- CREEP (analysis of creep in pressure parts)
- DRUDUR (pressure drop in headers)
- DRUMTHICK (design and analysis of boiler drums)
- FASTFIRE (furnace radiative heat transfer)
- FATIGUE (analysis of fatigue in pressure parts)
- FWHEATER (design and analysis of feedwater heaters)
- GASSER (fixed bed gasifier performance)
- GASVIBRA (gas-flow induced vibration analysis)
- GIRDER (design and analysis of built-up plate girders)
- HTBUNDLE (heat transfer water and evaporating steam duty bundles)
- KEDI (boiler diagnostics & design/analysis)
- LUG (design and analysis of structural steel lugs)
- METLTHICK (design and analysis of headers and other small pressure vessels)
- METSEL (metal selection for convective sections)
- NATCIR (natural circulation)
- Riley CAD system subroutines
- Riley $NO_x$ Prediction Computer program
- STACK (design and analysis of steel chimneys and stacks)
- TRD301A1 (cycling ability of pressure parts)
- VESLTHICK (design and analysis of pressure vessels)





314

Buyer shall provide the DOE Contracting Officer with advance written notification of Seller's designation of the above listed items as restricted computer software upon the execution of this Subcontract pursuant to Clause H.041C of the Prime Contract. The above listed restricted computer software shall not be subject to call-up by the DOE Contracting Officer, or an authorized representative of such Contracting Officer, or the Buyer pursuant to subsection (g)(3) of Clause FAR 52.227-14 or I.118 of the Prime Contract. The above listed restricted computer software may be inspected by the DOE Contracting Officer, or an authorized representative of such Contracting Officer, under subsection (j) of such Clause and such inspection shall be subject to appropriate provisions for confidentiality.

Seller limited rights data subject to Paragraph (g)(i) of FAR 52.227-14 are listed below as being limited rights data.

- Seller and its affiliates Gasifier design data not disclosed in U.S. Patents or published literature
- Heat Recovery Steam Generator (HRSG) design data not disclosed in U.S. Patents or published literature
- Hot Gas Filtration design data not disclosed in U.S. Patents or Published literature
- All Seller burner design data not disclosed in U.S. Patents or Published literature
- Seller Engineering and Drafting Standards
- Seller Construction Standards

Buyer shall provide the DOE Contracting Officer with advance written notification of Seller's designation of the above listed items as Limited rights data upon the execution of this Subcontract pursuant to Clause H.040A3 of the Prime Contract. The Buyer shall obtain the DOE Contracting Officer's agreement that the above limited rights data shall be listed as "Technical data not required to be delivered" pursuant to Clause H.040C of the Prime Contract and shall not be subject to call-up by the DOE Contracting Officer or the Buyer pursuant to subsection (g)(2) of the Clause, FAR 52.227-14 or Clause H.039A of the Prime Contract. The above listed limited rights data may be inspected by the DOE Contracting Officer, or an authorized representative of such Contracting Officer under subsection (j) of such Clause.

15. <u>INDUSTRIAL LAWS</u>

The Seller, in all matters relating to this Subcontract, shall be acting as an independent contractor. Neither the Seller nor any of the persons furnishing materials or performing work or services which are required by this Subcontract are employees of the Buyer within the meaning of or the application of any Federal or State Unemployment Insurance Law or other Social Security or any Workmen's Compensation, Industrial Accident Law or other Industrial or Labor Law. The Seller, at its own expense, shall comply with such laws, and assume all obligations imposed by any one or more of such laws with respect to this Subcontract.

16. <u>INVOICING AND PAYMENT</u>

A. Seller shall comply with the terms of Paragraph G.003c of the Prime Contract in preparing its invoices to Buyer.

B. All invoices shall be forwarded to Buyer at:

1041 E. Butler Road
P.O. Box 5456
Greenville, SC 20606-5456
Attention: Accounts Payable.

C. With the final invoice there shall be submitted the following:

1. A certification that invoices of all suppliers and subcontractors have been paid.

2. If applicable, three (3) completed copies of Royalty Report (DD Form 783) and Final Patent Report (DD Form 882) or equivalent forms.

3. A release discharging Buyer and the Government of and from any liabilities, obligations and claims arising out of or under this Subcontract.

Buyer agrees to pay all invoices within forty-five (45) days after submittal by Seller. Interest in accordance with FAR 52.232-25 "Prompt Payment" shall be applicable for late invoices. The Seller shall show the amount of foregone fee on his invoices on a percentage completion basis. No fee will be paid the Seller. Buyer is primarily liable for payment and payment is not contingent upon Buyer payment by DOE.

In the event a payment has not been made within sixty (60) days after an invoice has been submitted by Buyer, Seller has the right to suspend its work hereunder or terminate this agreement after ten (10) days' notice.

17. <u>MODIFICATION OF SUBCONTRACT</u>

This Subcontract contains all the agreements between the parties and no course of dealing or usage of the trade shall be applicable unless expressly incorporated in this Subcontract. The terms and conditions contained in this Subcontract may not be added to, modified, superseded or otherwise altered except by a written modification signed by an authorized representative of the Buyer's Procurement

Department and delivered by Buyer to Seller. Each shipment received by Buyer from Seller shall be deemed to be only upon the terms and conditions contained in this Subcontract notwithstanding any terms and conditions that may be contained in any invoice or other form of Seller, and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer.

18. NO WAIVER OF CONDITIONS

Failure of Buyer to insist on strict performance shall not constitute a waiver of any of the provisions of this Subcontract or waiver of any other default of Seller.

19. PACKAGING

Unless otherwise specified in this Subcontract, the items required by the SOW shall be packed, pursuant to the Prime Contract, so as to assure safe arrival at destination in an undamaged condition under proper handling. Interior and exterior containers shall be marked with the Subcontract number.

20. [NOT USED]

21. SELLER'S CERTIFICATION OF COST OR PRICING DATA AND KEY PERSONNEL AND PLACE OF PERFORMANCE

A. If the amount of this Subcontract was expected to exceed $100,000 when entered into, the Seller has submitted, actually or by specific identification in writing, cost or pricing data.

B. Prior to the pricing of any Subcontract modification which involves aggregate increases and/or decreases in costs plus applicable profits expected to exceed $100,000, the Seller shall submit, actually or by specific identification in writing, cost or pricing data.

C. The submissions referenced in A. and B. above are not required where the price is based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulations.

D. With respect to A. above, the Seller has certified, and with respect to B. above, the Seller shall certify, in substantially the same form prescribed in Subsection 15.804--4 of , that to the best of Seller's knowledge and belief, the cost and pricing data submitted under A. and B. above is accurate, complete and current as of the date of agreement on the negotiated price of this Subcontract or Subcontract change or modification.

E. Sections F.005 and H.005 shall be modified to be the following:

F.0005 PRINCIPAL PLACE OF PERFORMANCE (APR 1984)

The principal place of performance shall be at Riley's research facility located in Worcester, Massachusetts and the Fort Martin Power Station located near Morgantown, West Virginia.

H.005 KEY PERSONNEL (APR 1986)

The Seller's key personnel are as follows:

| NAME | TITLE |
|---|---|
| Vijay Dixit | Project Manager |
| William Place | Manager, Advanced Technologies |
| Robert Lisauskas | Director, Research & Development |
| Charles Longfellow | Construction Manager |

The clause entitled "Key Personnel" contains a requirement for notification to the Project Director reasonably in advance of diverting of, or substitution for,

any of these individuals. That period of time shall not be less than thirty (30) days.

22. <u>SUBCONTRACT ADMINISTRATION</u>

Notwithstanding any other provisions of this Subcontract or any document referenced herein, the Buyer's Project Director is the only individual authorized to make the changes in or redirect the work required by this Subcontract. Where Buyer's approval is required under the terms of this Subcontract, it shall be construed to mean the approval of the Buyer's Project Director. In the event the Seller effects any change at the direction of any other person, the change will be considered as having been made without authority and an adjustment will not be made in the Subcontract estimated cost or fee or delivery schedule as a result thereof. No agreement or understanding will be binding on Buyer unless made in writing and signed by the Buyer's Project Director.

The Buyer's initial Project Director is Don Carson.

## EXHIBIT "C"

## PRIME CONTRACT CLAUSES INCORPORATED BY REFERENCE

PRIME CONTRACT CLAUSES INCORPORATED BY REFERENCE

(A) Part I, Section H, Articles H.034 (Safety and Health - November 1991), H.035(S) (Permits and Licenses - November 1991), H.036 (Environmental Protection - November 1991) and H.037 (Quality Assurance / Quality Control Program - November 1991) and the clauses of the Federal Acquisition Regulations (FAR) and of the Department of Energy FAR Supplement set forth in Part II - Section I of the Prime Contract are hereby incorporated by reference in this Subcontract. Contract Modification No. 003 to the Prime Contract is also hereby incorporated by reference in this Subcontract and is included as Exhibit "D". The obligations of the Contractor to the Government as provided in said clauses shall be deemed to be the obligations of the Seller to the Buyer only to the extent such obligations relate to the performance of the SOW in this Subcontract by the Seller. However, whenever said clauses include a requirement for the settlement of disputes between the parties in accordance with the "Disputes" clause, the dispute shall be disposed of in accordance with Article 1 entitled "Applicable Law and Disputes" of the General Conditions, Exhibit "B".

(B) Wherever necessary to make the context of the clauses set forth in this Exhibit "C" applicable to this Subcontract, the term "Contractor" shall mean Seller, the term "Contract" shall mean this Subcontract, and the term "Government", "Contracting Officer" and equivalent phrases shall mean Buyer, except the terms "Government" and "Contracting Officer" do not change: (1) In the phrases "Government Property", "Government-Furnished Property", "Government-Owned Property", "Government Equipment" and "Government-Owned Equipment", (2) When a right, act, authorization or

obligation can be granted or performed only by the Government or the Prime Contract Contracting Officer or his duly authorized representative, (3) When access to proprietary financial information, limited rights technical data, restricted rights computer software, or other proprietary data is required, (4) When title to property is to be transferred directly to the Government, (5) when the clause deals with the exercise of a right of the Government or the DOE Contracting Officer to terminate for convenience, disallows costs, or allocate patent or data rights. Buyer agrees not to issue consecutive stop orders or more than two stop orders.

# EXHIBIT A: SCOPE OF WORK
# RILEY STOKER CORPORATION

Riley Stoker Corporation, as subcontractor to CRSS on DOE Contract No. DE-AC21-92MC28202, shall furnish all of the services, equipment, and materials required to implement the following Scope of Work:

Task 3 Permit Information

1. Obtain permits required to perform the role of General Contractor for the project and provide assistance with preparation of permit information reports. Riley has no responsibility for obtaining environmental permits.

Task 4 Conceptual Design

1. Review and comment on the project scope and overall conceptual design.
2. Working with CRSS and PSIT provide a conceptual design for the Gasifier in detail sufficient for cost estimating and provide a cost estimate.
3. Provide a conceptual design for the HRSG in detail sufficient for cost estimating and provide a cost estimate.
4. Obtain equipment costs and other equipment information as required for this Task.
5. Assist with Value Engineering activities.
6. Assist with development of a detailed Project Schedule.
7. Review the CRSS Project Estimate.
8. Work with CRSS and PSIT on development of a Project Control Philosophy and Concept.
9. Support required modifications to the Work Plan.

Task 5 Bench Scale Studies

1. Provide suggestions for bench scale studies.
2. Analyze and provide comments on results.
3. Support required modifications to the Work Plan.

Task 6 Detail Design

1. Provide input to the Project Quality Assurance Plan for construction and procurement relation sections.

2. Provide constructability review for detail design documents.

3. Provide Project Schedule input.

4. Provide procurement activities and associated information required to support detail design.

5. Provide detail design for the Gasifier and the HRSG with input from CRSS.

6. Support required modifications to the Work Plan.

7. Provide detail design for combustion controls.

Task 7 Site Preparation/Construction

1. Perform general contractor responsibilities as follows required to construct the GPIF facility in accordance with the detail design documents, the Project Estimate and Project Schedule.

   a. Procurement/Expediting
   b. Safety
   c. Material
   d. Equipment Supply
   e. Equipment Erection
   f. Construction Contracts
   g. Subcontracts

2. Contract and supply the gasifier and HRSG in accordance with the detailed design developed in Task 6.

3. Perform the remaining Procurement responsibilities.

4. Support required modifications to the Work Plan.

5. Perform pre-commissioning and commissioning activities required to ready the facility for testing status.

Task 8 Pre-Operational Test Plan

1. Provide support for development of the Pre-Operational Test Plan.

2. Provide support for training and in the preparation of manuals.

Task 9 Pre-Operational Testing

1. Provide support for pre-operational testing as defined in the Test Plan. It is understood that support will not include supply of utilities, fuel, and other typical Owner supplied services.

2. Provide support for preparation of the Final Report.

# TABLE OF CONTENTS

## EXHIBIT "B"

## GENERAL CONDITIONS


| Article | | Page |
|---|---|---|
| 1 | Applicable Law and Disputes | 1 |
| 2 | Assignment of Claims | 4 |
| 3 | Bankruptcy | 4 |
| 4 | Buyer Furnished Property | 5 |
| 5 | Confidentiality | 5 |
| 6 | Calendar Dates | 6 |
| 7 | Changes | 6 |
| 8 | Clause Headings | 7 |
| 9 | Compliance with Federal, State and Local Laws | 7 |
| 10 | [Not Used] | |
| 11 | False Claims and Indemnity | 7 |
| 12 | Government Visits | 8 |
| 13 | Gratuities | 8 |
| 14 | Identification of Data | 9 |
| 15 | Industrial Laws | 11 |
| 16 | Invoicing and Payment | 12 |
| 17 | Modification of Subcontract | 13 |
| 18 | No Waiver of Conditions | 13 |
| 19 | Packaging | 13 |
| 20 | [Not Used] | |
| 21 | Seller's Certification of Cost or Pricing Data | 14 |
| 22 | Subcontract Administration | 15 |

1. <u>APPLICABLE LAW AND DISPUTES</u>

A. Any disputes arising under this Subcontract solely between the Buyer and Seller shall be governed by the law of the State of South Carolina. However, if the issue in dispute relates to a Subcontract provision specified by the FAR and made applicable to this Subcontract by this Subcontract (including Exhibit C), Federal law applicable to government contracts shall apply. Any litigation under this Subcontract, if commenced by Seller, shall be brought in a Court of competent jurisdiction in the State of South Carolina. Any litigation under this Subcontract, if commenced by Buyer, shall be brought in a Court of competent jurisdiction in the Commonwealth of Massachusetts.

B. 1. If a decision on a question of fact is issued by the Contracting Officer under the Prime Contract "Disputes" clause and the decision relates to this Subcontract, said decision, if binding upon the Buyer, under the Prime Contract, shall also be binding upon Buyer and Seller with respect to this Subcontract provided Seller is notified and able to participate in any matter relating to such decision. However, if Seller is affected by such decision, and if Buyer elects not to appeal such decision under the "Disputes" clause of the Prime Contract, Buyer shall notify the Seller promptly. After receipt of such notice by Seller, if Seller submits a timely request to Buyer to appeal such decision, Buyer shall file an appeal. If Buyer appeals such decision, whether at its election or at Seller's request, any decision upon such appeal, if binding upon the Buyer under the Prime Contract, shall be binding upon the Buyer and Seller as it relates to this Subcontract. Appeals under the "Disputes" clause of the Prime Contract do not preclude consideration of questions of law in connection with decision(s) referenced above.

2. For any claims to be submitted under B.1. above in excess of $50,000, the Seller shall certify to the Buyer, as to its portion of the claim that: (a) the claim is made in good faith, (b) the supporting data are accurate to the best of the Seller's knowledge and belief, and (c) the amount requested accurately reflects the Subcontract adjustment for which the Seller believes the Government is liable.

3. If any such appeal is denied or otherwise decided adversely to Seller's interest, or if Seller is otherwise adversely affected by any decision made by any representative of the Government on any question of fact and/or law arising under the Prime Contract which is also related to this Subcontract, from which an appeal under the "Disputes" clause in the Prime Contract is not available, said decision, if binding upon Buyer under the Prime Contract, shall in turn be binding upon Buyer and Seller with respect to such question as it relates to this Subcontract; provided, however, if Seller is adversely affected by any such decision, and if Buyer elects not to bring suit against the Government with respect to such decision, Buyer shall notify Seller promptly. If Seller submits a timely request to Buyer to bring suit against the Government, Buyer shall start such suit. If Buyer brings suit against the Government with respect to any such decision, whether at its election or at Seller's request, a final judgment in any such suit, if binding upon Buyer under the Prime Contract shall in turn be binding upon Seller and Buyer under this Subcontract with respect to the question decided as it relates to this Subcontract.

4. If any such appeal or suit is taken or brought by Buyer, whether at its election or at Seller's request, Seller shall assist Buyer in its prosecution thereof in every

reasonable manner and Seller shall be afforded reasonable opportunity to participate in the prosecution thereof to the extent Seller's interest may be affected. To the extent requested by Buyer, Seller shall prosecute for Buyer any appeal or suit taken or brought at Seller's request and, in such event, Buyer shall assist Seller in every reasonable manner. All reasonable and approved costs and expenses incurred by Seller and Buyer in prosecuting any appeal or suit taken or brought solely at Seller's request shall be paid by Seller. Where possible, Buyer shall in good faith consult with Seller concerning the presentation to the Contracting Officer or other cognizant representatives of the Government of the questions referred to in paragraphs 1. and 3. above to the extent they may affect Seller's Interest.

5. If as a result of any decision or judgment which is binding upon Seller and Buyer, Buyer is unable to obtain reimbursement from the Government under the Prime Contract for, or is required to refund or credit to the Government any amount with respect to any item of cost or fee for which Buyer has reimbursed Seller, Seller shall, on demand, promptly repay such amount to Buyer.

6. The rights and obligations herein shall survive completion of and final payment under this Subcontract.

C. Provided, however, the Seller shall not be bound by any such Contracting Officer's decision, Appeal Board's decision, or judgment if such is not determinative of an obligation imposed upon the Seller under this Subcontract, or any amendment hereto.

D. Pending the resolution of any dispute, the Seller shall proceed as directed by Buyer in writing.

E. Buyer agrees to provide reasonable notice and assistance to Seller in any matter related to any claims and disputes under Article 1.

2. <u>ASSIGNMENT OF CLAIMS</u> (52.232-23)

A. The Seller shall not assign this Subcontract in whole or in part. Any monies due or to become due hereunder may be assigned, provided that such assignment shall not be binding upon Buyer until receipt of a copy of the assignment agreement is acknowledged and approved by the Buyer in writing.

B. Copies of this Subcontract or of any plans, specifications, or other similar documents relating to work under this Subcontract, if marked "Top Secret," "Secret" or "Confidential," shall not be furnished to any assignee of any claim arising under this Subcontract or to any other person not entitled to receive the same. However, a copy of any part or all of this Subcontract so marked may be furnished, or any information contained therein may be disclosed, to such assignee upon the prior written authorization of the Buyer.

3. <u>BANKRUPTCY</u>

In addition to the rights set forth in FAR 52.249-6, as incorporated into this Subcontract by Exhibit C, Buyer may terminate this Subcontract for default, in whole or in part, by written or telegraphic notice to Seller if:

(1) the Seller shall become insolvent or make a general assignment for the benefit of creditors; or

(2) a petition under any bankruptcy act or similar statute is filed by or against the Seller and not vacated within ten (10) days after it is filed.

4. <u>BUYER FURNISHED PROPERTY</u>

The rights and obligations of the Seller with respect to Buyer Furnished Property shall be the same as those which the Seller has with respect to Government Property under FAR 52.245-2, excluding Alternate I.

5. <u>CONFIDENTIALITY</u>

Buyer and Seller mutually agree that confidential information will be exchanged between Buyer and Seller. Confidential information includes, but is not limited to, proprietary technology, technical information and know-how. Buyer agrees to receive all such Seller's confidential information in confidence, not to use for its own benefit or for the benefit of a third party, without Seller's prior written consent. It is further understood that any information provided hereunder by Seller, remains the property of Seller, and on demand, any and all documents marked by Seller as "confidential" or "proprietary information", or with like captions indicating confidentiality of the information, shall be returned to Seller. Seller likewise agrees to receive such information in confidence from Buyer and not to use the information for its own benefit or for the benefit of any third party without Buyer's prior written consent. Seller further understands that all the information provided hereunder by Buyer, remains the property of Buyer, and on demand, any and all documents marked by Buyer as "confidential" or "proprietary information" or other caption indicating confidentiality of the information shall be returned to Buyer.

The parties understand that disclosure of confidential information does not carry with it any right or license to use or practice confidential information of the other party without written consent.

The foregoing obligations regarding confidentiality and non-use shall not apply to any information which:

(a) was previously known by a party, before receipt of the information from the other party;

(b) was independently developed by a third party, which a party reasonably believes, after inquiry, has the lawful right to disclose this information;

(c) is already available in the public domain, through no fault, action, or inaction of any of the parties; or

(d) was acquired at any time from a third party, expressly authorized by the party, to disclose the information.

This obligation of confidentiality shall remain in effect for fifteen (15) years. The government's acquisition and rights in technical data and computer software is as specified in Section 14 hereof.

6. <u>CALENDAR DATES</u>

All periods of days referred to in this Subcontract shall be measured in calendar days.

7. <u>CHANGES</u> (FAR 52.243-2)

Buyer's Engineering and Technical Personnel may, from time to time, render assistance or give technical advice to, or effect an exchange of information with Seller's personnel in a liaison effort concerning the items to be furnished hereunder. However, such exchange of information or advice shall not vest Seller with authority to change the items hereunder or the provisions of this Subcontract, nor shall any change in the items or provisions of this Subcontract be binding on Buyer unless specified as a change by the Buyer in accordance with procedures and requirements of FAR 52.243-2 entitled "Changes-Cost-Reimbursement," as modified and

incorporated by reference in Exhibit "C" into this Subcontract.

8. CLAUSE HEADINGS

The headings and subheadings of clauses contained herein are used for convenience and ease of reference and do not limit the scope or intent of the clause.

9. COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS

Seller, as a contractor, will comply with all Federal, State, Municipal and local laws, rules and regulations that may be applicable to this Subcontract and, at the request of Buyer or the Government, Seller will furnish certificates to the effect that it has complied with said laws and regulations. Seller represents that it has complied and will continue to comply during the performance of this Subcontract with the provisions of the "Fair Labor Standards Act" of 1938, as amended, and the "Occupational Safety and Health Act" of 1970, and with the regulations and standards issued pursuant thereto.

10. [NOT USED]

11. FALSE CLAIMS AND INDEMNITY

The Seller shall indemnify the Buyer for any cost incurred and any payments made by the Buyer resulting from false claims submitted by the Seller under this Subcontract, or as a result of a Seller's misrepresentation of fact or fraud under appeals made by the Buyer or Seller under Article 1 entitled "Applicable Law and Disputes". The Buyer shall notify the Seller, in writing, of any allegations of a false claim, misrepresentation of fact or fraud to which this indemnity applies.

12. GOVERNMENT VISITS

The Government and/or its designated representative(s) shall be permitted to visit the Seller with respect to this Subcontract only after arrangements have been made with the Buyer's Project Director. Visits of a routine nature, e.g., audit and inspection are not covered by this article.

13. GRATUITIES (FAR 52.203-3)

A. The Buyer may, by written notice to the Seller, terminate the right of the Seller to proceed under this Subcontract if it is found that gratuities, (in the form of entertainment, gifts, or otherwise), were offered or given by the Seller, or any agent or representative of the Seller to any officer or employee of the Government or the Buyer with a view toward securing this Subcontract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing of this Subcontract; provided, that the existence of the facts upon which the Buyer makes such findings shall be in issue and may be reviewed in any competent court.

B In the event this Subcontract is terminated as provided in paragraph A. hereof, the Buyer shall be entitled to pursue the same remedies against the Seller as it could pursue in the event of a breach of the Subcontract by the Seller.

C. The rights and remedies of the Buyer provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Subcontract.

14. IDENTIFICATION OF DATA (FAR 52.227-14)

Technical Data, as defined in the "Rights in Technical Data and Computer Software" clause of the Prime Contract, delivered under this Subcontract shall be marked with the

Prime contract Number, this Subcontract Number, the Buyer's name, the Seller's name, and, if applicable, the name of the subcontractor who generated the data.

Seller restricted computer software subject to Paragraph (g)(i) of FAR 52.227-14 are listed below and as being restricted computer software:

- ABHITZEKESSEL (HRSG thermal design)
- ATTACH (design and analysis of structural steel attachments)
- BACKPASS (Convective heat transfer in Circofluid boilers)
- BASEPLT ()design and analysis of column base plates)
- BASICS (combustion system calculations)
- BEAMGRID (design and analysis of beam/floor platform systems)
- BPHT (convective heat transfer
- CREEP (analysis of creep in pressure parts)
- DRUDUR (pressure drop in headers)
- DRUMTHICK (design and analysis of boiler drums)
- FASTFIRE (furnace radiative heat transfer)
- FATIGUE (analysis of fatigue in pressure parts)
- FWHEATER (design and analysis of feedwater heaters)
- GASSER (fixed bed gasifier performance)
- GASVIBRA (gas-flow induced vibration analysis)
- GIRDER (design and analysis of built-up plate girders)
- HTBUNDLE (heat transfer water and evaporating steam duty bundles)
- KEDI (boiler diagnostics & design/analysis)
- LUG (design and analysis of structural steel lugs)
- METLTHICK (design and analysis of headers and other small pressure vessels)
- METSEL (metal selection for convective sections)
- NATCIR (natural circulation)
- Riley CAD system subroutines
- Riley $NO_x$ Prediction Computer program
- STACK (design and analysis of steel chimneys and stacks)
- TRD301A1 (cycling ability of pressure parts)
- VESLTHICK (design and analysis of pressure vessels)

Buyer shall provide the DOE Contracting Officer with advance written notification of Seller's designation of the above listed items as restricted computer software upon the execution of this Subcontract pursuant to Clause H.041C of the Prime Contract. The above listed restricted computer software shall not be subject to call-up by the DOE Contracting Officer, or an authorized representative of such Contracting Officer, or the Buyer pursuant to subsection (g)(3) of Clause FAR 52.227-14 or I.118 of the Prime Contract. The above listed restricted computer software may be inspected by the DOE Contracting Officer, or an authorized representative of such Contracting Officer, under subsection (j) of such Clause and such inspection shall be subject to appropriate provisions for confidentiality.

Seller limited rights data subject to Paragraph (g)(i) of FAR 52.227-14 are listed below as being limited rights data.

- Seller and its affiliates Gasifier design data not disclosed in U.S. Patents or published literature
- Heat Recovery Steam Generator (HRSG) design data not disclosed in U.S. Patents or published literature
- Hot Gas Filtration design data not disclosed in U.S. Patents or Published literature
- All Seller burner design data not disclosed in U.S. Patents or Published literature
- Seller Engineering and Drafting Standards
- Seller Construction Standards

Buyer shall provide the DOE Contracting Officer with advance written notification of Seller's designation of the above listed items as Limited rights data upon the execution of this Subcontract pursuant to Clause H.040A3 of the Prime Contract. The Buyer shall obtain the DOE Contracting Officer's agreement that the above limited rights data shall be listed as "Technical data not required to be delivered" pursuant to Clause H.040C of the Prime Contract and shall not be subject to call-up by the DOE Contracting Officer or the Buyer pursuant to subsection (g)(2) of the Clause, FAR 52.227-14 or Clause H.039A of the Prime Contract. The above listed limited rights data may be inspected by the DOE Contracting Officer, or an authorized representative of such Contracting Officer under subsection (j) of such Clause.

15. <u>INDUSTRIAL LAWS</u>

The Seller, in all matters relating to this Subcontract, shall be acting as an independent contractor. Neither the Seller nor any of the persons furnishing materials or performing work or services which are required by this Subcontract are employees of the Buyer within the meaning of or the application of any Federal or State Unemployment Insurance Law or other Social Security or any Workmen's Compensation, Industrial Accident Law or other Industrial or Labor Law. The Seller, at its own expense, shall comply with such laws, and assume all obligations imposed by any one or more of such laws with respect to this Subcontract.

16. <u>INVOICING AND PAYMENT</u>

A. Seller shall comply with the terms of Paragraph G.003c of the Prime Contract in preparing its invoices to Buyer.

B. All invoices shall be forwarded to Buyer at:

1041 E. Butler Road
P.O. Box 5456
Greenville, SC 20606-5456
Attention: Accounts Payable.

C. With the final invoice there shall be submitted the following:

1. A certification that invoices of all suppliers and subcontractors have been paid.

2. If applicable, three (3) completed copies of Royalty Report (DD Form 783) and Final Patent Report (DD Form 882) or equivalent forms.

3. A release discharging Buyer and the Government of and from any liabilities, obligations and claims arising out of or under this Subcontract.

Buyer agrees to pay all invoices within forty-five (45) days after submittal by Seller. Interest in accordance with FAR 52.232-25 "Prompt Payment" shall be applicable for late invoices. The Seller shall show the amount of foregone fee on his invoices on a percentage completion basis. No fee will be paid the Seller. Buyer is primarily liable for payment and payment is not contingent upon Buyer payment by DOE.

In the event a payment has not been made within sixty (60) days after an invoice has been submitted by Buyer, Seller has the right to suspend its work hereunder or terminate this agreement after ten (10) days' notice.

17. <u>MODIFICATION OF SUBCONTRACT</u>

This Subcontract contains all the agreements between the parties and no course of dealing or usage of the trade shall be applicable unless expressly incorporated in this Subcontract. The terms and conditions contained in this Subcontract may not be added to, modified, superseded or otherwise altered except by a written modification signed by an authorized representative of the Buyer's Procurement

Department and delivered by Buyer to Seller. Each shipment received by Buyer from Seller shall be deemed to be only upon the terms and conditions contained in this Subcontract notwithstanding any terms and conditions that may be contained in any invoice or other form of Seller, and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer.

18. <u>NO WAIVER OF CONDITIONS</u>

Failure of Buyer to insist on strict performance shall not constitute a waiver of any of the provisions of this Subcontract or waiver of any other default of Seller.

19. <u>PACKAGING</u>

Unless otherwise specified in this Subcontract, the items required by the SOW shall be packed, pursuant to the Prime Contract, so as to assure safe arrival at destination in an undamaged condition under proper handling. Interior and exterior containers shall be marked with the Subcontract number.

20. [NOT USED]

21. <u>SELLER'S CERTIFICATION OF COST OR PRICING DATA AND KEY PERSONNEL AND PLACE OF PERFORMANCE</u>

A. If the amount of this Subcontract was expected to exceed $100,000 when entered into, the Seller has submitted, actually or by specific identification in writing, cost or pricing data.

B. Prior to the pricing of any Subcontract modification which involves aggregate increases and/or decreases in costs plus applicable profits expected to exceed $100,000, the Seller shall submit, actually or by specific identification in writing, cost or pricing data.

C. The submissions referenced in A. and B. above are not required where the price is based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulations.

D. With respect to A. above, the Seller has certified, and with respect to B. above, the Seller shall certify, in substantially the same form prescribed in Subsection 15.804--4 of , that to the best of Seller's knowledge and belief, the cost and pricing data submitted under A. and B. above is accurate, complete and current as of the date of agreement on the negotiated price of this Subcontract or Subcontract change or modification.

E. Sections F.005 and H.005 shall be modified to be the following:

F.0005 PRINCIPAL PLACE OF PERFORMANCE (APR 1984)

The principal place of performance shall be at Riley's research facility located in Worcester, Massachusetts and the Fort Martin Power Station located near Morgantown, West Virginia.

H.005 KEY PERSONNEL (APR 1986)

The Seller's key personnel are as follows:

| NAME | TITLE |
| --- | --- |
| Vijay Dixit | Project Manager |
| William Place | Manager, Advanced Technologies |
| Robert Lisauskas | Director, Research & Development |
| Charles Longfellow | Construction Manager |

The clause entitled "Key Personnel" contains a requirement for notification to the Project Director reasonably in advance of diverting of, or substitution for,