## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| **CONSTRUCTION**<br>**Activity** | **JSE** | **Riley** | **DOE** | **Remarks** |
|---|---|---|---|---|
| | | | | |
| Demolition | D | PR | | |
| Site Work | D | PR | | |
| Pile/Caissons | D | PR | | |
| Railroad Crossing | PI | PR | PR* | *DOE Contract with Conrail for crossing. |
| Paving/Surfacing | D | PR | | |
| Utilities | D | PR | | |
| Fencing | D | PR | | |
| Seeding/Landscaping | D | PR | | |
| Concrete | D | PR | | |
| Masonry | D | PR | | |
| Metals | | | | |
| Structural Steel | D | PR | | |
| Metal Joists | D | PR | | |
| Metal Decking | D | PR | | |
| Miscellaneous Metals | D | PR | | |
| Rough and Finish Carpentry | D | PR | | |
| Moisture-Thermal Control | | | | |
| Waterproofing | D | PR | | |
| Insulation | D | PR | | |
| Siding | D | PR | | |
| Roofing and Sheetmetal | D | PR | | |
| Joint Sealers | D | PR | | |
| Doors, Windows, Glass | D | PR | | |
| Architectural Finishes | D | PR | | |
| Specialties | D | PR | | |
| Equipment | D | PR | | |
| Furnishings | D | PR | | |
| Special Construction | D | PR | | |
| Pre-Engineered Structures | PI | PR | | |

## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| CONSTRUCTION (Cont'd)<br>Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| Conveying Systems | D | PR | | |
| Mechanical | | | | |
| Piping | D | PR | | |
| Valves | D | PR | | |
| MOV | D | PR | | |
| Control | D | PR | | |
| Manual 2" and Under | D | PR | | |
| Manual Over 2" | D | PR | | |
| Specialty | D | PR | | |
| Expansion Joints | D | PR | | |
| Pipe Routing 2 " & Under | D | PR | | |
| Engineered Pipe Hangers | D | PR | | |
| Pipe Hangers | | PR | | |
| Piping Insulation | D | PR | | |
| Plumbing | D | PR | | |
| Fire Extinguishing System | D | PR | | |
| HVAC | D | PR | | |
| Equipment Erection | D | PR | | |
| Equipment Insulation | D | PR | | |
| Refractory | | PR | | |
| Insulation and Lagging | | PR | | |
| Electrical | D | PR | | |
| I&C Installation | D | PR | | |
| Switchyard | D | PR | | |
| Transmission Line | D | PR | | |
| Bulk Materials | | PR | | |
| Construction Water | | PR | | |
| Scaffold | | PR | | |
| Small Tools | | PR | | |
| Consumables | | PR | | |
| Equipment Rental & Maint. | | PR | | |
| Hydrostatic Testing | ER, PI | PR | | |
| Systems Flushing & Hydro Waste | ER, PI | PR | | |
| Initial Lube Fill | ER, PI | PR | | |

## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| **CONSTRUCTION (Cont'd**<br>**Activity** | **JSE** | **Riley** | **DOE** | **Remarks** |
|---|---|---|---|---|
| Steam Blows | PI | PI | PR | |
| Silencer | PI | PI | PR | |
| Block Valves | PI | PI | PR | |
| Pipe | PI | PI | PR | |
| Labor | | | PR | |
| Chemical Cleaning | | | | |
| Gasifier | | PI | PR | |
| HRSG/Boiler | | PI | PR | |
| Feedwater/Condensate Piping | PI | | PR | |
| Chemical Disposal | | | PR | |
| Meggar & Hipot Cable | PI | PR | | |
| Rotate Motors | | PR | | |
| Instrumentation Calibration | | | | |
| Bench | | PR | | |
| In-Line | | PR | PR | |
| Initial Charge of Lubricants | | PR | | |
| Fuses, Lamps, Filters and Other Similar Consumable | | PR | | |
| Initial Charge of Resins and Desiccants | | PR | PR | |
| Initial Chemicals | | | PR | |
| Start-Up Gases | | | | |
| CEM Test Gas | | | PR | |
| Gasifier/HRSG Layup Gas | | PR | | |
| Chemicals | | | | |
| Boiler Layup | | PR | | If Required |
| DI Water | | PR | | If Required |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX

| MANUALS, TRAINING, CHECK-OUT, START-UP, AND TESTING<br>Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| **Manuals** | | | | |
| Vendor O&M Manuals | PI | PR* | | *Riley furnished Eq. |
| O&M Manuals | PI | PI* | | *Riley furnished Eq. |
| Start-up Procedure Manual | PI | PI* | | *Riley furnished Eq. |
| Integrated | PI | PI* | | *Riley furnished Eq. |
| **Training** | | | | *Riley furnished Eq. |
| Training Manuals | PI | PI* | | *Riley furnished Eq. |
| Training Instruction | PI | PI* | | *Riley furnished Eq. |
| Lesson Plans | PI | PI* | | *Riley furnished Eq. |
| Lesson Prep. | PR | PR* | | *Riley furnished Eq. |
| Video Recording | | PR | PR | |
| Training Space | | | | |
| Operator Training | PR | PR* | | *Riley furnished Eq. |
| **Check-Out** | | | | |
| Personnel | | PR | | |
| Travel Expense | | PR | | |
| **Check-Out Procedures** | PI | PI | | Riley - Gasifier and HRSG |
| **Check-Out and Turnover** | | PR | | As defined in the pre-op test plan. |
| **Relay Settings** | D | PR | | |
| **Start-Up Procedures** | PI | PI | | Riley - Gasifier and HRSG |
| **Start-Up of Systems and Plant** | | PR* | | Thru Task 9 |
| **Mechanical Testing Procedures** | PI | PI | | |
| **Test Equipment** | D | PR | | As required in pre-op test plan. |
| **Performance Test** | | | | Not Required |
| **Performance Test Results** | | | | Not Required |
| **Operation and Maintenance Personnel** | | | PR | |

## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| MANUALS, TRAINING, CHECK-OUT, START-UP, AND TESTING (Cont'd.)<br>Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| Permanent Power, Water Lubricants, Chemicals and Other Consumables After Initial Charge | | | PR | |
| Witness Certification of Emissions Monitoring Equipment | D | | PR | |
| Permanent Power, Fuel, Water for Check-Out, Start-Up and Testing | | | PR | |

## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| RISK<br>Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| Liquidated Damages for Late Engineering | | | | None |
| Liquidated Damages For Late Vendor Engineering | | | | None |
| Liquidated Damages for Late Equipment Delivery | | | | None |
| Liquidated Damages for Late Construction | | | | None |
| All Guarantees of Plant Performance | | | | None |
| Buy Down on Plant Under Performance | | | | None |
| Noise Abatement | | | | None |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



376

***SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX***

| WARRANTIES<br>Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| Issue Warranty Claim | | | PR | |
| Review Warranty Claim | PR | PR | | |
| Approve Warranty Claim | PR | PR | | |
| Perform Warranty Work | | | | Note 1 |

Note: Financial responsibility for fixes rest with party responsible for warranty problem.



377

## *SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX*

| **PERMITS/INSPECTIONS**<br>**Activity** | **JSE** | **Riley** | **DOE** | **Remarks** |
|---|---|---|---|---|
| Permits | | | | |
| Building | | | PR | Also APS |
| Zoning | | | PR | |
| Air | | | PR | |
| Water | | | PR | |
| Historical/Arch | | | PR | |
| Erosion Control | PI | PR | PR | |
| Spill Prevention | | | PR | |
| Wet Lands Permit | | | PR | |
| Water Diversion | | | PR | |
| Steam Encroachment | | | PR | |
| Temp. Sewage Disposal | | PR | | |
| Highway | | | PR | |
| Sewage | | | PR | |
| Potable Water | | | PR | |
| Construction Wastes | | PR | | |
| Certificate of Occupancy | | PR | | |
| Plant/Boiler Operation | | | PR | |
| Operating | | | PR | |
| Ash Disposal | | | PR | |
| Mining | | | | N/A |
| Emissions Monitoring Equip. | PI | | PR | |
| Utility Disconnect | | | | N/A |
| Explosives | | PR | | |
| Coal/Ash Vehicles | | | PR | |
| Contractor's Permit | | PR | | |
| Inspections | | | | |
| Electrical | | PR | PI | |
| Plumbing | | PR | PI | |
| Boiler | | PR | | |
| Fire Protection | | PR | PI | |
| Calibration of Emissions Monitoring Equipment | | | PR | |
| Calibration of Utility Metering | | | PR | |
| Gas Fitting | | PR | | |
| | | | | |

# SCOPE OF SUPPLY AND COST RESPONSIBILITY MATRIX

## MISCELLANEOUS

| Activity | JSE | Riley | DOE | Remarks |
|---|---|---|---|---|
| Project Labor Agreement | | PR | | |
| Bonds | | | | Not Required |
| Payment | | PR | | As Required |
| Performance | | PR | | As Required |
| Insurance | | | | |
| Workers Comp. | PR | PR | | Responsible Party |
| Employer Liability | PR | PR | | Responsible Party |
| Com. Gen'l. Liability (Bodily Injury) | PR | PR | | Responsible Party |
| Com. Auto Liability (Bodily Injury and Property Damage) | PR | PR | | Responsible Party |
| Excess Liability | | | | Not Required |
| Builder's Risk | | | | Not Required |
| Replacement Cost | | | | |
| Com.Opns. Coverage | | | | |
| Delay Open. Coverage | | | | |
| Taxes | | | | |
| Sales Tax | | | | No Sales Tax on Government Contracts. |
| Registration | | | | |
| Engineered Equipment | | | | |
| Constr. Commodities | | | | |
| Constr. Expendables | | | | |
| Master Schedule | PR | PR | | Riley provides input to JSE. |
| Monthly Progress Report | PR | PR | | Riley provides input to JSE. |
| Project Procedure Manual | PR | PR | | Riley provides input to JSE. |
| Customs Broker/Tax Cons | | PR | | Responsible Party |
| Net Tariffs | | | | Not Required |
| Contractor's License | | PR | | |
| | | | | |
| | | | | |

# COST SHARING SUBCONTRACT

Under U.S. Department of Energy
Prime Contract No. DE-AC21-92MC28202

Between

**CRS SIRRINE ENGINEERS, INC.**
a South Carolina Corporation
having a place of business at
1041 East Butler Road
Greenville, SC 20606

and

**PSI POWERSERVE**
a Division of Physical Sciences Inc.
a Massachusetts Corporation
having a place of business at
20 New England Business Center
Andover, MA 01810

| | | |
|---|---|---|
| A. | Scope of Work: | Support of Gasifier Product Improvement Facility |
| B. | Estimated Cost: | Nine Hundred Four Thousand, Six Hundred and Twenty Five ($904,625) Dollars |
| C. | Delivery: | Commence on November 22, 1992 and completed by September 4, 1996 |

CoFixFee

380

# TABLE OF CONTENTS


| Article | | Page |
|---|---|---|
| 1 | Superseding Effect | 1 |
| 2 | Statement of Work | 1 |
| 3 | Cost Sharing Arrangement | 1 |
| 4 | Delivery | 2 |
| 5 | Transportation Data and Shipping Instructions | 2 |
| 6 | Inspection and Acceptance | 2 |
| 7 | Quality Control Requirements | 3 |
| 8 | Limitation of Funds | 3 |
| 9 | Overtime Premiums | 6 |
| 10 | Patent Rights | 6 |
| 11 | Documents Incorporated by Reference | 7 |
| 12 | Order of Precedence | 7 |
| 13 | Notices and Correspondence | 8 |
| 14 | Small Business Status | 8 |
| | Signatures | 8 |

Exhibit "A" Scope of Work

Exhibit "B" General Conditions

Exhibit "C" Prime Contract Clauses Incorporated by Reference

Exhibit "D" PSI Technology Company Proposal 1171 (20-Sep-93)

Exhibit "E" Task 4 Update -10 August, 1993

Exhibit "F" Letter of October 22, 1993 which modifies Exhibits "D" and "E"

# COST SHARING SUBCONTRACT

Under U.S. Department of Energy Prime Contract No. DE-AC21-92MC28202

THIS AGREEMENT MADE AS OF THE 22 DAY OF NOVEMBER, 1992.

Between

**CRS SIRRINE ENGINEERS, INC.**
a South Carolina Corporation
having a place of business at
1041 East Butler Road
Greenville, SC 20606
hereinafter referred to as "BUYER"

and

**PSI POWERSERVE**
a Division of Physical Sciences Inc.
a Massachusetts Corporation
having a place of business at
20 New England Business Center
Andover, MA 01810
hereinafter referred to as "SELLER"

WITNESSETH THAT:

IN CONSIDERATION OF the promises, mutual covenants and agreements herein contained, the parties hereto agree as follows:

CoFixFee

# COST SHARING SUBCONTRACT

1. SUPERSEDING EFFECT

A. This Subcontract supersedes all written or oral agreements, if any, and constitutes the entire agreement between the parties hereto with respect to this Subcontract.

B. All work performed by the Seller, actions taken, and payments made, if any, under any other prior written or oral agreements, with respect to this Subcontract, shall be deemed to have been work performed, actions taken, or payments made under this Subcontract.

2. STATEMENT OF WORK

The Seller shall furnish all the services, equipment, and materials necessary to support the design, construction, and pre-operational testing of a Gasifier Product Improvement Facility ("GPIF") as specifically described in Exhibit "A", Scope of Work ("SOW"), and as otherwise may be necessary to assist the Buyer in meeting the goals of Phase I of Prime Contract No. DE-AC21-92MC28202 between Buyer and the U.S. Department of Energy (the "Prime Contract"). Phase I includes the completion of nine (9) tasks as described in Exhibit "A". Should the Project proceed to Phase II, a contract modification for the Phase II effort will be negotiated if mutually agreeable to the Buyer and the Seller.

3. COST SHARING ARRANGEMENT

(52.216-7 and FAR 52.216-8)

A. In keeping with the Prime Contract, this Subcontract requires a 20% Cost Share by the Seller.

The Seller and Buyer agree to share the cost of the effort for Phase I as follows:

| | Buyer (80%) | Seller (20%) | Total (100%) |
|---|---|---|---|
| Phase I | $723,700.00 | $180,925.00 | $ 904,625.00 |

The Seller agrees that its share of any Subcontract cost over run will be at a 20% share. The Seller's cost share is being provided by PSI Environmental.

A more detailed breakdown of the estimated cost on a task-for-task basis is provided in Exhibit "D" PSIT Proposal No. 1171, dated Sept. 20, 1993 and as modified by Exhibit "F."

4. DELIVERY

The items, services and deliverable data required by this Subcontract shall be delivered in accordance with the respective dates specified in the SOW or per the mutually agreed upon dates required to support the Project Schedule.

5. TRANSPORTATION DATA AND SHIPPING INSTRUCTIONS.

All items furnished under this Subcontract shall be delivered F.O.B. Job Site. All shipments shall be made in accordance with the Prime Contract.

6. INSPECTION AND ACCEPTANCE

A. All work delivered under this Subcontract shall be inspected and accepted in accordance with the Prime Contract. Final inspection and acceptance will be at the job site.

B. A copy of this Subcontract shall be furnished by Seller to the Government Quality Assurance Representative who normally services Seller's plant or to the nearest cognizant Government Inspection Office.

In the event the Inspection Office or Representative cannot be located, the Buyer's Project Director must be notified immediately by Seller.

C. In the event Government source inspection and/or acceptance is required, the Seller shall notify the designated Government representative who normally services Seller's plant concurrent with the advance notification to Buyer.

D. The above paragraphs are not to be construed as a limitation of the rights of Buyer and the obligations of the Seller as provided for in this Subcontract.

7. QUALITY CONTROL REQUIREMENTS

The Seller shall provide and maintain a quality control system in accordance with the Prime Contract.

8. LIMITATION OF FUNDS (52.232-22)

A. It is estimated that the cost to the Buyer for the performance of this Subcontract will not exceed the estimated cost of Nine Hundred Four Thousand, Six Hundred and Twenty Five Dollars ($904,625) as set forth in Article 3.A. The Seller shall use its best efforts to perform the work specified in the SOW and all obligations under this Subcontract within such estimated cost.

B. The amount presently available for payment and allotted to this Subcontract and the period of performance which it is estimated the allotted amount will cover are as follows:

1. Allotted Amount $ 500,000
2 Period of Performance December 31, 1993





385

It is contemplated that from time to time additional funds will be allotted to the Subcontract up to the full estimated cost set forth in Article 3.A.1., inclusive of any fee. The Seller shall perform or have performed work on this Subcontract up to the point at which the total amount paid and payable by the Buyer pursuant to the terms of this Subcontract approximates but does not exceed the total amount actually allotted to this Subcontract.

C. If at any time the Seller has reason to believe that the costs which he expects to incur in the performance of this Subcontract in the next succeeding sixty (60) days, when added to all costs previously incurred, will exceed seventy-five percent (75%) of the total amount then allotted to the Subcontract the Seller shall notify the Buyer in writing to that effect. The notice shall state the estimated amount of additional funds required to continue performance for the period set forth in 8.B.2. above. Sixty (60) days prior to the end of the period specified in 8.B.2. the Seller will advise the Buyer in writing as to the estimated amount of additional funds, if any, that will be required for the timely performance of the work under the Subcontract or for such further period as may be specified in this Subcontract or otherwise agreed to by the parties. If, after such notification, additional funds are not allotted by the end of the period set forth in 8.B.2. or an agreed date substituted therefor, the Buyer will, upon written request by the Seller, terminate this Subcontract pursuant to the provisions of the Termination clause, FAR 52.249-6, on such date. If the Seller in the exercise of his reasonable judgment, estimates that the funds available will allow him to continue to discharge his obligations hereunder for a period extending beyond such date, he shall specify the

later date in his request and the Buyer in his discretion, may terminate this Subcontract on that later date.

D. Except as required by other provisions of the Subcontract specifically citing and stated to be an exception from this clause, the Buyer shall not be obligated to reimburse the Seller for costs incurred in excess of the total amount from time to time allotted to the Subcontract and the Seller shall not be obligated to continue performance under the Subcontract (including actions under the Termination clause) or otherwise to incur costs in excess of the amount allotted to the Subcontract, unless and until the Buyer has notified the Seller in writing that such allotted amount has been increased and has specified in such notice an increased amount constituting the total amount then allotted to the Subcontract. To the extent the amount allotted exceeds the estimated cost set forth in 3.A, such estimated cost shall be correspondingly increased. No notice, communication or representation in any other form or from any person other than the Buyer's Project Director shall affect the amount allotted to this Subcontract. In the absence of the specified notice, the Buyer shall not be obligated to reimburse the Seller for any costs in excess of the total amount then allotted to the Subcontract whether those excess costs were incurred during the course of the Subcontract or as a result of termination. When and to the extent that the amount allotted to the Subcontract has been increased, any costs incurred by the Seller in excess of the amount previously allotted shall be allowable to the same extent as if such costs had been incurred after such increase in the amount allotted; unless the Buyer issues a termination or other notice and directs that the increase is solely for the purpose of covering termination or other specified expenses.

E. Change orders issued pursuant to the "Changes" clause of this Subcontract shall not be considered an authorization to the Seller to exceed the amount allotted in paragraph B.1. of this clause in the absence of a statement in the change order, or other Subcontract modification, increasing the amount allotted.

F. Nothing in this clause shall affect the right of the Buyer to terminate this Subcontract. In the event this Subcontract is terminated, the Buyer and the Seller shall negotiate an equitable distribution of all property produced or purchased under the Subcontract based upon the share of costs incurred by each.

9. <u>OVERTIME PREMIUMS</u> (52.222-2)

Insert in the blank space in paragraph (a) of FAR 52.222-2: "None".

10. <u>PATENT RIGHTS</u>

In accordance with a Letter of Intent of November 25, 1992, executed by officers of both Parties (hereby incorporated by reference), patent rights are allocated as follows contingent on the Buyer being awarded a waiver of patents by the DOE pursuant to modification to the Prime Agreement.

(i) all inventions of Buyer employees shall accrue to Buyer.

(ii) all inventions of Seller employees shall accrue to Seller, except that Seller shall assign all rights of such inventions to Buyer if the invention is an improvement in coal processing technology as exemplified by the PyGas® process.

An "invention" shall encompass any patentable technology developed during the term of this contract and will not encompass any patents or intellectual property owned by either Party before commencement of this contract.

11. DOCUMENTS INCORPORATED BY REFERENCE

The following documents are hereby incorporated by reference:

A. Exhibit "A" entitled "Scope of Work for PSIT."

B. Exhibit "B" entitled "General Conditions."

C. Exhibit "C" entitled "Prime Contract Clauses Incorporated by Reference."

D. Exhibit "D" entitled PSI Technology Company No. 1171 dated Sept. 20, 1993.

E. Exhibit "E" entitled "Task 4 Update - 10 August, 1993.

F. Exhibit "F" Letter of October 22, 1993.

12. ORDER OF PRECEDENCE

The following order of precedence shall govern in the event of a conflict between the documents of this Subcontract.

A. Articles 1 through 13 of this Subcontract

B. Exhibit "B" - General Conditions

C. Exhibit "C" - Prime Contract Clauses Incorporated by Reference

D. Exhibit "F" - Letter of October 22, 1993

E. Exhibit "A" - Scope of Work

F. Exhibit "D" - PSIT Proposal 1171

## EXHIBIT A: SCOPE OF WORK FOR PSIT

PSI Technology Company shall furnish all the services and material necessary to support the design, construction and pre-operational testing of a gasifier product improvement facility (GPIF). Support shall be provided to the phase of the program devoted to design of the coal gasifier subsystem and GPIF infrastructure.

### TASKS TO BE PERFORMED

**Task 1. National Environmental Policy Act Documentation**

The Contractor shall assist CRSS in preparation of a draft environmental report, which provides the information described in the CRSS Statement of Work, "Information Required for the National Environmental Policy Act (NEPA)". This report shall be submitted to DOE-METC by CRSS within sixty (60) days.

The PSIT role shall be to (I ) evaluate the test coals expected to be utilized in the GPIF facility (Appalachian Bituminous Coals), (2) predict toxic metal partitioning, (3) assess the import of toxics on the local environment, and (4) predict the $NO_x$ emissions and the fate of other criteria pollutants. A draft of the PSIT contribution to the report shall be submitted to CRSS ten days before the required submission to DOE.

**Task 2. Work Plan**

The contractor shall input to CRSS a detailed work plan for the performance of the PSIT support activities. This work plan shall include a description of the detailed steps to:

1) Identify technical issues related to NOx precursor reduction, ash measurement and control (including alkali, toxics and clinkers).

2) Describe the instruments / diagnostics to be reviewed, evaluated and recommended for application to GPIF.

**Task 3. Permit Information**

The contractor has no requirements under the Prime Contract task.

**Task 4. Conceptual Design**

The contractor shall assist CRSS in the conceptual design of the gasifier subsystem and the infrastructure required for the hot gas cleanup subsystem. PSIT shall provide a conceptual design for process monitors and controls (for temperature, NH3, volatile alkali, toxics, tar cracking, burning, etc.). The monitors will provide input to the DCS being designed by CRSS. The contractor

will also design concepts to minimize the release of $NH_3$, tars, alkali, toxic metals and clinkers. The exact nature of the activities in Task 4 are described in more detail in Exhibit E which is a recently submitted status report.

Through its subcontractor, PSI Environmental Instruments PSIT shall develop electro-optical instrumentation for incorporation into the GPIF process monitoring and control system. Specific instrumentation shall be developed to provide continuous monitoring of temperature and ammonia production in the process. Two instruments shall be developed.

PSI Environmental's patented multi-wavelength, optical temperature monitor (OTM) incorporates features that permit accurate and reliable measurement of temperature in a high-temperature hostile environment. This device has been demonstrated in commercial pulverized coat combustion applications. In this task, PSI Environmental shall adapt its OTM to the pressurized GPIF environment and its specific geometry.

Monitoring is complicated by the presence of other molecules that interfere with the ammonia signal. PSI Environmental is developing a continuous emission monitor for ammonia that has the sensitivity to monitor ammonia in the range of conditions expected for GPIF. This technology is based on the use of frequency modulated, near-infrared diode lasers. In this task, PSI Environmental shall develop and test a continuous emission monitor for ammonia specifically configured to the GPIF.

**Task 5. Bench-scale Technical Concept Studies**

The contractor shall perform bench-scale technical studies required to clarify design issues and uncertainties surrounding the innovative gasifier concept. These activities are described in more detail in Exhibit E. The contractor shall not perform bench-scale technical concept studies without prior approval by CRSS.

The Scope of PSIT's role will include modeling the upper gasifier gas flow, evaluating work at METC, and performing additional studies defined in the work plan to address design uncertainties. One example of work under this task will be to perform alkali and toxics partitioning experiments.

**Task 6. Preliminary Construction Design**

Upon approval of the conceptual design, CRSS will prepare a detailed construction design of the GPIF infrastructure and gasifier subsystem. PSIT will support this activity by providing an instrumentation and data acquisition plan. The contractor shall specify instruments, where they will be located and how they will interfere with the digital control system (DCS). They will specify the instrumentation and data acquisition requirements for input to the piping and instrument drawings. In addition, the

contractor will provide burner and instrument designs including drawings, functional specifications and material requirements. A design review of the interfacing with the host utility (including the CEM system interface) will also be performed. Again more detail on this subject is discussed in Exhibit E.

Based on testing of prototype continuous temperature and ammonia monitors for the GPIF, final design modifications shall be made by PSI Environmental Instruments. These designs are to be incorporated into the instruments to be delivered. Two OTM's and one ammonia monitor are to be delivered for eventual installation at the gasification facility.

**Task 7. Site Preparation / Construction**

The contractor shall have limited participation in this phase. The main participation will be to attend one project coordination meeting.

**Task 8. Pre-Operational Test Plan**

The contractor shall prepare a burner shakedown plan. As part of this plan, mechanical integrity, start-up (interlocks and permissions) and range of operability shall be addressed.

The contractor will also prepare an instrument shakedown plan defining checkout, calibration, and modification procedures.

PSIT,will also prepare a plan to measure $NH_3$, alkali, and air toxics.

The goal will be verify all calibrations as well as quantify values of these toxics.

**Task 9. Pre-Operational Testing**

The contractor will have limited involvement in the testing phase. PSI will be available to answer questions that involve the monitoring and control systems which they design. No on-site involvement is planned.

TABLE OF CONTENTS

EXHIBIT "B"

GENERAL CONDITIONS


| Article | | Page |
|---|---|---|
| 1 | Applicable Law and Disputes.......... | 1 |
| 2 | Assignment of Claims................. | 3 |
| 3 | Bankruptcy........................... | 4 |
| 4 | Buyer Furnished Property............. | 4 |
| 5 | Buyer's Right To Use Information Disclosed by Seller............... | 5 |
| 6 | Calendar Dates....................... | 5 |
| 7 | Changes.............................. | 5 |
| 8 | Clause Headings...................... | 5 |
| 9 | Compliance with Federal, State and Local Laws............... | 6 |
| 10 | Confidential Relationship............ | 6 |
| 11 | False Claims and Indemnity........... | 6 |
| 12 | Government Visits.................... | 7 |
| 13 | Gratuities........................... | 7 |
| 14 | Industrial Laws...................... | 8 |
| 15 | Invoicing and Payment................ | 8 |
| 16 | Modification of Subcontract........ | 9 |
| 17 | No Waiver of Conditions.............. | 9 |
| 18 | Packaging............................ | 10 |
| 19 | Price Reduction for Defective cost or Pricing Data............... | 10 |
| 20 | Seller's Certification of Cost or Pricing Data.................... | 11 |
| 21 | Subcontract Administration........... | 12 |


393