1. APPLICABLE LAW AND DISPUTES

A. Any disputes arising under this Subcontract solely between the Buyer and Seller shall be governed by the law of the State of South Carolina. However, if the issue in dispute is not covered by South Carolina law or if there is a conflict between South Carolina law and the Federal law, i.e., decisions of the Federal courts, regulations and statutes, the South Carolina court shall apply the Federal law. Any litigation under this Subcontract, if commenced by Seller, shall be brought in a Court of competent jurisdiction in the State of South Carolina.

B. 1. If a decision on a question of fact is issued by the Contracting Officer under the Prime Contract "Disputes" clause and the decision relates to this Subcontract, said decision, if binding upon the Buyer, under the Prime Contract, shall also be binding upon Buyer and Seller with respect to this Subcontract. However, if Seller is affected by such decision, and if Buyer elects not to appeal such decision under the "Disputes" clause of the Prime Contract, Buyer shall notify the Seller promptly. After receipt of such notice by Seller, if Seller submits a timely request to Buyer to appeal such decision, Buyer shall file an appeal. If Buyer appeals such decision, whether at its election or at Seller's request, any decision upon such appeal, if binding upon the Buyer under the Prime Contract, shall be binding upon the Buyer and Seller as it relates to this Subcontract. Appeals under the "Disputes" clause of the Prime Contract do not preclude consideration of questions of law in connection with decision(s) referenced above.

2. For any claims to be submitted under B.1. above in excess of $50,000, the Seller shall certify to the Buyer, as to its portion of the claim that: (a) the claim is made in good faith, (b) the supporting data are accurate to

the best of the Seller's knowledge and belief, and (c) the amount requested accurately reflects the Subcontract adjustment for which the Seller believes the Government is liable.

3. If any such appeal is denied or otherwise decided adversely to Seller's interest, or if Seller is otherwise adversely affected by any decision made by any representative of the Government on any question of fact and/or law arising under the Prime Contract which is also related to this Subcontract, from which an appeal under the "Disputes" clause in the Prime Contract is not available, said decision, if binding upon Buyer under the Prime Contract, shall in turn be binding upon Buyer and Seller with respect to such question as it relates to this Subcontract; provided, however, if Seller is adversely affected by any such decision, and if Buyer elects not to bring suit against the Government with respect to such decision, Buyer shall notify Seller promptly. If Seller submits a timely request to Buyer to bring suit against the Government, Buyer shall start such suit. If Buyer brings suit against the Government with respect to any such decision, whether at its election or at Seller's request, a final judgment in any such suit, if binding upon Buyer under the Prime Contract shall in turn be binding upon Seller and Buyer under this Subcontract with respect to the question decided as it relates to this Subcontract.

4. If any such appeal or suit is taken or brought by Buyer, whether at its election or at Seller's request, Seller shall assist Buyer in its prosecution thereof in every reasonable manner and Seller shall be afforded reasonable opportunity to participate in the prosecution thereof to the extent Seller's interest may be affected. To the extent requested by Buyer, Seller shall prosecute for Buyer any appeal or suit taken or brought at Seller's

request and, in such event, Buyer shall assist Seller in every reasonable manner. All costs and expenses incurred by Seller and Buyer in prosecuting any appeal or suit taken or brought solely at Seller's request shall be paid by Seller. Where possible, Buyer shall in good faith consult with Seller concerning the presentation to the Contracting Officer or other cognizant representatives of the Government of the questions referred to in paragraphs 1. and 3. above to the extent they may affect Seller's Interest.

5. If as a result of any decision or judgment which is binding upon Seller and Buyer, Buyer is unable to obtain reimbursement from the Government under the Prime Contract for, or is required to refund or credit to the Government any amount with respect to any item of cost or fee for which Buyer has reimbursed Seller, Seller shall, on demand, promptly repay such amount to Buyer.

6. The rights and obligations herein shall survive completion of and final payment under this Subcontract.

C. Provided, however, the Seller shall not be bound by any such Contracting Officer's decision, Appeal Board's decision, or judgment if such is not determinative of an obligation imposed upon the Seller under this Subcontract, or any amendment hereto.

D. Pending the resolution of any dispute, the Seller shall proceed as directed by Buyer in writing.

2. <u>ASSIGNMENT OF CLAIMS</u> (52.232-23)

A. The Seller shall not assign this Subcontract in whole or in part. Any monies due or to become due hereunder may be assigned, provided that such assignment shall not be

binding upon Buyer until receipt of a copy of the assignment agreement is acknowledged and approved by the Buyer in writing.

B. Copies of this Subcontract or of any plans, specifications, or other similar documents relating to work under this Subcontract, if marked "Top Secret," "Secret" or "Confidential," shall not be furnished to any assignee of any claim arising under this Subcontract or to any other person not entitled to receive the same. However, a copy of any part or all of this Subcontract so marked may be furnished, or any information contained therein may be disclosed, to such assignee upon the prior written authorization of the Buyer.

3. <u>BANKRUPTCY</u>

In addition to the rights set forth in FAR 52.249-6, Buyer may terminate this Subcontract for default, in whole or in part, by written or telegraphic notice to Seller if:

(1) the Seller shall become insolvent or make a general assignment for the benefit of creditors; or

(2) a petition under any bankruptcy act or similar statute is filed by or against the Seller and not vacated within ten (10) days after it is filed.

4. <u>BUYER FURNISHED PROPERTY</u>

The rights and obligations of the Seller with respect to Buyer Furnished Property shall be the same as those which the Seller has with respect to Government Property under FAR 52.245-2, excluding Alternate I.

5. <u>BUYER'S RIGHT TO USE INFORMATION DISCLOSED BY SELLER</u>

Unless otherwise expressly set forth in this Subcontract, Buyer shall have the right to use, for any purpose, unpatented information concerning Seller's products, manufacturing methods or processes which Seller shall disclose to Buyer during the performance of this Subcontract if such information is disclosed without restriction on further disclosure or use.

6. <u>CALENDAR DATES</u>

All periods of days referred to in this Subcontract shall be measured in calendar days.

7. <u>CHANGES</u> (52.243-2)

Buyer's Engineering and Technical Personnel may, from time to time, render assistance or give technical advice to, or effect an exchange of information with Seller's personnel in a liaison effort concerning the items to be furnished hereunder. However, such exchange of information or advice shall not vest Seller with authority to change the items hereunder or the provisions of this Subcontract, nor shall any change in the items or provisions of this Subcontract be binding on Buyer unless incorporated as a change in accordance with FAR 52.243-2 entitled "Changes-Cost-Reimbursement," incorporated by reference in Exhibit "C".

8. <u>CLAUSE HEADINGS</u>

The headings and subheadings of clauses contained herein are used for convenience and ease of reference and do not limit the scope or intent of the clause.

9. COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS

Seller will comply with all Federal, State, Municipal and local laws, rules and regulations that may be applicable to this Subcontract and, at the request of Buyer or the Government, Seller will furnish certificates to the effect that it has complied with said laws and regulations. Seller represents that it has complied and will continue to comply during the performance of this Subcontract with the provisions of the "Fair Labor Standards Act" of 1938, as amended, and the "Occupational Safety and Health Act" of 1970, and with the regulations and standards issued pursuant thereto.

10. CONFIDENTIAL RELATIONSHIP

Unless the written consent of the Buyer is first obtained, Seller shall not in any manner advertise or publish or release for publication any statement mentioning Buyer or the fact that Seller has furnished or contracted to furnish to Buyer items and/or services required by this Subcontract, or quote the opinion of any employees of Buyer. Seller shall not disclose any information relating to this Subcontract to any person not authorized by Buyer to receive it. Seller shall only use information supplied by Buyer to accomplish work covered by this Subcontract and for no other purposes. Upon completion, or termination of this Subcontract all information is to be returned to Buyer upon Buyer's written request.

11. FALSE CLAIMS AND INDEMNITY

The Seller shall indemnify the Buyer for any cost incurred and any payments made by the Buyer resulting from false claims submitted by the Seller under this Subcontract, any violation of the terms of this subcontract or applicable regulations or as a result of a Seller's misrepresentation of fact or fraud under appeals made by the Buyer or Seller under Article 1 entitled "Applicable Law and Disputes". The

Buyer shall notify the Seller, in writing, of any allegations of a false claim, misrepresentation of fact or fraud to which this indemnity applies.

12. GOVERNMENT VISITS

The Government and/or its designated representative(s) shall be permitted to visit the Seller with respect to this Subcontract only after arrangements have been made with the Buyer's Project Director. Visits of a routine nature, e.g., audit and inspection are not covered by this article.

13. GRATUITIES (52.203-3)

A. The Buyer may, by written notice to the Seller, terminate the right of the Seller to proceed under this Subcontract if it is found that gratuities, (in the form of entertainment, gifts, or otherwise), were offered or given by the Seller, or any agent or representative of the Seller to any officer or employee of the Government or the Buyer with a view toward securing this Subcontract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing of this Subcontract; provided, that the existence of the facts upon which the Buyer makes such findings shall be in issue and may be reviewed in any competent court.

B In the event this Subcontract is terminated as provided in paragraph A. hereof, the Buyer shall be entitled to pursue the same remedies against the Seller as it could pursue in the event of a breach of the Subcontract by the Seller.

C. The rights and remedies of the Buyer provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Subcontract.

14. INDUSTRIAL LAWS

The Seller, in all matters relating to this subcontract, shall be acting as an independent contractor. Neither the Seller nor any of the persons furnishing materials or performing work or services which are required by this Subcontract are employees of the Buyer within the meaning of or the application of any Federal or State Unemployment Insurance Law or other Social Security or any Workmen's Compensation, Industrial Accident Law or other Industrial or Labor Law. The Seller, at its own expense, shall comply with such laws, and assume all obligations imposed by any one or more of such laws with respect to this Subcontract.

15. INVOICING AND PAYMENT

A. Seller shall comply with the terms of Paragraph G.003c of the Prime Contract in preparing its invoices to Buyer.

B. Seller shall provide the Buyer a Status Report and a Cost Management Report on a monthly basis. Other invoice backup will be available for DOE audit but will not be provided to the Buyer.

B. All invoices shall be forwarded to Buyer at:

1041 E. Butler Road
P.O. Box 5456
Greenville, SC 20606-5456
Attention: Accounts Payable.

C. With the final invoice there shall be submitted the following:

1. A certification that invoices of all suppliers and subcontractors have been paid.

2. If applicable, three (3) completed copies of Royalty Report (DD Form 783) and Final Patent Report (DD Form 882) or equivalent forms.

3. A release discharging Buyer and the Government of and from any liabilities, obligations and claims arising out of or under this Subcontract.

16. MODIFICATION OF SUBCONTRACT

This Subcontract contains all the agreements between the parties and no course of dealing or usage of the trade shall be applicable unless expressly incorporated in this Subcontract. The terms and conditions contained in this Subcontract may not be added to, modified, superseded or otherwise altered except by a written modification signed by the Buyer's Project Director and delivered by Buyer to Seller. Each shipment received by Buyer from Seller shall be deemed to be only upon the terms and conditions contained in this Subcontract notwithstanding any terms and conditions that may be contained in any invoice or other form of Seller, and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer.

17. NO WAIVER OF CONDITIONS

Failure of Buyer to insist on strict performance shall not constitute a waiver of any of the provisions of this Subcontract or waiver of any other default of Seller.

18. <u>PACKAGING</u>

Unless otherwise specified in this Subcontract, the items required by the SOW shall be packed, pursuant to the Prime Contract, so as to assure safe arrival at destination in an undamaged condition under proper handling. Interior and exterior containers shall be marked with the Subcontract number.

19. <u>PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA</u>
(52.215-22/52.215--23)

A. If the Contracting Officer under Buyer's Prime Contract determines that any price including profit or fee, negotiated in connection with such Prime Contract, or any cost reimbursable under such Prime Contract was increased by any significant sums because Seller, or any subcontractor of the Seller, pursuant to the clauses of this Subcontract furnished incomplete or inaccurate cost or pricing data or data not current as certified in the Seller's Certificate of Current Cost or Pricing Data and if such Prime contract price, including profit or fee, or any cost reimbursable under such Prime Contract, shall be reduced by reason thereof; then, in such event, the price negotiated in connection with this Subcontract, including profit or fee or any cost reimbursable hereunder, shall be reduced accordingly and this Subcontract shall be modified in writing to reflect such reduction, and any amount paid Seller by Buyer in excess of the amount due Seller under this Subcontract after said reduction is made shall be promptly paid by Seller to Buyer upon demand.

B. In the event of price reduction pursuant to paragraph A. above, Seller shall be bound by the determination of the Contracting officer, provided that Buyer shall have promptly notified Seller of the decision of the contracting officer reducing Buyer's Prime Contract price; and, if

timely requested by Seller, Buyer shall have appealed such decision in accordance with the "Applicable Law and Disputes" clause of this Subcontract and shall have taken such further action as may be required under that clause and this clause.

C. Excluded from such reduction, however, shall be the Buyer's burden and profit applied to defective cost and pricing data of Seller and its subcontractors and suppliers.

D. The terms of Paragraphs A, B and C shall be applicable to any modifications of this subcontract.

20. <u>SELLER'S CERTIFICATION OF COST OR PRICING DATA</u>

A. If the amount of this Subcontract was expected to exceed $100,000 when entered into, the Seller has submitted, actually or by specific identification in writing, cost or pricing data.

B. Prior to the pricing of any Subcontract modification which involves aggregate increases and/or decreases in costs plus applicable profits expected to exceed $100,000, the Seller shall submit, actually or by specific identification in writing, cost or pricing data.

C. The submissions referenced in A. and B. above are not required where the price is based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulations.

D. With respect to A. above, the Seller has certified, and with respect to B. above, the Seller shall certify, in substantially the same form prescribed in Subsection 15.804--4 of FAR, that to the best of Seller's

knowledge and belief, the cost and pricing data submitted under A. and B. above is accurate, complete and current as of the date of agreement on the negotiated price of this Subcontract or Subcontract change or modification.

21. <u>SUBCONTRACT ADMINISTRATION</u>

Notwithstanding any other provisions of this Subcontract or any document referenced herein, the Buyer's Project Director is the only individual authorized to make the changes in or redirect the work required by this Subcontract. Where Buyer's approval is required under the terms of this Subcontract, it shall be construed to mean the approval of the Buyer's Project Director. In the event the Seller effects any change at the direction of any other person, the change will be considered as having been made without authority and an adjustment will not be made in the Subcontract estimated cost or fee or delivery schedule as a result thereof. No agreement or understanding will be binding on Buyer unless made in writing and signed by the Buyer's Project Director.

The Buyer's initial Project Director is Larry House.

EXHIBIT "C"

PRIME CONTRACT CLAUSES INCORPORATED BY REFERENCE

PRIME CONTRACT CLAUSES INCORPORATED BY REFERENCE

(A) The clauses of the Federal Acquisition Regulations (FAR) and of the Department of Energy FAR Supplement set forth in Part II - Section I of the Prime Contract are hereby incorporated by reference in this Subcontract. The obligations of the Contractor to the Government as provided in said clauses shall be deemed to be the obligations of the Seller to the Buyer. However, whenever said clauses include a requirement for the settlement of disputes between the parties in accordance with the "Disputes" clause, the dispute shall be disposed of in accordance with Article 1 entitled "Applicable Law and Disputes" of the General Conditions, Exhibit "B".

(B) Wherever necessary to make the context of the clauses set forth in this Exhibit "C" applicable to this Subcontract, the term "Contractor" shall mean Seller, the term "Contract" shall mean this Subcontract, and the term "Government", "Contracting Officer" and equivalent phrases shall mean Buyer, except the terms "Government" and "Contracting Officer" do not change: (1) In the phrases "Government Property", "Government-Furnished Property", "Government-Owned Property", "Government Equipment" and "Government-Owned Equipment", (2) When a right, act, authorization or obligation can be granted or performed only by the Government or the prime contract Contracting officer or his duly authorized representative, (3) When access to proprietary financial information or other proprietary data is required, and (4) When title to property is to be transferred directly to the Government.

13. <u>NOTICES AND CORRESPONDENCE</u>

All notices and correspondence shall be sent by either party to the other in all matters dealing with this Subcontract to the following addresses:

A. To the Buyer: CRS Sirrine Engineers, Inc.
P.O. Box 5456
1041 East Butler Road
Greenville, SC 29606-5456
Attn: Larry House

B. To the Seller: PSI Technology Company
A Division of Physical Sciences, Inc.
20 New England Business Center
Andover, MA 01810
Attn: Randy B. Ewing

14. <u>SMALL BUSINESS STATUS</u>

Seller represents and warrants to Buyer that Seller is a small business concern as defined by applicable federal laws and regulations.

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract as of the day and year first above written.

CRS SIRRINE ENGINEERS, INC.

Attest:

Vickie Bowman
Secretary

By: Larry S. House

PSI PowerServe
A Division of
PHYSICAL SCIENCES, INC.

Attest:

Carlene B. White
Secretary

By: Anthony N. [illegible]

EXHIBIT " D "

PSIT Proposal No. 1171

20 September 1993

PSI Technology Company

# CERTIFICATE OF CURRENT COST OR PRICING DATA

This is to certify that, to the best of my knowledge and belief, the cost or pricing data (as defined in section 15.801 of the Federal Acquisition Regulation (FAR) and required under FAR subsection 15.804-2) submitted either actually or by specific identification in writing, to the contracting officer or the contracting officer's representative in support of PSIT Proposal No. 1171 are accurate, complete, and current as of 20 September 1993. This certification includes the cost or pricing data supporting any advance agreements and forward pricing rate agreements between the offeror and the Government that are part of the proposal.

FIRM: PSI Technology Company
A Division of Physical Sciences Inc.

NAME: Anthony N Pirri

TITLE President

SIGNATURE: Anthony N. Pirri

Date of Execution: 20 September 1993

A Division of Physical Sciences Inc.
20 New England Business Center Andover, MA 01810 Tel. (508)689-0003 Fax. (508)689-3232

PSIT NO. 1171 20-Sep-93

TITLE: Gasifier Process Improvement Facility

| Total All Tasks<br>COST ELEMENTS | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|
| Principal Research Scientist 1 | 135 | 18,034 |
| Principal Research Scientist 3 | 433 | 48,785 |
| Principal Research Scientist 4 | 1,307 | 131,595 |
| Principal Research Scientist 5 | 680 | 58,487 |
| Senior Instrumentation Specialist | 716 | 68,776 |
| Principal Scientist/Engineer 1 | 216 | 17,585 |
| Senior Scientist/Engineer 1 | 752 | 45,436 |
| Scientist/Engineer | 722 | 32,757 |
| A) BURDENED COSTS | | |
| 1. LABOR | 4,961 | 421,455 |
| 2. LAB CHARGE | | 4,510 |
| 3. TRAVEL | | 30,219 |
| 4. MATERIALS | | 49,894 |
| 5. COMPUTER | 20 | 346 |
| 6. SUBCONTRACTS/CONSULTANTS | | 372,400 |
| 7. FACILITIES CAPITAL COST OF MONEY | | 1,218 |
| TOTAL ESTIMATED COSTS: | | $880,042 |
| B) FEE/PROFIT (excludes FCCOM) | | $57,959 |
| C) TOTAL COST PLUS FIXED FEE | | $938,001 |
| D) COST SHARE (via PSI Environmental Corporation) | | ($187,601) |
| C) TOTAL COST TO SPONSOR | | $750,400 |

PSI fiscal year is from 1 July through 30 Jun

410

PSIT NO. 1171

20-Sep-93

TITLE: Gasifier Process Improvement Facility

Total PSI Technology Company

| COST ELEMENTS | | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|---|
| Principal Research Scientist 1 | | 135 | 18,034 |
| Principal Research Scientist 3 | | 433 | 48,785 |
| Principal Research Scientist 4 | | 1,307 | 131,595 |
| Principal Research Scientist 5 | | 680 | 58,487 |
| Senior Instrumentation Specialist | | 716 | 68,776 |
| Principal Scientist/Engineer 1 | | 216 | 17,585 |
| Senior Scientist/Engineer 1 | | 752 | 45,436 |
| Scientist/Engineer | | 722 | 32,757 |
| A) BURDENED COSTS | | | |
| 1. LABOR | | 4,961 | 421,455 |
| 2. LAB CHARGE | | | 4,510 |
| 3. TRAVEL | | | 30,219 |
| 4. MATERIALS | | | 49,894 |
| 5. COMPUTER | | 20 | 346 |
| 6. SUBCONTRACTS/CONSULTANTS | | | 0 |
| 7. FACILITIES CAPITAL COST OF MONEY | | | 1,165 |
| TOTAL ESTIMATED COSTS: | | | $507,589 |
| B) FEE/PROFIT (excludes FCCOM) | 10.0% | | $50,422 |
| C) TOTAL COST PLUS FIXED FEE | | | $558,011 |
| D) COST SHARE (via PSI Environmental Corporation) | | | $0 |
| C) TOTAL COST TO SPONSOR | | | $558,011 |

PSI fiscal year is from 1 July through 30 Jun

411

PSIT NO. 1171 20-Sep-93

TITLE: Gasifier Process Improvement Facility

Task 1: Nepa Report

| COST ELEMENTS | | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|---|
| Principal Research Scientist 1 | | 9 | 1,155 |
| Principal Research Scientist 3 | | 18 | 1,935 |
| Principal Research Scientist 4 | | 140 | 13,460 |
| Principal Research Scientist 5 | | 80 | 6,566 |
| Senior Instrumentation Specialist | | 0 | 0 |
| Principal Scientist/Engineer 1 | | 0 | 0 |
| Senior Scientist/Engineer 1 | | 0 | 0 |
| Scientist/Engineer | | 0 | 0 |
| A) BURDENED COSTS | | | |
| 1. LABOR | | 247 | 23,116 |
| 2. LAB CHARGE | | | 0 |
| 3. TRAVEL | | | 0 |
| 4. MATERIALS | | | 0 |
| 5. COMPUTER | | 0 | 0 |
| 6. SUBCONTRACTS/CONSULTANTS | | | 0 |
| 7. FACILITIES CAPITAL COST OF MONEY | | | 38 |
| TOTAL ESTIMATED COSTS: | | | $23,154 |
| B) FEE/PROFIT (excludes FCCOM) | 10.0% | | $2,312 |
| C) TOTAL COST PLUS FIXED FEE | | | $25,466 |
| D) COST SHARE (via PSI Environmental Corporation) | | | $0 |
| C) TOTAL COST TO SPONSOR | | | $25,466 |

PSI fiscal year is from 1 July through 30 Jun

412

PSIT NO. 1171 20-Sep-93

TITLE: Gasifier Process Improvement Facility

Task 2: Work Plan

| COST ELEMENTS | | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|---|
| Principal Research Scientist 1 | | 18 | 2,310 |
| Principal Research Scientist 3 | | 45 | 4,838 |
| Principal Research Scientist 4 | | 80 | 7,691 |
| Principal Research Scientist 5 | | 80 | 6,566 |
| Senior Instrumentation Specialist | | 16 | 1,467 |
| Principal Scientist/Engineer 1 | | 0 | 0 |
| Senior Scientist/Engineer 1 | | 0 | 0 |
| Scientist/Engineer | | 0 | 0 |
| A) BURDENED COSTS | | | |
| 1. LABOR | | 239 | 22,872 |
| 2. LAB CHARGE | | | 0 |
| 3. TRAVEL | | | 6,062 |
| 4. MATERIALS | | | 0 |
| 5. COMPUTER | | 0 | 0 |
| 6. SUBCONTRACTS/CONSULTANTS | | | 0 |
| 7. FACILITIES CAPITAL COST OF MONEY | | | 42 |
| TOTAL ESTIMATED COSTS: | | | $28,976 |
| B) FEE/PROFIT (excludes FCCOM) | 10.0% | | $2,894 |
| C) TOTAL COST PLUS FIXED FEE | | | $31,870 |
| D) COST SHARE (via PSI Environmental Corporation) | | | $0 |
| C) TOTAL COST TO SPONSOR | | | $31,870 |

PSI fiscal year is from 1 July through 30 Jun

413

PSIT NO. 1171 20-Sep-93

TITLE: Gasifier Process Improvement Facility

Task 4: Conceptual Design

| COST ELEMENTS | | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|---|
| Principal Research Scientist 1 | | 36 | 4,651 |
| Principal Research Scientist 3 | | 90 | 9,754 |
| Principal Research Scientist 4 | | 280 | 27,139 |
| Principal Research Scientist 5 | | 72 | 5,950 |
| Senior Instrumentation Specialist | | 280 | 25,884 |
| Principal Scientist/Engineer 1 | | 112 | 8,835 |
| Senior Scientist/Engineer 1 | | 72 | 4,116 |
| Scientist/Engineer | | 80 | 3,423 |
| A) BURDENED COSTS | | | |
| 1. LABOR | | 1,022 | 89,752 |
| 2. LAB CHARGE | | | 0 |
| 3. TRAVEL | | | 10,299 |
| 4. MATERIALS | | | 45,892 |
| 5. COMPUTER | | 20 | 346 |
| 6. SUBCONTRACTS/CONSULTANTS | | | 0 |
| 7. FACILITIES CAPITAL COST OF MONEY | | | 182 |
| TOTAL ESTIMATED COSTS: | | | $146,471 |
| B) FEE/PROFIT (excludes FCCOM) | 10.0% | | $14,556 |
| C) TOTAL COST PLUS FIXED FEE | | | $161,027 |
| D) COST SHARE (via PSI Environmental Corporation) | | | $0 |
| C) TOTAL COST TO SPONSOR | | | $161,027 |

PSI fiscal year is from 1 July through 30 Jun

414

PSIT NO. 1171 20-Sep-93

TITLE: Gasifier Process Improvement Facility

Task 5: Technical Concepts Studies

| COST ELEMENTS | | GRAND TOTAL HOURS | GRAND TOTAL $$$$$ |
|---|---|---|---|
| Principal Research Scientist 1 | | 36 | 4,929 |
| Principal Research Scientist 3 | | 190 | 21,794 |
| Principal Research Scientist 4 | | 325 | 33,353 |
| Principal Research Scientist 5 | | 360 | 31,527 |
| Senior Instrumentation Specialist | | 80 | 7,827 |
| Principal Scientist/Engineer 1 | | 40 | 3,340 |
| Senior Scientist/Engineer 1 | | 560 | 33,931 |
| Scientist/Engineer | | 280 | 12,677 |
| A) BURDENED COSTS | | | |
| 1. LABOR | | 1,871 | 149,378 |
| 2. LAB CHARGE | | | 4,510 |
| 3. TRAVEL | | | 0 |
| 4. MATERIALS | | 0 | 4,002 |
| 5. COMPUTER | | | 0 |
| 6. SUBCONTRACTS/CONSULTANTS | | | 0 |
| 7. FACILITIES CAPITAL COST OF MONEY | | | 662 |
| TOTAL ESTIMATED COSTS: | | | $158,552 |
| B) FEE/PROFIT (excludes FCCOM) | 10.0% | | $15,710 |
| C) TOTAL COST PLUS FIXED FEE | | | $174,262 |
| D) COST SHARE (via PSI Environmental Corporation) | | | $0 |
| C) TOTAL COST TO SPONSOR | | | $174,262 |

PSI fiscal year is from 1 July through 30 Jun

415