**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**JACOBS ENGINEERING GROUP INC.**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

No. 02-1500C
(Judge George W. Miller)

**PLAINTIFF JACOBS ENGINEERING GROUP INC.'S OPPOSITION TO <u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W.
12th Floor
Washington, D.C. 20036
(202) 393-7150

Counsel of Record for Plaintiff
JACOBS ENGINEERING GROUP INC

October 25, 2006

# TABLE OF CONTENTS

I. SUMMARY OF ISSUES .......... 1

II. ARGUMENT .......... 3

A. Because the Cost-Sharing Provision is Not Applicable Upon the Government's Termination for Convenience, the Cost-Sharing – No Fee Provision Also is Not Applicable .......... 3

B. The Government is Collaterally Estopped from Claiming That the Total Allowable Costs are Less Than $7,064,721 .......... 8

1. The Energy Board Had Jurisdiction Over Jacobs' Claim .......... 8

2. The Energy Board's Decision Addressed Fee as an Allowable Cost .......... 10

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## Cases

*Bianchi v. United States*, 68 Fed. Cl. 442 (2005) .......... 9

*Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1940) .......... 10

*Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004) .......... 10

*Coopers Realty Co. v. United States*, 36 Fed. Cl. 284 (1996) .......... 4

*Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee,* 456 U.S. 694 at 702 n. 9, 102 S.Ct. 2099, 2104 (1982) .......... 10

*International Air Response v. U.S.*, 302 F.3d 1363, 1369 (Fed. Cir. 2002) .......... 10

*Jacobs Engineering Group Inc. v. United States*, 63 Fed. Cl. 451, 457 (2005) .......... 4

*Jacobs Engineering Group Inc.*, EBCA No. C-510394 (January 31, 2006) .......... 3, 8

*Jacobs Engineering Group, Inc. v. United States*, 434 F.3d 1378 (Fed Cir. 2006) .......... 2, 4, 6

*Shearson Lehman Hutton, Inc. v. United States*, 24 Cl. Ct. 770, 773 (1991) .......... 4

*Wilner v. U.S.*, 24 F.3d 1347 (Fed. Cir. 1994) .......... 9, 10, 11

## Statutes

41 U.S.C. § 611 .......... 2

## Rules

FAR 49.201(a) .......... 5

FAR 52. 249-6(g)(4)(i) .......... 1

FAR 52.216-12 .......... 2, 4, 5, 7

FAR 52.216-12(a) .......... 4, 5

FAR 52.249-6(g)(4) .......... 4, 7

FAR 52.249-6(m) .......... 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACOBS ENGINEERING GROUP INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | ) | No. 02-1500C<br>(Judge George W. Miller) |

**PLAINTIFF JACOBS ENGINEERING GROUP INC.'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jacobs Engineering Group Inc. ("Jacobs"), through its undersigned counsel, files this Opposition to Defendant's Cross-Motion for Summary Judgment pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims. The Plaintiff moves this Court for summary judgment in its favor and respectfully requests that the Court deny Defendant's Cross-Motion for Summary Judgment to the extent the Defendant contends that Plaintiff is not entitled to recover fee as a result of a termination of Plaintiff's contract for the convenience of the Government.

## I. SUMMARY OF ISSUES

In deciding the parties' cross-motions for summary judgment, the Court is presented with two straightforward issues -- the first is a question of a contract interpretation, and the second is a question of procedure.

With respect to interpreting the Contract, the Contract at issue in this case includes a standard termination for convenience clause, Federal Acquisition Regulation ("FAR") § 52.249-6, Termination (Cost Reimbursement), which (at subparagraph (g)(4)(i)) expressly permits the

recovery of fee in the event of a termination for convenience.[1] The Contract also includes a cost-sharing provision. In January 2006, the Federal Circuit ruled that the cost-sharing provision is inapplicable upon the Government's termination for convenience, and that Jacobs is entitled to recover "all of the costs" it incurred to perform the Contract through the date of termination, not 80% of them as previously ruled by this Court.[2] On remand, the Government readily concedes that it must pay Jacobs $919,672, plus interest, pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 611, from April 29, 2002, until the date of payment.[3] In making its calculation, the Government does not apply the Contract's cost-sharing provision, but the Government simultaneously argues that FAR 52.216-12, Cost Sharing Contract – No Fee, precludes Jacobs from recovering any fee (which the parties agree amounts to $565,450). The Government's contention is not logical. Given that the cost-sharing provision is no longer applicable, it does not logically follow that the Cost Sharing – No Fee provision would still apply. To the contrary, if "cost-sharing" no longer applies, then logically "cost-sharing no fee" would no longer apply. This is the only reasonable interpretation and should be adopted by the Court. To the extent the Court finds an ambiguity between these contract provisions and the Federal Circuit ruling, that ambiguity must be construed in favor of Jacobs, the non-drafter of the Contract.

The procedural question involves a prior proceeding in another forum involving the same parties regarding amounts that remained due Jacobs after application of the cost-sharing provision - - notwithstanding whether cost-sharing applied. After considering the parties' arguments, the Energy Board of Contract Appeals (the "Energy Board"), in *Jacobs Engineering*

---

[1] *See* J.App. 098.

[2] *Jacobs Engineering Group, Inc. v. United States*, 434 F.3d 1378 (Fed. Cir. 2006).

[3] *See* Defendant's Cross-Motion at pages 1, 7, and 14. However, the Government has not paid Jacobs this $919,627 it acknowledges Jacobs is due. Instead, it requests the Court to enter judgment in favor of Jacobs for that amount.

*Group Inc.*, EBCA No. C-510394 (January 31, 2006), ruled that Jacobs was entitled to judgment against the Government in the amount of $72,176.83. As part of its determination, the Energy Board expressly adopted the Contracting Officer's determination that the total allowable cost of performance was $7,064,721, which the Government and Jacobs fully understood included fee in the amount of $565,450.[4] Moreover, since at least September 2002, when the Contracting Officer issued its final decision, the Government consistently has calculated Jacobs' total cost of performance to be $7,064,721, including fee in the amount of $565,450. Although the Government elected to not appeal the Energy Board's ruling, it now wants to "re-litigate" whether the Energy Board had jurisdiction over Jacobs' claim and "re-litigate" whether $7,064,721 is the total allowable costs under the Contract. The Government's arguments are too late. This Court should accept the $7,064,721 figure, which the Contracting Officer determined and the Energy Board expressly adopted, based upon the collateral estoppel doctrine.

The above two issues are *the* questions before the Court that override all the sub-issues relevant to the parties' cross-motions. Thus, in this brief, Jacobs attempts to develop these two primary issues and treat the sub-issues as succinctly as possible.[5]

## II. ARGUMENT

### A. Because the Cost-Sharing Provision is Not Applicable Upon the Government's Termination for Convenience, the Cost-Sharing – No Fee Provision Also is Not Applicable.

In *Jacobs Engineering Group, Inc. v. United States*, 434 F.3d 1378 (Fed Cir. 2006), the U.S. Court of Appeals for the Federal Circuit, in interpreting what costs were reimbursable under the Contract pursuant to FAR 52.249-6, concluded that cost-sharing was not part of the equation:

---

[4] At that time, it was called "foregone fee."

[5] For example, the Government argues that Jacobs has asked for "reformation" of the Contract to create its entitlement to fee. Nowhere in Jacobs' moving papers, however, does it seek reformation of the Contract.

> "Throughout the contract, when the parties intended the 80 percent - - 20 percent division of costs to cover particular situations, they explicitly so provided.... In these circumstances, it seems most unlikely that if the parties had intended the termination clause to limit the contractor to 80 percent of the termination costs, they would not have said so instead of providing that the government would pay "all costs reimbursable" under the contract."

*Id.* at page 1381. The Federal Circuit reversed this Court's earlier decision that the cost-sharing provision survived the termination for convenience by the Government. *See Jacobs Engineering Group Inc. v. United States*, 63 Fed. Cl. 451, 457 (2005). This case is now before the Court on remand for a determination of damages.

On remand, the Government concedes that Jacobs is entitled to recover at least $919,672 in damages, plus interest, in addition to amounts previously received under the Contract. However, as stated above, the central disagreement between the parties is whether Jacobs is entitled to an additional $565,450 for fee over and above what the Government believes Jacobs is owed. This issue turns on a question of contract interpretation and is ripe for summary judgment as a matter of law. *See Coopers Realty Co. v. United States*, 36 Fed. Cl. 284 (1996); *Shearson Lehman Hutton, Inc. v. United States*, 24 Cl. Ct. 770, 773 (1991).

To address this issue, the Court must interpret several provisions of the Contract given the Federal Circuit's ruling that the cost-sharing provision at B.007(S) of the Contract is not applicable. Clearly, FAR 52.249-6(g)(4) of the contract permits the recovery of fee in the event of a termination for convenience. (J.App. 098). FAR 52.249-6(m), on the other hand, states that this fee provision is not applicable if the contract does not include a fee. (J.App. 099). This is where the parties' dispute arises. Included in the contract along with the cost-sharing provision at B.007(S) is FAR 52.216-12 – Cost-Sharing Contract – No Fee. FAR 52.216-12(a) states that "[t]he Government shall not pay to the Contractor a fee for performing this contract". The Government relies exclusively upon this language to argue Jacobs is not entitled to fee.

Conveniently ignored by the Government in making this argument is the title of the clause, as well as subparagraph "B" of the clause, which states "[A]fter paying 80 percent of the Government's share ...". Logically, this language dictates application of FAR 52.216-12(a) only when the separate cost-sharing provision of the contract at B.0007(S) also is operative. Given that "cost-sharing" is no longer applicable after the Federal Circuit's ruling, it logically follows that the associated "cost-sharing no fee" provision of FAR 52.216-12 is not applicable. This is the only reasonable interpretation - - especially when consideration is given to the fact that the Government thwarted Jacobs' ability to receive any benefit from this contract by terminating it for convenience.

Although the Federal Circuit did not expressly interpret FAR 52.216-12, it did emphasize the underlying policy that "a contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate". *See Jacobs Engineering*, 434 F.3d at 1380.[6] If Jacobs does not recover its fee, Jacobs and its subcontractors provided services to the Government for several years at cost with no benefit or fee. As stated in FAR 49.201(a), a settlement related to a termination for convenience "should compensate the contractor fairly for the work done... including a reasonable allowance for profit." Working at cost for the Government for no benefit is not fair to the contractor when the Government elects to terminate a contract for its convenience. By comparison, the Government's interpretation renders meaningless the cost-sharing language in the title of FAR 52.216-12, as well the clear import of subparagraph "B", which expressly references the 80% cost-share provision otherwise applicable to the Contract. The Government's interpretation also

[6] The Federal Circuit also indicated in its decision that its conclusion that cost-sharing did not apply was in accord with the financial situation underlying the contract, citing FAR 16.303(b), which states that "[a] cost-sharing contract may be used when the contractor agrees to absorb a portion of the costs, in the expectation of substantial compensating benefits." This same rationale applies to Jacobs' argument on its entitlement to fee.

penalizes the contractor which conflicts with the fundamental policy underlying a termination for convenience to make the Contractor whole. Accordingly, Jacobs' interpretation should be adopted by this Court, which is consistent with the express terms of the contract concerning the recovery of fee and the policy that a contractor is not to suffer as a result of a termination for convenience.

In addition, it is noteworthy that the Government makes no significant effort in its Cross-Motion to rectify the apparent conflict between its interpretation and the language of subject contract provisions or the fundamental policy governing terminations for convenience. Instead, the Government advances strained technical defenses to avoid liability for fee. For example, at page 8 of its Cross-Motion, the Government relies upon this Court's previous ruling that Jacobs was not entitled to fee in *Jacobs Engineering Group Inc. v. United States,* 65 Fed. Cl. at 459. The Government, however, takes this ruling completely out of context. In its previous ruling, this Court concluded that fee was not applicable under circumstances where it enforced the cost-sharing provision. At the present time, Plaintiff is requesting the Court to interpret the fee provisions when cost-sharing is not applicable to determine damages. In its prior ruling, this Court did not decide whether fee was recoverable if cost-sharing was not enforceable.[7] Rather, this Court ruled that fee was not recoverable when cost-sharing was in place. Accordingly, the Government's reliance on the Court's prior ruling is not germane to resolve the issue. To the contrary, this Court must decide anew whether the contract permits the recovery of fee in the absence of cost-sharing.

Indeed, as argued in Jacobs' motion and herein, it is the very absence of the cost-sharing provision that forms the basis of its claim that fee is permitted. When the Federal Circuit ruled

[7] During a status conference held on May 23, 2006, the Court stated it did not address fee in the context of when cost-sharing did not apply in its prior ruling. (*See* Tr. at page 10, lines 2-23).

that cost-sharing did not apply, implicit in the holding was that FAR 52.216-12, Cost-Sharing No Fee, also did not apply.[8] There is no other reasonable interpretation of the language of this clause. Accordingly, if the contract does not preclude fee in the event of a termination for convenience, then Jacobs is entitled to recover fee under FAR 52.249-6(g)(4), which states in relevant part:

> (4) A portion of the fee payable under the Contract, determined as follows:
>
> (i) If the Contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equate to the percentage of completion of work contemplated under the Contract, but excluding subcontractor effort included in the subcontractor's termination proposals, less previous payments for fee.

The amount of fee payable under the contract is $565,450 as agreed to by the parties. (*See* Jacobs' PFUF 6).

Contrary to Defendant's suggestion at pages 8 and 15 of its Cross-Motion, Jacobs' does not seek "reformation" to accomplish the desired result of recovering this fee. Rather, Jacobs seeks to enforce the ruling by the Federal Circuit that cost-sharing does not apply, and therefore, that "cost-sharing no fee" clause also does not apply. Clearly, reformation is not the issue. The issue is Jacobs' entitlement to fee under the contract. Applying the ruling of the Federal Circuit, and giving reasonable meaning to the terms of the Contact, Jacobs seeks a ruling from this Court that the Contract entitles it to recover its fee in the amount of $565,450 since the Government terminated its Contract for convenience thereby eradicating Jacobs' ability to reap any benefit from it.

---

[8] The Government in reciting the language of FAR 52.216-12 fails to mention the title, "Cost-Sharing No Fee". (*See* page 16 of the Government's Cross-Motion).

**B. The Government is Collaterally Estopped from Claiming That the Total Allowable Costs are Less Than $7,064,721.**

On January 31, 2006, the Energy Board of Contract Appeals (the "Energy Board"), in *Jacobs Engineering Group Inc.*, EBCA No. C-0510394, ruled that Jacobs was entitled to a judgment against the Government in the amount of $72,176.83.[9] As part of its ruling, the Energy Board found that the total allowable cost under Jacobs' contact was $7,064,721.79 (which included fee for Jacobs and its subcontractors in the amount of $565,450). The Energy Board's judgment was calculated by taking 80% of the total allowable costs (presuming the cost-sharing provision applied) and deducting payments to date. As set forth in Plaintiff's Motion for Summary Judgment at pages 12-14, the Government is precluded from re-litigating an issue upon which there is already a valid and final judgment. *Bianchi v. United States*, 68 Fed. Cl. 442 (2005). Determining Jacobs' total allowable costs was an issue the Energy Board addressed to reach its judgment. Thus, this Court should similarly find as conclusive that $7,064,721.69 is the total allowable costs Jacobs is entitled to recover under the contract. Deducting payments to date of $5,579,600.60, this Court should find that Jacobs is entitled to judgment in the amount of $1,485,421.19, plus interest in accordance with the CDA.

The Government advances two unsupported arguments in response to Jacobs' contention that the Government is collaterally estopped from now claiming that the total costs reimbursable under the contract is less than $7,064,721.

**1. <u>The Energy Board Had Jurisdiction Over Jacobs' Claim</u>**

The Government argues at pages 31-32 and 34-39 of its Cross-Motion that the collateral estoppel doctrine is not applicable in this case because the Energy Board never possessed

---

[9] As posited by the Defendant in its Cross-Motion at pages 1, 7 and 15, Jacobs acknowledges that a judgment rendered by this Court for $919,627, plus interest accruing from April 29, 2002, will satisfy the judgment issued by the Energy Board of Contract Appeals in EBCA No. C-0510396 in the amount of $72,176.83.

jurisdiction over Jacobs' claim to recover the $72,176.83 the Contracting Officer determined was due Jacobs. Although the Government's argument fails on the merits, it also should be rejected for another reason: it is too late. During the pendency of the Energy Board proceeding, the Government raised its jurisdictional argument based on the *Wilner* case and it was flatly rejected. (J.App 283).[10] The Government did not appeal and the time to appeal the Energy Board's judgment on this jurisdictional challenge (or otherwise) on January 31, 2006 expired long ago. At this point, any jurisdictional defense has been waived. *International Air Response v. U.S.*, 302 F.3d 1363, 1369 (Fed. Cir. 2002); see also *Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee,* 456 U.S. 694 at 702 n. 9, 102 S.Ct. 2099, 2104 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ··· reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of *res judicata* apply to jurisdictional determinations-both subject matter and personal."); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (A "court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action."). Moreover, one Court can "adopt" the fact finding and legal determinations of another Court (or Board) even if the first Court lacked jurisdiction. *See Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004). Regardless of any jurisdictional argument, the Government

[10] *See Wilner v. U.S.*, 24 F.3d 1347 (Fed. Cir. 1994). As the Energy Board concluded, the *Wilner* case is not applicable to the factual circumstances present here. This case deals with an evidentiary presumption regarding findings of fact in a final decision of the Contracting Officer addressing a delay and impact claim on a construction project. *Wilner* concerned a situation where "all" of the findings of the Contracting Officer were the subject matter of the appeal. Here, Jacobs' Complaint to the Court of Federal Claims was based upon the Contracting Officer's erroneous application for the cost-sharing provision to the total allowable costs. Jacobs did not object to or dispute the Contracting Officer's final decision on total allowable costs for the determination that Jacobs was due $72,176.83 after the Contracting Officer determined cost-sharing applied. Thus, the Energy Board properly ruled that this factual conclusion was not the subject matter of Jacobs' appeal to this Court or negate its ability to recover said amount.

provides no substantive justification for this Court to reject the Energy Board's finding of fact regarding "total allowable costs" of $7,064,721.

The Energy Board also relied upon the $7,064,721 figure to conclude that the Government's argument that Jacobs was not due the $72,176.83 was "not well founded". (J.App 283). Given that the Contracting Officer determined that $72,176.83 was due after an audit, it was remarkably suspect and unfair for the Government, citing *Wilner* to argue before the Energy Board that Jacobs lost its right to receive the $72,176.83, when Jacobs filed suit in the Court of Federal Claims for the remaining 20% of its total allowable costs. The Government fails to provide this Court a convincing argument for such conduct. Equally disconcerting is the Government's argument to this Court that Jacobs waived its right to collect the $72,176.82 when it failed to request this Court to enter judgment for that amount. (*See* Cross-Motion at pages 4 and 9). Clearly, like the Energy Board, this Court believed and understood that Jacobs would be paid the $72,176.83 found due to Jacobs by the Contracting Officer regardless of the outcome of Jacobs' claim for the remaining 20% of its total allowable costs.

**2. <u>The Energy Board's Decision Addressed Fee as an Allowable Cost</u>.**

Next, the Government argues that the Energy Board never addressed the issue of fee before this Court. (*See* Government Cross-Motion at page 32). Again, the Government should have advanced its position before the Energy Board, had the Government believed it important. Instead, the Government chose to not challenge the Energy Board decision and now wants to relitigate the Energy Board's jurisdiction and conclusions of fact before this Court.

Contrary to the Government's arguments, Jacobs' collateral estoppel argument is based on the administrative record regarding the adjudication of Jacobs' claim at the Energy Board to recover the $72,176.83 found due by the Contracting Officer. In order to do so, the value of Jacobs' contract was required to be proven. The Court need not look any further than paragraph

8 of Jacobs' Complaint filed with the Energy Board to confirm Jacobs' contention. (J.App. 287). Therein, Jacobs relied upon the Contracting Officer's final decision concluding that $7,064,721.79 was the total allowable costs for the project. Likewise, the Energy Board in reaching its result relied upon this same conclusion by the Contracting Officer. (J.App. 282). The $7,064,721.71 calculated by the Contracting Officer in the final decision, and that Jacobs and the Energy Board relied upon to find Jacobs' entitled to $72,176.83, included fee of $565,450. (J.App. 0173). The Government's cannot dispute these facts formed the basis of the Energy Board's decision. Implicit in the Energy Board's decision is that fee was considered an element of the total allowable cost - - albeit at that point the correct nomenclature would be "foregone fee". Now that cost-sharing is no longer in place, the correct nomenclature is "fee". Whether "fee" or "forgone fee", the Government's attempt to resurrect the issue of total allowable cost on remand from the Federal Circuit should be rejected based upon the collateral estoppel doctrine.

Lastly, Jacobs does not equate "foregone fee" with "fee" as suggested by the Defendant. As stated in Jacobs' Motion, foregone fee and fee are the same in terms of the percentage mark-up on allowable costs; the difference is in application. Under a cost-sharing contract, fee is not a recoverable cost. However, pursuant to DOE regulations, Jacobs was permitted to mark-up its costs with fee and recoup 80% of the product of that amount. In that circumstance (i.e. in a cost-sharing situation), the recovery of that fee is referred to as "foregone" fee, which is consistent with how the parties contemporaneously interpreted the cost-sharing provision. When the cost-sharing provision of the contract was ruled inapplicable by the Federal Circuit, the "no fee" provision of the cost-sharing arrangement is logically also <u>not</u> applicable under the same rationale utilized by the Federal Circuit. Thus, Jacobs asserts it is entitled to recover fee in the

amount of $565,450. That fee was included in the $7,064,721.79 that the Energy Board concluded was the total allowable costs Jacobs was entitled to recover before cost-sharing. Jacobs' contends that since cost-sharing is no longer applicable in light of the Federal Circuit's ruling, it is entitled to recover $7,064,721.79 (or the total allowable costs determined by the Energy Board) less payments of $5,579,600 (*see* Jacobs' PFUF 4) or $1,485,121.19.

## III. CONCLUSION

For the foregoing reasons, the Court should find that the subject contract clearly and unambiguously did not contemplate application of the "cost-sharing no fee" provision in the event of termination for convenience of the Government. In the alternative, the Court should find that the contract is ambiguous and should be construed against the Government, and that Jacobs reasonably interpreted the contract to eliminate the "cost-sharing no-fee" provision in the event of termination for convenience by the Government. In making this latter finding, the Court is not requested to decide whether Jacobs' interpretation of the contract is more reasonable than the Government's interpretation. Rather, the Court must simply determine whether Jacob's interpretation of the contract language is reasonable applying rules of contract interpretation, the Federal Circuit ruling and the policy underlying termination for conveniences. In either case, the Court should grant summary judgment in favor of Jacobs.

Accordingly, for the reasons set forth herein, Jacobs Engineering Group Inc. respectfully requests that the Court:

A. Grant Plaintiff's Motion and enter judgment in favor of Plaintiff Jacobs Engineering Group Inc. and against the Government in the amount of $1,485,121.19, plus interest, in accordance with the Contract Disputes Act commencing on April 29, 2002;

B. Deny Defendant's Cross-Motion for Summary Judgment; and

C. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, NW, 12th Floor
Washington, D.C. 20036
(202) 393-7150
Counsel of Record for Plaintiff
JACOBS ENGINEERING GROUP INC.

October 25, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Opposition to Defendant's Cross-Motion for Summary Judgment was served this 25TH day of October 2006, via electronic mail and by the Court's system, to the following:

James W. Poirier
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530

Robert J. Symon