NO. 02-1500C

(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

---

JACOBS ENGINEERING GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 616-0856
Fax: (202) 514-7969

November 21, 2006

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGES**

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT .................. 1

SUMMARY OF THE REPLY ........................................... 2

I. The Claim For Fee Is Barred By The Mandate Of The Court Of Appeals .................. 3

A. The Mandate Rule Is Binding ................ 6

B. The Fee Claim Lies Within The Scope Of Initial Judgment ...... 8

II. Jacobs's Claim For Fee Is Inconsistent With The Contract ..................... 11

A. Jacobs Has Not Identified Any Fee Provision ........................ 14

B. Jacobs Has No Valid Claim For Reformation .................... 18

III. The Board Decision Does Not Entitle Jacobs To Fee .................... 22

A. Jacobs Has Failed To Demonstrate The Jurisdiction Of The Board Over Its Complaint .......... 23

B. The Board Decision Contains No Relevant Finding ............. 27

CONCLUSION ............................................... 30

## TABLE OF AUTHORITIES

**CASES:** **PAGES**

Ace Construction Co. v. United States,
401 F.2d 816 (Ct. Cl. 1968) .............................. 6

Bockoven v. Marsh,
727 F.2d 1558 (Fed. Cir. 1984) ........................... 5

Case, Inc. v. United States,
88 F.3d 1004 (Fed. Cir. 1996) ........................... 24

Ex Parte Charles F. Sibbald v. United States,
37 U.S. 488 (1838) .................................. 5, 7

Chicot County Drainage Dist. v. Baxter State Bank,
308 U.S. 371 (1940) .................................... 25

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004) ...................... 23, 24

D.L. Braughler Company v. West,
127 F.3d 1476 (Fed. Cir. 1997) .......................... 25

Doe v. United States,
463 F.3d 1314 (Fed. Cir. 2006) ...................... passim

Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982) .................................... 25

International Air Response v. United States,
302 F.3d 1363 (Fed. Cir. 2002) .......................... 25

J.M.T. Machine Co., Inc. v. United States,
826 F.2d 1042 (Fed. Cir. 1987) ....................... 5, 6

Jacobs Engineering Group, Inc. v. United States,
65 Fed. Cl. 451 (2005) .................................. 8

Jacobs Engineering Group, Inc. v. United States,
434 F.3d 1378 (Fed. Cir. 2006) ....................... 6, 20

J.M.T. Machine Co., Inc. v. United States,
826 F.2d 1042 (Fed. Cir. 1987) ....................... 5, 6

Montana v. United States,
440 U.S. 147 (1979) ................................ passim

Sharman Company v. United States,
2 F.3d 1564 (Fed. Cir. 1993), rev'd on other grounds sub nom. Reflectone,Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) ....................... 24, 25

Sprague v. Taconic National Bank,
307 U.S. 161 (1939) ................................ passim

Tronzo v. Bioment, Inc.,
236 F.3d 1342 (Fed. Cir. 2001) ....................... 4, 5

United States v. Bell,
5 F.3d 64 (4th Cir. 1993) ............................ 4, 5

**STATUTES:**

41 U.S.C. § 611 ....................................... 1, 30

**REGULATIONS:**

48 C.F.R. § 15.901 ...................................... 14

48 C.F.R. Part 31 ....................................... 14

48 C.F.R. § 31.201-1 .................................... 14

48 C.F.R. § 52.216(a) ................................... 12

48 C.F.R. § 52.249-6(g)(4) .............................. 11

**INDEX TO THE SECOND SUPPLEMENTAL APPENDIX**

**PAGE**

Page 18 of the initial brief filed by Jacobs in the United States Court of Appeals for the Federal Circuit, dated April 15, 2005 .................................. 443

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-1500C |
| THE UNITED STATES, | ) | (Judge George W. Miller) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully requests that the Court grant our cross-motion for summary judgment, that judgment be entered in favor of Jacobs Engineering Group, Inc. ("Jacobs") against the United States in the amount of $919,672 (plus interest pursuant to 41 U.S.C. § 611, from April 29, 2002, until the date of payment), and that the complaint be dismissed with prejudice.

We further request that the judgment state that payment of the judgment will satisfy the judgment, if any, of the Energy Board of Contract Appeals ("board"), EBCA No. C-0510396, dated January 31, 2006 (copy set forth at A281-83[1]) ("Board Decision"). In its response to our cross motion, Jacobs has admitted that

[1] "A" refers to the appendix filed on July 14, 2006 with Jacobs Mot.

payment of $919,672, plus interest, would satisfy the judgment entered by the board. Jacobs Response, at 8 n.9.[2]

SUMMARY OF THE REPLY

In its response, Jacobs again contends that it is entitled to a payment of $565,450, plus interest, for fee. (This claim for fee is in addition to the claim for allowable costs incurred during contract performance, in the amount of $919,672, plus interest, that has been admitted by the United States.) The claim for fee lacks merit.

First, the claim for fee is barred by the mandate rule. The denial of the claim was within the scope of the initial judgment entered by this Court. Accordingly, the denial of the claim for fee was incorporated into the mandate of the court of appeals, and Jacobs may not seek to further prosecute the claim for fee upon remand from the court of appeals.

Second, even assuming for the sake of argument that the mandate rule does not bar the fee claim, the fee claim should be denied because no provision of the contract authorizes or requires any payment for fee. Moreover, Jacobs's arguments for reformation of the contract lack merit.

---

[2] "Jacobs Response" refers to "Plaintiff Jacobs Engineering Group, Inc.' opposition to defendant's cross-motion for summary judgment," filed by Jacobs on October 25, 2006.

Third, there is no basis for the application of the doctrine of collateral estoppel in this case. The board lacked jurisdiction to consider Jacobs's complaint, and so no collateral estoppel may be applied to any finding of the board. Furthermore, the board made no relevant finding.

The board made a calculation of costs to be reimbursed pursuant to the cost-sharing provision. This calculation included foregone fee in a preliminary calculation before imposing a twenty percent deduction for the Jacobs cost share.

The board was not asked to consider any claim for fee, and it did not do so. Even assuming for the sake of argument that collateral estoppel could be applied to the board's decision, there is no finding by the board that would entitle Jacobs to a payment for fee.

I. The Claim For Fee Is Barred By The Mandate Of The Court Of Appeals

As we demonstrated in our cross-motion, Govt SJM at 15-16,[3] the mandate rule makes final not only issues decided by the court of appeals, but also: (1) issues previously decided by the trial court which were not appealed, and (2) issues that could have been raised during earlier trial court proceedings:

---

[3] "Govt SJM" refers to "Defendant's cross-motion for summary judgment," filed on October 2, 2006.

> we consider whether the amount of punitive damages was an issue within the scope of the initial judgment of the district court. If so, it was necessarily incorporated within the scope of our mandate in Tronzo I and foreclosed from further review on remand

Tronzo v. Bioment, Inc. 236 F.3d 1342, 1348 (Fed. Cir. 2001) (emphasis added); accord Sprague v. Taconic National Bank, 307 U.S. 161, 168 (1939) (claim must be entirely separate and distinct from the claims litigated in the trial court for the claim to fall outside the mandate of the court of appeals); Doe v. United States, 463 F.3d 1314, 1327 (Fed. Cir. 2006) (holiday pay claim within scope of previous mandate; new legal theory to support holiday pay claim may not be considered upon remand); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court") (emphasis added).

The fee claim now before the Court presents the easy case. This Court expressly denied the fee claim in the Court's earlier decision. The fee claim was within the scope of the initial judgment.

The Court's previous ruling denying the fee claim was incorporated into the mandate of the court of appeals. Thus,

Jacobs is barred from presenting its fee claim during these remand proceedings. Sprague v. Taconic National Bank, 307 U.S. at 168; Doe v. United States, 463 F.3d at 1327; Tronzo v. Bioment, Inc. 236 F.3d at 1348.

The mandate rule is deeply embedded in the common law. The mandate rule is founded upon the respective authority of various courts. Ex Parte Charles F. Sibbald v. United States, 37 U.S. 488, 492 (1838).

The mandate rule is often described in terms of waivers, but it is not a waiver doctrine. Id. Thus, no waiver need be demonstrated to establish the legal effect of the mandate rule. Nonetheless, to the extent that it may aid the Court, we note that Jacobs has waived the fee issue that it now seeks to present to the Court – on two occasions.

First, Jacobs waived its "new" legal theory for why fee should be paid in connection with the termination for convenience, see Jacobs Response at 6 (purporting to show how its present legal theory differs from its earlier theory), by failing to present the "new" arguments to this Court prior to this Court's earlier decision. Bockoven v. Marsh, 727 F.2d 1558, 1566 (Fed. Cir. 1984) (issues not raised to the trial court are waived); accord United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993); J.M.T. Machine Co., Inc. v. United States, 826 F.2d 1042,

1048-49 (Fed. Cir. 1987); Ace Construction Co. v. United States, 401 F.2d 816, 823 (Ct. Cl. 1968).

Second, Jacobs waived the new arguments – along with its old arguments – when Jacobs expressly abandoned all claims for fee in its brief to the court of appeals:

> Jacobs is not appealing the CFC decision on fee.

SSA443 (emphasis added).[4] Thus, fee was not at issue before the court of appeals.[5]

A. The Mandate Rule Is Binding

In our initial motion, we demonstrated that the Jacobs claim for fee was barred by the mandate rule. Govt SJM at 15-16.

In its response, Jacobs barely acknowledges that the mandate rule is an issue in the case.[6] In an enigmatic aside, Jacobs characterizes the mandate rule as a "strained technical defense;"

---

[4] "SSA" means the second supplemental appendix filed with this reply brief.

[5] In the wake of this waiver by Jacobs, the court of appeals accepted the contract interpretation of the trial court without comment. Jacobs Engineering Group, Inc. v. United States, 434 F.3d 1378, 1379 (Fed. Cir. 2006) ("No fee was payable to the contractor").

[6] The mandate rule is ignored in the section headings. See Jacobs Response at 3-7 (seeking contract reformation); id. at 8-12 (seeking to establish collateral estoppel based upon the board decision).

ignores the legal authority that we cited; and offers no legal authority to support its position. Jacobs Response, at 6.

The mandate rule is not an insignificant "technical defense." The mandate rule is, and has always been, a fundamental feature of our legal system:

> When the Supreme Court have executed their power in a cause before them, and their final decree or judgment requires some further act to be done, it cannot issue an execution, but shall send a special mandate to the court below to award it. 24 sect. Judiciary Act (1 U.S. Stat. 85.) Laws, 61. Whatever was before the Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose other than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it further than to settle so much as has been remanded. [Citations omitted.] After a mandate, no rehearing will be granted. It is never done in the House of Lords; [citations omitted] and on a subsequent appeal, nothing is brought up, but the proceedings subsequent to the mandate.

Ex Parte Charles F. Sibbald v. United States, 37 U.S. 488, 492 (1838) (emphasis and brackets added); accord Sprague v. Taconic National Bank, 307 U.S. at 168 ("The general proposition which moved that [district] Court – that it was bound to carry the mandate of the upper court into execution and cound not consider

the questions which the mandate laid to rest – is indisputable.”) (bracket added).

B. The Fee Claim Lies Within The Scope Of Initial Judgment

Jacobs implies that the mandate rule does not apply here because its current claim for fee allegedly lies outside the scope of the initial judgment:

> the Government relies upon this Court’s previous ruling that Jacobs was not entitled to fee . . .
>
> In its prior ruling, this Court did not decide whether fee was recoverable if cost-sharing was not enforceable.
>
> . . . this Court must decide anew whether the contract permits the recovery of fee in the absence of cost-sharing.

Jacobs Response, at 6 (emphasis in the original). Jacobs is mistaken. Its claim for fee falls squarely within the earlier judgment. Indeed, the earlier judgment expressly denied the claim for fee. Jacobs Engineering Group, Inc. v. United States, 65 Fed. Cl. 451, 459 (2005).

A claim will be considered outside the scope of the initial judgment only if the claim has an entirely different nature from the claims decided. For example, a claim for certain litigation costs has been held to lie outside the mandate where the trial court previously considered only the merits of the underlying claims:

> The general proposition which moved that [district] Court – that it was bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate laid to rest – is indisputable. [Citations omitted.] But that leaves us still to consider whether the immediate issue now in controversy was disposed of in the main litigation and therefore foreclosed by the mandate. While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues. [Citations omitted.] Certainly the claim for "as between solicitor and client" costs was not directly in issue in the original proceedings by Sprague. It was neither before the Circuit Court of appeals nor before this Court. Its disposition, therefore, by the mandate of either Court could be implied only if a claim for such costs was necessarily implied in the claim in the original suit, and its failure to ask for such costs an implied waiver. These implications are repelled by the basis on which such costs are granted. They are not of a routine character like ordinary taxable costs; they are contingent upon the exigencies of equitable litigation . . . [the determination is] a collateral one, having a distinct and independent character. We, therefore, hold that the issue in the instant case is sufficiently different from that presented by the ordinary questions regarding taxable costs that it was impliedly covered neither by the original decree nor by the mandates, and that neither constituted a bar to the disposal of the petition below on the merits.

Sprague v. Taconic National Bank, 307 U.S. at 168 (emphasis and brackets added).

In contrast to the Sprague case, the current claim for fee was at issue in the original proceeding. Furthermore, the current claim for fee is in no way "collateral" to the claims asserted in the original proceeding. Thus, the current claim for fee is foreclosed by the mandate of the court of appeals. Id.

Jacobs contends that it may again assert its claim for fee because Jacobs now seeks to support this claim with a new legal theory. Jacobs Response, at 6. This contention lacks merit. Jacobs's contention is inconsistent with the test for collateral matters set forth in Sprague. Sprague v. Taconic National Bank, 307 U.S. at 168 ("having a distinct and independent character"). Furthermore, binding precedent expressly forecloses the resurrection of claims simply because a new legal theory is advanced. Doe v. United States, 463 F.3d at 1327 (holiday pay claim within scope of previous mandate; new legal theory to support holiday pay claim may not be considered upon remand).

In summary, the claim for fee was considered and decided in the earlier proceeding. Jacobs did not challenge the prior holding upon appeal. The prior denial of fee was incorporated into the mandate of the court of appeals, as a matter of law. Thus, the mandate rule bars further consideration of the claim for fee.

II. <u>Jacobs's Claim For Fee Is Inconsistent With The Contract</u>

Assuming for the sake of argument that Jacobs's claim for fee is not barred by the mandate rule, the Court should nonetheless deny Jacobs's claim for fee because no fee is payable pursuant to the contract.

As we demonstrated in our initial motion, the termination for convenience clause requires the United States to pay fee when the contract is terminated for convenience <u>if certain conditions are met</u>. Govt SJM, at 16-17. The clause provides for the payment of fee <u>only</u> to the extent that fee is expressly payable for contract performance:

> (4) A <u>portion</u> of the <u>fee payable under the contract</u>, determined as follows:
>
> (i) if the contract is terminated for the convenience of the Government, the settlement shall include a <u>percentage of the fee</u> equal to the percentage of completion of the work contemplated under the contract, but excluding subcontract effort included in subcontractors' termination proposals, less previous payments for fee.

A98 (48 C.F.R. § 52.249-6(g)(4)) (emphasis added).

In this case, there was no "fee payable under the contract." Thus, there is no basis for applying any percentage. There is no sum against which the percentage may be applied.

In its response, Jacobs seeks to obscure the fact that the contract does not contain any fee provision in two ways.

First, Jacobs alleges that the sole legal issue in dispute is whether the contract provision stating that there will be no fee payable is enforceable. In short, Jacobs seeks to evade its burden of demonstrating that some contract provision affirmatively provides for some rate of payment for fee.

Jacobs's claim for fee pursuant to section 52.249-6(g)(4) fails because there is no contract provision expressly authorizing or requiring the payment of fee. There is no sum against which the percentage – described in section 52.249-6(g)(4)(i) – may be applied. See also A99 (section 52.249-6(m) ("The provisions of this clause relating to fee are inapplicable if this contract does not include a fee.").

Our contract interpretation is strengthened by the separate provision stating that no fee will be paid for performance of the contract:

> The Government shall not pay to the Contractor a fee for performance of this contract.

A121 (48 C.F.R. § 52.216(a)) (emphasis added). However, our contract interpretation does not depend upon section 52.216(a).

Section 52.249-6(g)(4) authorizes a fee payment only if the contractor can demonstrate the necessary condition: some affirmative right to fee for contract performance. Jacobs has not – and can not – identify any such contract provision.

Therefore, section 52.249-6(g)(4) provides no right to a fee payment in this case.

Second, Jacobs pretends that the parties agree upon the proper calculation of the amount of fee. There is no such agreement.

We agree only that $565,450 is the amount of fee that Jacobs has claimed in its summary judgment motion.

The amount claimed by Jacobs in its summary judgment motion can be determined. See Govt PFUF 2. However, we do not agree that the contract provides any basis for this claimed amount.

To the contrary, we have repeatedly emphasized that there is no contract provision authorizing or requiring the payment of fee. Thus, there is no basis for any calculation of any amount of fee.

In its response, Jacobs has tacitly admitted that there is no contract provision authorizing or requiring the payment of fee. In its response, Jacobs adopts the "foregone fee" calculation (pursuant to the cost-sharing provision) as the basis for its calculation of fee.

It is ironic that Jacobs now seeks to read the cost-sharing provision together with the termination for convenience clause in order to provide some basis for a fee calculation because the central contention in its previous appeal was that the cost-

sharing provision should not be read together with the termination for convenience clause.

In any event, even assuming for the sake of argument that the two provisions should be read together, the plain meaning of these two provisions does not help Jacobs.

Foregone fee and fee are not the same thing.

Fee is a payment obligation distinct from cost. 48 C.F.R. § 15.901 (distinguishing "profit or fee" from cost); see 48 C.F.R. § 31.201-1 (describing cost generally); see generally 48 C.F.R. Part 31 (cost principles).

In contrast, "foregone fee" is not a payment obligation at all. Instead, it is merely a part of the formula for calculating what portion of the costs of performance incurred by Jacobs would be reimbursed pursuant to the cost-sharing provision. A3.

The cost-sharing provision relates to the payment of certain costs; it does not describe any obligation to pay fee. (To the contrary, it contains cross references to "no fee" provisions. A3.) Thus, the cost-sharing provision does not establish the necessary foundation for the percentage calculation set forth in section 52.249-6(g)(4).

A. Jacobs Has Not Identified Any Fee Provision

In our cross-motion, we demonstrated that Jacobs had failed to identify any contract clause authorizing or requiring the

payment for fee. Govt SJM, at 16-17. In its response, Jacobs ignores this important issue, and seeks to focus the Court solely upon the contract provision stating that no fee will be paid:

> FAR 52.249-6(g)(4) of the contract permits the recovery of fee in the event of a termination for convenience.
>
> . . . FAR 52.216-12(a) states that "[t]he Government shall not pay to the Contractor a fee for performing this contract". The Government relies <u>exclusively</u> upon this language to argue Jacobs is not entitled to fee.

Jacobs Response, at 4 (emphasis added). Jacobs is mistaken.

In our cross-motion, we demonstrated that fee was payable pursuant to a termination for convenience <u>only</u> if Jacobs could identify some contract language providing for the payment of fee:

> the termination for convenience clause contains express provisions describing when, and to what extent, fee will be paid (in the event of a termination for convenience), and these provisions make it even more clear that Jacobs is <u>not entitled to fee</u>. Pursuant to subsections (g)(4)(5) of the termination for convenience clause, the contractor may be reimbursed a <u>"portion" of the fee "payable under the contract."</u> A98.

Govt SJM, at 16-17. In its response, Jacobs ignores this contention, and so fails to address its own burden to demonstrate contract language giving rise to some obligation to pay fee.

In its response, Jacobs focuses solely upon its interpretation of section 52.216(a), the provision barring the payment of fee:

> The Government shall not pay to the Contractor a fee for performance of this contract.

A121 (emphasis added). Thus, Jacobs assumes that the United States is required to prove that section 52.216(a) bars the payment of fee to Jacobs:

> The Government relies exclusively upon this language [section 52.216(a)] to argue Jacobs is not entitled to fee. Conveniently ignored by the Government in making this argument is the title of the clause, as well as subparagraph "B" of the clause, which states "[A]fter paying 80 percent of Government's share . . . " Logically, this language dictates application of FAR 52.216-12(a) only when the separate cost-sharing provision of the contract at B.0007(S) also is operative. This is the only reasonable interpretation . . . .

Jacobs Response, at 4-5 (emphasis and brackets added);

> if the contract does not preclude fee in the event of a termination for convenience [i.e., if the Court accepts the argument that section 52.216-12(a) should be deleted from the contract upon such termination], then Jacobs is entitled to recover fee under FAR 52.249-6(g)(4) . . .
>
> The amount of fee payable under the contract is $565,450 as agreed to by the parties. (See Jacobs' PFUF 6).

Jacobs Response, at 7 (emphasis and brackets added).

Jacobs is mistaken. First, for a variety of reasons, it is not reasonable to conclude that section 52.216-12(a) should be deleted from the contract in the event of a termination for convenience. See Govt SJM, at 18-26. Second, and more importantly, Jacobs's allegation that it has established entitlement to a fee payment pursuant to section 52.249-6(g)(4) simply by demonstrating that "the contract does not preclude fee" lacks merit.

To establish entitlement to a portion of the fee payable under the contract – pursuant to section 52.249-6(g)(4) – Jacobs must demonstrate that some fee was payable. Jacobs has not done so.

The missing contractual authority for any fee payment is highlighted by the lack of any foundation for Jacobs's payment calculation ($565,450).

Jacobs repeatedly alleges that the parties have "agreed" to the amount ($565,450). E.g., Jacobs Response at 2 ("fee (which the parties agree amounts to $565,450)"); Jacobs Response at 7 ("The amount of fee payable under the contract is $565,450 as agreed to by the parties. (See Jacobs' PFUF 6)."). Jacobs relies upon this alleged agreement because Jacobs cannot otherwise support its calculation of the fee amount; no contract clause sets forth any formula for calculating fee.

In any event, Jacobs's allegation that there has been an agreement about the amount of fee is baseless.

The United States has agreed only that Jacobs has claimed $565,450 for fee in its recent summary judgment motion:

> The sum of fee for Jacobs and fee for its subcontractors included in the total claim identified by Jacobs ($7,064,722) in its motion for summary judgment, dated July 14, 2006, equals $565,450.

Govt. PFUF 2 (emphasis added).

We have never agreed that any provision of the contract provides authority for the payment of $565,450 for fee. Indeed, we have consistently contended that no contract provision authorizes or requires the payment of any amount for fee. E.g., Govt SJM, at 17 ("Any portion of zero fee is zero fee; thus, no fee is payable pursuant to subsections (g)(4)(5)"); Govt SJM, at 24 ("fee cannot be calculated without assuming some standard of entitlement").

No contract clause authorizes or requires any payment of fee. Thus, Jacobs has failed to demonstrate any entitlement to fee pursuant to section 52.249-6(g)(4).

B. Jacobs Has No Valid Claim For Reformation

In its response, Jacobs contends that the decision of the court of appeals and vague policy considerations are proper bases

for reforming the contract to include a new obligation to pay fee:

> The Federal Circuit reversed this Court's earlier decision that the cost-sharing provision survived the termination for convenience by the Government.
>
> . . . application of FAR 52.216-12(a) only when the separate cost-sharing provision of the contract at B.0007(S) also is operative. Given that "cost-sharing" is no longer applicable after the Federal Circuit's ruling, it logically follows that the associated "cost-sharing no fee" provision of FAR 52.216-12 is not applicable.
>
> Although the Federal Circuit did not expressly interpret FAR 52.216-12, it did emphasize the underlying policy that "a contractor is not supposed to suffer as a result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate." [Citation omitted.]
>
> . . . Working at cost for the Government for no benefit is not fair to the contractor when the Government elects to terminate a contract for convenience.
>
> . . . The Government's interpretation also penalizes the contractor which conflicts with the fundamental policy underlying a termination for convenience to make the Contractor whole.

Jacobs Response, at 5-6 (emphasis added). These contentions lack merit.

First, the implication that the court of appeals reformed the contract as a consequence of the termination for convenience

is mistaken. The court of appeals did not rule that the cost-sharing provision had not "survived the termination" or that the clause had become "inoperative." See Govt SJM, at 19-20. Nor did the court of appeals make any ruling that terminations for convenience were cataclysmic events justifying reformation of the contract to reflect policy considerations.

Instead, the court of appeals merely interpreted the meaning of the phrase "all costs reimbursable under the contract" within the termination for convenience clause itself. In other words, the court applied the terms of the contract as written:

> We conclude, however, that the term "all costs reimbursable" defines the type or kind of costs for which the contract provides reimbursement and not the amount of such costs.
>
> . . . The termination clause's reference to "all costs reimbursable" appears designed to incorporate the contract's division between reimbursable and non-reimbursable costs."

Jacobs Engineering Group, Inc. v. United States, 434 F.3d at 1380-81 (emphasis added).

The court of appeals did not need to delete any language from the contract to reach its conclusion, and the court of appeals did not do so. See Govt SJM, at 19-20.

Second, policy considerations are not a sufficient basis for reformation. See Govt SJM, at 24-26.

Indeed, it appears that Jacobs concedes that there is no adequate basis for reformation in this case:

> Jacobs does not seek "reformation"

Jacobs Response, at 7.

While Jacobs denies that it seeks reformation, nonetheless, reformation is the remedy it seeks. Jacobs seeks to have this Court create a payment obligation that does not exist in the written contract.

In its response, Jacobs claims to rely upon contract interpretation to support its claim for fee, and claims that its contract interpretation is consistent with a "policy" of always paying fee in the wake of a termination for convenience. Jacobs Response, at 5-7. However, this assertion is belied by the plain meaning of the termination for convenience clause itself. The termination for convenience clause expressly contemplates that there will be times when a contract is terminated and <u>no fee will be paid</u>:

> (4) A portion of the <u>fee payable under the contract</u>, determined as follows:
>
> (i) If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract, but excluding subcontract effort included in subcontractors' termination proposals, less previous payments for fee.

> (ii) If the contract is terminated for default . . .
>
> (5) If the settlement includes only fee, it will be determined under paragraph (g)(4) above.

A98 (emphasis added);

> (m) The provisions of this clause relating to fee are <u>inapplicable if this contract does not include a fee</u>.

A99 (emphasis added).

The contract language is plain. Subsection (m) is a part of the termination for convenience clause. Subsection (m) says that there will be no payment of fee pursuant to the termination for convenience if there was no obligation to pay fee included in the contract.

Jacobs seeks to have the contract reformed to delete subsection (m), and to insert an obligation to pay fee, in the event of a termination for convenience. This request for reformation has no support in the law. <u>See</u> Govt SJM, at 18-25.

III. <u>The Board Decision Does Not Entitle Jacobs To Fee</u>

In our cross-motion, we identified two fundamental flaws in the collateral estoppel argument advanced by Jacobs in its motion for summary judgment:

> First, the Board Decision is void because there was never any jurisdiction for the board to consider the complaint filed by Jacobs.

> Second, there is no basis for applying collateral estoppel to the Board Decision because the board never addressed the issue in dispute before this Court.

Govt SJM, at 31.

In its response, Jacobs has failed to address either flaw in any meaningful way.

A. Jacobs Has Failed To Demonstrate The Jurisdiction Of The Board Over Its Complaint

As we demonstrated in our cross-motion, collateral estoppel may not be applied unless the tribunal that issued the earlier decision possessed jurisdiction to consider and decide the relevant issue. Montana v. United States, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (emphasis added); see Govt SJM, at 34-39.[7]

---

[7] In its response, Jacobs seems to challenge the necessity to prove jurisdiction before applying the doctrine of collateral estoppel:

> one Court can "adopt" the fact finding and legal determinations of another Court (or Board) even if the first Court lacked jurisdiction. See Christopher Village, L.P. v. United States, 360 F.3d 1319 (Fed. Cir. 2004).

In its response, Jacobs does not seek to establish the board's jurisdiction. Specifically, Jacobs does not dispute that its second claim (submitted in August 2005) was merely a claim for a portion of an earlier claim (submitted in April 2002). See Govt SJM, at 34-38.

Thus, as a matter of law, the second claim was the "same claim" as the one earlier submitted and appealed to this Court. Case, Inc. v. United States, 88 F.3d 1004, 1010-11 (Fed. Cir. 1996) (a claim is the same if it involves not only the same underlying facts, but also seeks the same damages). Accordingly, the contracting officer had no authority to issue any final decision with regard to the August 2005 claim. Id., at 1009.

Because there could be no final decision regarding this second submission, there could be no jurisdiction to consider the second submission at either the board or at this Court. Sharman Company v. United States, 2 F.3d 1564, 1571-72 (Fed. Cir. 1993), rev'd on other grounds sub nom. Reflectone, Inc. v. Dalton, 60

---

Jacobs Response, at 9. Jacobs is mistaken.

First, the Montana decision is binding precedent. Second, Jacobs has misconstrued the holding of Christopher Village. Contrary to the suggestion of Jacobs, Christopher Village specifically requires that jurisdiction be demonstrated before collateral estoppel may be applied. Christopher Village, L.P. v. United States, 360 F.3d at 1333 (trial court "erred in ascribing collateral estoppel effect to the contract issues decided by the Fifth Circuit" where the Fifth Circuit lacked jurisdiction).

F.3d 1572 (Fed. Cir. 1995); see D.L. Braughler Company v. West, 127 F.3d 1476, 1480-81 (Fed. Cir. 1997).

We demonstrated the lack of board jurisdiction in more detail in our cross-motion, Govt SJM, at 34-39, but Jacobs failed to address any of the facts or law demonstrated in our cross-motion. Thus, Jacobs has waived any objection to our statements of fact and law.

Rather than address the relevant issue, Jacobs merely contends that the United States may not raise the jurisdictional issue at this time. Jacobs Response, at 9 ("At this point, any jurisdictional defense has been waived"). Jacobs is mistaken.

The cases cited by Jacobs are inapposite. See Jacobs Response at 9; Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377 (1940); International Air Response v. United States, 302 F.3d 1363, 1369 (Fed. Cir. 2002). The cases cited by Jacobs merely hold that a party may not make a collateral attack upon a judgment upon the grounds that the tribunal issuing the judgment lacked jurisdiction.

Our position in this case does not conflict with the holdings of the cases cited by Jacobs. We do not seek to attack the judgment of the board. To the contrary, we have admitted

liability in an amount exceeding the amount awarded by the board, and our payment will fully satisfy the judgment of the board. In its response, Jacobs has admitted the board judgment will be satisfied:

> Jacobs acknowledges that a judgment rendered by this Court for $919,627, plus interest accruing from April 29, 2002, will satisfy the judgment issued by the Energy Board of Contract Appeals in EBCA No. C-0510396 in the amount of $72,176.83.

Jacobs Response, at 8 n.9 (emphasis added).

The three cases cited by Jacobs do not address the issue before this Court: whether collateral estoppel may be applied to give binding effect to earlier findings by a tribunal that had never possessed subject matter jurisdiction. The case cited in our cross-motion does address the material issue. Montana v. United States, 440 U.S. at 153 (collateral estoppel shall not be applied unless the tribunal making the earlier finding possessed jurisdiction).

Jacobs has failed to dispute, distinguish or otherwise mention the Montana decision. Thus, the relevant law is undisputed.

As a matter of law, this Court may not apply collateral estoppel to the findings of the board.

B. The Board Decision Contains No Relevant Finding

Even assuming for the sake of argument that the board possessed jurisdiction, and that the application of collateral estoppel were permissible in this case, the board decision contains no relevant finding. Accordingly, the board decision provides no basis for finding that Jacobs is entitled to be paid fee. See Govt SJM, at 39-44.

In its response, Jacobs makes an ambiguous argument regarding what board finding it seeks to apply to this case. Jacobs Response, at 10-12 (section titled "The Energy Board's Decision Addressed Fee as an Allowable Cost"). From the title, it would appear that Jacobs has conceded that the board made no finding regarding entitlement to fee. Furthermore, in the argument itself, Jacobs appears to concede that the board finding relates only to a calculation of "foregone fee" for the purpose of applying the cost-sharing provision:

> Implicit in the Energy Board's decision is that fee was considered an element of the total allowable cost – albeit at that point the correct nomenclature would be "foregone fee."

Jacobs Response, at 11 (emphasis added).

In any event, as we demonstrated in our cross-motion, it is beyond any reasonable dispute that the board adopted the contracting officer's finding regarding the amount of foregone

fee solely for the purpose of calculating the amount owed pursuant to the cost-sharing provision. Govt SJM, at 39-44. The board may no finding regarding fee. In other words, the board made no finding relevant to this proceeding.

In its response, Jacobs denies that it has confused foregone fee with fee:

> Jacobs does not equate "foregone fee" with "fee" as suggested by the Defendant.

Jacobs Response, at 11. However, Jacobs is mistaken. Indeed, the attempt to confuse "foregone fee" with "fee" constitutes Jacobs's entire legal argument.

In its response, Jacobs describes a vague alchemy by which "foregone fee" (not a payment obligation – but a mere element in a formula to calculate what portion of allowable costs incurred would be reimbursed) is transformed into "fee" (a payment obligation that is different in kind from cost):

> foregone fee and fee are the same in terms of percentage mark-up on allowable costs [no legal citation], the difference is in application. Under a cost-sharing contract, fee is not a recoverable cost. However, pursuant to DOE regulations [no legal citation], Jacobs was permitted to mark-up its costs with fee [foregone fee, pursuant to the contract] and recoup 80% of the product of that amount [incorrect description of the cost-sharing provision]. In that circumstance (i.e., in a cost-sharing situation), the recovery of that fee is referred to as "foregone" fee, which is

> consistent with how the parties contemporaneously interpreted the cost-sharing provision. When the cost-sharing provision of the contract was ruled inapplicable by the Federal Circuit, the "no fee" provision of the cost-sharing arrangement is logically also not applicable under the same rationale utilized by the Federal Circuit [Jacobs misunderstanding of the decision of the court of appeals, discussed earlier in this brief]. Thus, Jacobs asserts it is entitled to recover fee in the amount of $565,450 [no cited contract provision, regulation, or other legal authority}.

Jacobs Response, at 11-12 (brackets added). As noted in the brackets, Jacobs cites no legal authority to support its alchemy theory.

At best, Jacobs's alchemy theory is simply another attempt to reform the contract. The alchemy theory is inconsistent with the plain meaning of the contract provisions describing foregone fee and prohibiting the payment of fee, and the alchemy theory otherwise has no basis in law.

Moreover, the board never made any finding in support of the alchemy theory. Instead, the board simply adopted the contracting officer's calculation of foregone fee in the course of calculating an amount due pursuant to the cost-sharing provision. Govt SJM, at 39-44.

Jacobs has failed to cite any relevant finding of the board that would support its claim for fee. Thus, even if the Court

were to find that collateral estoppel might be applied to the findings of the board, there is no board finding that could entitle Jacobs to payment for fee.

CONCLUSION

For the reasons stated above, we respectfully request that the Court grant judgment in favor of Jacobs, and against the United States, in the amount of $919,672, plus interest pursuant to 41 U.S.C. § 611, from April 29, 2002, until the date of payment. We further request that the judgment state that payment of the judgment will satisfy the judgment, if any, of the Energy Board of Contract Appeals, EBCA No. C-0510396, dated January 31, 2006. Finally, we request that the Court deny all other requests for relief and enter final judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

S/ David M. Cohen
DAVID M. COHEN
Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W.
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

November 21, 2006 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on November 21, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier