# In the United States Court of Federal Claims

No. 02-1500 C
Filed March 26, 2007
TO BE PUBLISHED

| | |
|---|---|
| JACOBS ENGINEERING GROUP, INC., Plaintiff, v. THE UNITED STATES, Defendant. | Motion for summary judgment, cost-sharing, termination for convenience, mandate rule, contract interpretation, plain language, fee, foregone fee, Contract Disputes Act, effect of decision of Department of Energy Board of Contract Appeals, burden of proof |

Robert J. Symon, Bradley Arant Rose & White LLP, Washington, D.C., for plaintiff.

James W. Poirier, Trial Attorney, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on the parties' cross-motions for summary judgment relating to damages. Plaintiff Jacobs Engineering Group, Inc. filed its motion for summary judgment ("Pl.'s Mot.," docket entry 65) on July 14, 2006. Defendant filed an opposition to plaintiff's motion and a cross-motion for summary judgment ("Def.'s Cross-Mot.," docket entry 75) on October 2, 2006. Plaintiff filed an opposition to defendant's cross-motion for summary judgment and a reply in support of its motion ("Pl.'s Opp'n," docket entry 80) on October 25, 2006. Defendant filed a reply in support of its cross-motion ("Def.'s Reply," docket entry 83) on November 21, 2006.

For the reasons set forth below, the Court grants plaintiff's motion in part and denies it in part; the Court grants defendant's cross-motion. Accordingly, the Court directs the entry of judgment for plaintiff in the amount of $919,672 plus interest pursuant to the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* (2000) ("CDA"), from April 29, 2002, until paid.

## BACKGROUND

### I. Facts[1]

On September 30, 1992, the United States Department of Energy ("DOE") awarded Contract No. DE-AC21-92MC-28202 ("Contract") to CRS Cirrine Engineers, Inc. ("CRS") to develop, design, fabricate, and construct a coal gasification facility in Morgantown, West Virginia. *Jacobs Eng'g Group, Inc. v. United States*, 63 Fed. Cl. 451, 454 (2005) ("*Jacobs I*"). In August 1994, plaintiff purchased CRS and all of CRS's rights and obligations under various contracts, including the Contract. Pl.'s PFUF 1.

The Contract provided that the Government and plaintiff would share the costs associated with plaintiff's performance. The Cost-Sharing Arrangement clause of the Contract provided that the Government would bear 80 percent of the cost of the work to be accomplished, and plaintiff would bear the other 20 percent:

> B. Cost Sharing. The Contractor and the Government agree to share the cost of the effort for Phase I and Phase II as follows:
>
> | | Government (80%) | Contractor (20%) | Total (100%) |
> |---|---|---|---|
> | Phase I | $19,850,784 | $4,962,696 | $24,813,480 |
> | Phase II | $3,149,515 | $787,379 | $3,936,894 |
> | Total | $23,000,299 | $5,750,075* | $28,750,374 |
>
> * Includes foregone fee in the amount of $1,181,549 for Phase I and $169,531 for Phase II.

Appendix to Pl.'s Mot. ("App.") 00003. The parties calculated "foregone fee" by adding 5 percent to plaintiff's reimbursable costs. *See* Def.'s Suppl. Br. on Foregone Fee (docket entry

[1] The facts set forth in this opinion do not constitute findings of fact by the Court. Rather, they are presented to provide a basis for analysis of the parties' motions. The facts are drawn principally from this Court's opinion in *Jacobs Eng'g Group, Inc. v. United States*, 63 Fed. Cl. 451 (2005), plaintiff's proposed findings of uncontroverted fact ("Pl.'s PFUF," docket entry 66) filed July 14, 2006, and defendant's proposed findings of uncontroverted fact ("Def.'s PFUF," docket entry 77) filed October 2, 2006.

47) 1; Pl.'s Reply to Def.'s Suppl. Br. on Foregone Fee (docket entry 51) 2.[2] For billing and payment purposes, this foregone fee was added to reimbursable costs incurred by plaintiff and its subcontractors and submitted to DOE for payment; DOE paid plaintiff 80 percent of the invoiced amount. *Jacobs I*, 63 Fed. Cl. at 454.

The Contract contains a termination clause, which provides that "[t]he Government may terminate performance of work under this contract . . . if the Contracting Officer determines that a termination is in the Government's interest." *Id.* at 455 (quoting 48 C.F.R. § 52.249-6(a) (1986)). After such a termination for convenience, a contractor must submit a final settlement proposal to the Contracting Officer ("CO"), who may agree to pay all or any part of the amount proposed. *Id.* The termination clause also provides:

> (g) If the Contractor and the Contracting Officer fail to agree in whole or in part on the amount of costs and/or fee to be paid because of the termination of work, the Contracting Officer shall determine, on the basis of information available, the amount, if any, due the Contractor, and shall pay that amount, which shall include the following:
>
> (1) All costs reimbursable under this contract, not previously paid, for the performance of this contract before the effective date of the termination, and part of those costs that may continue for a reasonable time with the approval of or as directed by the Contracting Officer; however, the contractor shall discontinue these costs as rapidly as practical.
>
> . . . .
>
> (4) A portion of the fee payable under the contract, determined as follows:
>
> (i) If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract, but excluding subcontract effort included in subcontractors' termination proposals, less previous payments for fee.
>
> . . . .

[2] Foregone fee on reimbursable costs incurred in Phase II would have been calculated as an additional 4.5 percent, rather than the 5 percent used in Phase I. Phase II was never commenced, however. Transcript of Proceedings Held On May 17, 2004 ("Tr.," docket entry 49) 27:8–10. Although plaintiff and the Government agree on the manner in which foregone fee was calculated, the Contract does not provide a mathematical definition of "foregone fee." Rather, it provides a set dollar amount for Phase I and another for Phase II. *See* App. 00003.

> (m) The provisions of this clause relating to fee are inapplicable if this contract does not include a fee.

App. 00097–99. The Contract also contains a no-fee provision, which states, "The Government shall not pay to the Contractor a fee for performing this contract." *Id.* at 00121.

In August 1995, the Government terminated the Contract for convenience. Pl.'s PFUF ¶ 5. In accordance with the termination clause, plaintiff submitted a termination settlement proposal to the DOE Contract Administrator. *Jacobs I*, 63 Fed. Cl. at 455. The proposal stated that (1) plaintiff was entitled to be paid 100 percent of its reimbursable costs plus a fee in the total amount of $7,121,780, (2) plaintiff had been paid $5,579,582, and (3) plaintiff was therefore entitled to a net payment of $1,542,198. App. 00178. The parties attempted and failed to negotiate a settlement. Thus, on April 29, 2002, plaintiff submitted a certified request for final decision of the CO. Pl.'s PFUF ¶ 7. In September 2002, the CO issued a final decision which concluded that plaintiff's reimbursable costs under the Contract, including foregone fee, totaled $7,064,722. The CO calculated that the Government's 80 percent share of plaintiff's costs including foregone fee was $5,651,778. Because the DOE had already paid plaintiff $5,579,601, the CO concluded that the DOE owed plaintiff an additional $72,177. *Jacobs I*, 63 Fed. Cl. at 455.

## II. Proceedings

On November 1, 2002, plaintiff filed suit in the United States Court of Federal Claims, claiming it was owed $1,542,198 plus interest. *Jacobs I*, 63 Fed. Cl. at 455. Plaintiff moved for partial summary judgment, arguing that the Cost-Sharing Arrangement clause did not apply in the event of a termination for convenience, and plaintiff was therefore entitled to recover 100 percent of the reimbursable costs incurred in performing the contract plus "fee in accordance with the cost sharing provision and the termination for convenience clauses of the contract." App. 00175. Defendant cross-moved for summary judgment on the ground that the Contract provided for the application of cost-sharing even where the Government terminated the Contract for convenience. *Jacobs I*, 63 Fed. Cl. at 455. The Court denied plaintiff's motion for summary judgment and granted the Government's cross-motion for summary judgment, awarding plaintiff 80 percent of its costs.

Plaintiff appealed to the Court of Appeals for the Federal Circuit, which reversed this Court's decision. The Federal Circuit held that the phrase "[a]ll costs reimbursable under this contract" in the termination clause referred only to the type or kind of costs incurred, not to the amounts:

> We conclude, however, that the term "all costs reimbursable" defines the type or kind of costs for which the contract provides reimbursement and not the amount of such costs.

> . . . .
>
> Throughout the contract, when the parties intended the 80 percent–20 percent division of costs to cover particular situations, they explicitly so provided. . . .
>
> In these circumstances, it seems most unlikely that if the parties had intended the termination clause to limit the contractor to 80 percent of the termination costs, they would not have said so instead of providing that the government would pay "[a]ll costs reimbursable" under the contract. We cannot read the latter phrase covering "all" reimbursable costs to mean 80 percent of such costs. In any event, to the extent there is an ambiguity on the point, it must be resolved in favor of Jacobs, the non-drafter of the contract.

*Jacobs Eng'g Group, Inc. v. United States*, 434 F.3d 1378, 1380–81 (Fed. Cir. 2006) (*Jacobs II*); *see also* Vernon J. Edwards, *Termination of Cost-Reimbursement Contracts*, 20 NASH & CIBINIC REP. ¶ 17 (2006). The Court of Appeals remanded the case to this Court to award damages.

In addition to proceeding in this Court and the Federal Circuit, on May 9, 2005, plaintiff submitted an invoice to the DOE requesting payment of the $72,177 awarded by the CO. *Jacobs Eng'g Group, Inc.*, EBCA No. C-0510394 (Jan. 31, 2006) ("*Jacobs III*" or "BCA Decision"). The DOE refused to pay, asserting that the $72,177 was part of the claim brought before this Court and the Federal Circuit. The DOE argued that because the claim was pending before the Federal Circuit, it had no authority to pay plaintiff. *Id.* The DOE Board of Contract Appeals ("BCA") held that the $72,177 was not in dispute and should not be regarded as part of plaintiff's judicial claim. The BCA therefore granted plaintiff's motion for summary judgment and held that plaintiff was entitled to be paid that amount. *Id.*

## DISCUSSION

### I. Standard for Decision

A court may grant summary judgment if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the United States Court of Federal Claims; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it might affect the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a genuine question of material fact . . . ." *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Court must view the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *Id.* (citing *Liberty Lobby*, 477 U.S. at 255). Once the movant has met its burden, the nonmovant must "proffer countering evidence sufficient to create a genuine factual dispute" in order to avoid

summary judgment. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). The nonmovant may not rely upon its pleadings or conclusory allegations to demonstrate a factual dispute; rather, the nonmovant must set forth specific facts that establish an issue for trial, by affidavit or otherwise, such that the trier of fact could reasonably find in the nonmovant's favor. *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988).

When considering cross-motions for summary judgment, the Court may not grant summary judgment in favor of either party if disputes remain concerning material facts. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

In view of the very thorough and helpful briefs of the parties, the Court has concluded that oral argument is not necessary to further assist the Court in resolving the issues raised by the parties' motions.

## II. Analysis

Plaintiff asserts that, based on the CO's factual findings, the Government owes it $1,485,122 plus interest.[3] Pl.'s Opp'n 12. Given the decision of the Federal Circuit in *Jacobs II*, the Government concedes that plaintiff is entitled to recover 100 percent of its reimbursable costs. The parties agree that plaintiff is entitled to recover unreimbursed costs in the amount of $919,672 plus interest. However, the Government contends that, because the Contract did not provide for the payment of any fee, plaintiff is not entitled to $565,450, or any other amount, as a fee. Def.'s Cross-Mot. 1–2. Because the parties agree that plaintiff incurred and is entitled to recover $919,672 in unreimbursed costs, the Court will focus solely on the $565,450 fee claimed by plaintiff.[4]

---

[3] In its motion for summary judgment, plaintiff originally requested judgment against the Government in the amount of $1,485,422. Pl.'s Mot. 1. This $300 difference between its original claim and its current claim is not in the amount of fee claimed by plaintiff; at all times, plaintiff has claimed it is entitled to a fee of $565,450. *See, e.g.*, Pl.'s PFUF ¶ 6; plaintiff's memorandum of law in support of its motion for summary judgment ("Pl.'s Memo. of Law," docket entry 65) 2; Pl.'s Opp'n 2. Rather, the difference appears to be in the reimbursable costs plaintiff claims it incurred. The Government conceded that plaintiff had incurred $919,672 in reimbursable costs, Def.'s Cross-Mot. 1, and plaintiff subsequently appears to have adopted the Government's calculation of reimbursable costs. Pl.'s Opp'n 2 & n.3.

[4] The parties agree that plaintiff is not seeking *foregone* fee; rather, plaintiff is seeking to be paid a fee. *See* Pl.'s Opp'n 11; Def.'s Cross-Mot. 40. "Foregone fee" is a deemed cost for purposes of the cost-sharing provision of the Contract. App. 00003. When this case was previously before the Court, plaintiff "d[id] not dispute that . . . the Government was not to pay Jacobs (or its subcontractors) a fee for performing this contract." Pl.'s Reply to Def.'s Suppl. Br.

Plaintiff asserts that it is entitled to recover a fee for two reasons. First, plaintiff argues, the fee is included in plaintiff's reimbursable costs under FAR § 52.249-6. Pl.'s Memo. of Law 9–11. Second, under the CDA plaintiff asserts that the BCA Decision should be considered final and conclusive, that the decision holds that foregone fee is reimbursable, and that collateral estoppel prevents the Government from arguing that foregone fee cannot be recovered. *Id.* at 11–14.

The Government responds with two principal arguments. It argues first that this Court has already ruled that plaintiff is not entitled to recover a fee, plaintiff did not challenge that ruling on appeal to the Federal Circuit, and that ruling is now binding on plaintiff. Def.'s Cross-Mot. 15. Second, the Government argues, the Contract expressly provides that the Government "shall *not pay* to the contractor a *fee* for performing this contract." *Id.* at 16 (emphasis in original). In addition, the Government argues that, because the BCA had no jurisdiction over plaintiff's claim, this Court is not bound by the BCA Decision. *Id.* at 34–39.

### A. Plaintiff's Claim for Fee is Precluded by the Mandate of the Court of Appeals

That this Court is "bound to carry the mandate of the upper court into execution and [can] not consider the questions which the mandate laid at rest [] is indisputable." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). "Only the issues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citing *Sprague*, 307 U.S. at 170); *see also Globe Sav. Bank, F.S.B. v. United States*, 74 Fed. Cl. 736, 740 (2006) ("[T]he mandate rule and the law of the case doctrine preclude reconsideration by this court of a claim previously rejected and affirmed on appeal.").

The scope of a court's mandate is not always clear. *See Engels Indus.*, 166 F.3d at 1383 (citing *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997)). However, "[a]n issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived." *Id.*; *see also Doe v. United States*, 463 F.3d 1314, 1327 (Fed. Cir. 2006) ("The Doe plaintiffs should have raised the issue of the distinction between their holiday pay claim and their overtime pay claim before [liability was reversed on appeal], however. Because they did not, the issue was waived.").

---

on Foregone Fee 1. Now plaintiff seeks the payment of a fee and asserts that "'foregone fee' has no application to resolution [sic] of the amount of damages Jacobs is entitled to." Pl.'s Memo. 10. *But see id.* ("Nonetheless, the fee included in Jacobs' termination proposal tracked the percentages utilized by the parties for 'foregone fee[.]'").

In *Jacobs I*, this Court granted summary judgment to the Government, holding that (1) the Cost-Sharing Arrangement clause of the Contract was applicable in the case of a termination for convenience by the Government, *Jacobs I*, 63 Fed. Cl. at 457, and (2) because DOE had not, in agreeing to pay foregone fee, waived the no-fee provision of the Contract, plaintiff was not entitled to recover a fee under the termination clause. *Id.* at 459. On appeal, plaintiff challenged this Court's decision that the Cost-Sharing Arrangement clause was applicable when the Government terminated the Contract for convenience, *Jacobs II*, 434 F.3d at 1379, but plaintiff did not challenge this Court's decision that plaintiff was not entitled to be paid a fee.

Plaintiff argues that the question of fee does not fall within the Federal Circuit's mandate. According to plaintiff, this Court's ruling in *Jacobs I* that plaintiff was not entitled to recover a fee does not impact this proceeding because

> [i]n its previous ruling, this Court concluded that fee was not applicable under circumstances where it enforced the cost-sharing provision. At the present time, Plaintiff is requesting the Court to interpret the fee provisions when cost-sharing is not applicable to determine damages. . . . [T]he Court's prior ruling is not germane to resolve the issue. To the contrary, this Court must decide anew whether the contract permits the recovery of fee in the absence of cost-sharing.

Pl.'s Opp'n 6. In order for a claim to fall outside of the mandate, however, it is insufficient that the claim be presented under a new legal theory. *Doe*, 463 F.3d at 1327. Plaintiff could have raised the Court's denial of fee in its appeal; instead, in its brief to the Federal Circuit, plaintiff stated, "Jacobs is not appealing the CFC decision on fee." Brief of Plaintiff-Appellant 18 n.3, *Jacobs II* (No. 05-5052). This Court expressly held that plaintiff was not entitled to a fee. Plaintiff chose not to challenge that holding on appeal. Therefore, this Court's holding was incorporated in the mandate of the Federal Circuit and is binding on plaintiff.

### B. Even If Plaintiff's Claim for Fee Were Not Precluded by the Mandate, the Plain Language of the Contract Precludes Plaintiff From Recovering a Fee

Even assuming *arguendo* that plaintiff's claim were not precluded by the mandate of the Federal Circuit, plaintiff would not be entitled to recover a fee. Plaintiff argues that fee would be recoverable as a reimbursable cost under FAR 52.249-6(g)(4)(i) (May 1986) if the Government terminated the Contract for convenience. Pl.'s Memo. of Law 9. Plaintiff further argues that because the Federal Circuit found that the Cost-Sharing Arrangement clause of the Contract did not apply in the case of a termination for convenience, the Contract is purely a "cost-reimbursement contract entitling Jacobs to the recovery of 100 percent of its performance costs, including fee under FAR 52.249-6(g)(4)." Pl.'s Memo. of Law 10.

The Federal Circuit did find that, because the parties had not specifically provided in the Contract that cost-sharing would apply in a termination for convenience, plaintiff was entitled to recover "full reimbursement for the costs of its performance up to the government's contract

termination." *Jacobs II*, 434 F.3d at 1381. Nothing in *Jacobs II*, however, suggested that, absent cost-sharing, fee was to be treated as a cost. Although the Federal Circuit held that the Cost-Sharing Arrangement clause did not apply in the case of a termination for convenience, the court's logic does not require abrogating the no-fee provision in the case of a termination for convenience. The reimbursement of costs in the case of a termination for convenience is governed by FAR 52.249-6(g)(1), (2), and (3). None of those provisions treats fee as a cost. FAR 52.249-6(g)(4), cited by plaintiff, deals with the payment of a portion of the "fee payable under the contract." App. 00098. The Contract, however, provides that "[t]he Government shall not pay to the Contractor a fee for performing this contract." *Id.* at 00121. The decision of the Federal Circuit in *Jacobs II* did not address, much less abrogate, this clause of the Contract in the case of a termination for convenience. Because the Contract provided for no fee, the fee "payable under the contract," in the language of FAR 52.249-6(g)(4), is zero.

Plaintiff also argues that, because the Contract does not expressly state that the contractor shall not recover a fee when there is no cost-sharing, it follows that the contractor is entitled to recover a fee in such a situation. Pl.'s Memo. of Law 10. Plaintiff argues that, based on the Federal Circuit's reasoning in *Jacobs II*, in order for the Government to argue that plaintiff's fee is not a recoverable cost in a termination for convenience, "one must read into the contract language that does not *exist* in the Contract. Nothing in the Contract suggests this no fee provision applies unless cost-sharing is in effect. To the contrary, the title of the clause ["Termination (Cost-Reimbursement)"] suggests it *only* applies in the event of cost-sharing." *Id.* (emphasis in original).

Plaintiff's claim for fee presents in reverse the issue of how to interpret the lack of an express statement in the Contract (the issue raised by *Jacobs II*), there being an express statement in the Contract precluding the payment of a fee. Because the Contract provided that no fee would be paid, if the parties intended that a fee be paid in some situations, they would have explicitly provided for it. The termination for convenience clause does refer to payment of a "portion of the fee payable under the contract," App. 00098, but does not create entitlement to a fee upon termination; rather, the Contract provides: "The Government shall not pay to the Contractor a fee for performing this contract." *Id.* at 00121. In fact, the termination clause incorporates FAR 52.249-6(m), which expressly states that the "provisions of this clause relating to fee are inapplicable if this contract does not include a fee." *Id.* at 00099; *see also* Department of Energy Acquisition Regulation ("DEAR") 917.7003(h) ("Fee or profit will not be paid the performer under a cost participation contract."). Unlike cost-sharing, for which there was no provision in the termination clause, the termination clause makes clear that where, as here, the Contract provides that there shall be no fee, the contractor is not entitled to be paid a fee, even if the Government terminates the Contract for convenience.

Plaintiff also urges that, as a policy matter, this Court should rule that plaintiff is entitled to recover a fee, because if plaintiff is not, "Jacobs and its subcontractors provided services to the Government for several years at cost with no benefit or fee." Pl.'s Opp'n 5. This, plaintiff alleges, contradicts the policy relied upon by the Federal Circuit that "a contractor is not

supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate." *Jacobs II*, 434 F.3d at 1381 (citing *Kasler Electric Co.*, D.O.T.C.A.B. 1425, 84-2 B.C.A. (CCH) ¶ 17,374 (1984)). In its opinion, however, the Federal Circuit referred to "the costs of [plaintiff's] performance," *id.*, not to its lack of profit. Viewed *ex post*, it may be unfair, as plaintiff asserts, that plaintiff made no profit, but *ex ante*, that was part of the economic agreement. Plaintiff undertook risk, including the risk that it would earn no fee, in exchange for the possibility that it would receive valuable patent rights.[5] The Government characterizes plaintiff's policy argument as an argument for reformation of the contract. Def.'s Cross-Mot. 18–26. Plaintiff denies that it seeks reformation of the Contract, however. Pl.'s Opp'n 7. Rather, it "seeks a ruling from this Court that the Contract entitles it to recover its fee." *Id.* As discussed at pages 8–9 *supra*, however, the Contract provides that there shall be no fee and the termination clause makes clear that plaintiff is therefore not entitled to be paid a fee upon a termination for convenience.

### C. Plaintiff Has Not Presented Any Facts to Support Its Claim That It Is Entitled To a Fee in the Amount of $565,450 or in Any Other Amount

Even if the issue of fee fell outside the mandate of the Federal Circuit and payment of a fee were not precluded by the terms of the Contract, plaintiff would not be entitled to recover a fee, having failed to present any facts concerning the amount of fee to which plaintiff claims it is entitled. "It is plaintiff who bears the burden of proof . . . for establishing termination for convenience damages." *White Buffalo Constr., Inc. v. United States*, 52 Fed. Cl. 1, 5 (2002) (citing *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987)). Plaintiff alleges that the "fee included in Jacobs' termination proposal tracked the percentages utilized by the parties for 'foregone fee[.]'" Pl.'s Memo. of Law 10. But, as plaintiff acknowledges, "fee" and "foregone fee" are not the same thing. *See* p. 6 note 4, *supra*. Although plaintiff asserts that "regardless of its nomenclature, 'foregone fee' or 'fee', the amount at issue is the same," Pl.'s Memo. of Law 10, plaintiff has presented no evidence, either in the plain language of the Contract or extrinsic to the Contract, that the amount of fee to which it is allegedly entitled should "track" the foregone fee provided for in the Cost-Sharing Arrangement clause.

---

[5] If plaintiff had been concerned with earning a profit in the event of a termination for convenience, it could have negotiated for the payment of a fee in that event. Instead, plaintiff negotiated for the less-certain return that the potential patent rights resulting from its work under the Contract represented. The resulting patent(s) potentially could have provided plaintiff with a profit, but also may have turned out to be worthless, which plaintiff presumably understood. In a situation where plaintiff completed the work and received the patent rights, but the patent(s) turned out to be worthless, plaintiff would have no claim against the Government for a fee. Plaintiff was also aware that the Contract permitted the Government to terminate the Contract for convenience. Nonetheless, the terms of the Contract reflect plaintiff's determination that the value of potential profits associated with acquiring patent rights outweighed the risk that it would not earn any profit, whether because the resulting patent(s) had no value or because the Government terminated the Contract before plaintiff's work gave rise to any patent rights.

Although they are similarly denominated, the economics of fee and foregone fee demonstrate that they are unrelated to one another. A fee would represent profit to plaintiff beyond the recovery of 100 percent of its reimbursable costs—the amount to which *Jacobs II* held plaintiff was entitled. Foregone fee, on the other hand, does not represent any profit to plaintiff. The Government explained that "with foregone fee [plaintiff] could deduct certain amounts from [its] cost-sharing obligation . . . . But if you remove the cost-sharing provision . . . then those credits are now meaningless and then they don't get paid pursuant to . . . the contract." Tr. 91:15–21. Rather than representing profit, foregone fee is "considered in establishing the degree of cost participation." DEAR 917.7003(h). In this case the recovery by plaintiff of 80 percent of foregone fee had the effect of altering the cost-sharing ratio so that plaintiff bore 16 percent, rather than 20 percent, of its reimbursable costs.[6] The parties agree that under the holding in *Jacobs II* plaintiff is now entitled to recover 100 percent of its reimbursable costs. That is, the cost-sharing provision is not applicable in view of the Government's termination for convenience. Thus, in the circumstances of this case the provision for recovery of foregone fee is, in the words of Government counsel, "meaningless," Tr. 91:20, since the Government will pay plaintiff 100 percent of its reimbursable costs in any event. The Contract does not contain a provision for fee, and plaintiff has failed to explain why, other than the similarity of their names, the profit to which it alleges entitlement should "track" the contracted-for reduction in its cost-sharing burden. In light of *Jacobs II*, that burden is non-existent, and the provision for foregone fee is, indeed, "meaningless."

Furthermore, even if plaintiff had established that its fee should "track" foregone fee, it has not presented any evidence that would permit the Court to calculate the amount of that fee. Plaintiff bases its assertion that it is entitled to $565,450 as a fee on the CO's determination that the total of allowable costs (including foregone fee) under the Contract was $7,064,722. From that total, plaintiff subtracted the payments to date, as determined by the CO, of $5,579,601 to arrive at $1,485,122, the amount to which it alleges it is entitled. Pl.'s Memo. 8. The parties agree that under the decision in *Jacobs II* the Government owes Jacobs $919,672 in order to ensure that plaintiff is paid 100 percent of its reimbursable costs, but the Government "denies that it owes Jacobs $565,450, or any amount, for fee." Def.'s Cross-Mot. 8.

---

[6] For example, if plaintiff incurred $100 in costs, it would submit an invoice for $105 to the Government covering reimbursable costs ($100) and foregone fee ($5) calculated at 5 percent of reimbursable costs (*i.e.*, 100 + (100 × 0.05)). The Government would reimburse plaintiff 80 percent of the $105 deemed cost, or $84. After this reimbursement, plaintiff would only be required to bear $16 of cost (as opposed to the $20 it would have borne without the foregone fee provision of the Cost-Sharing Arrangement clause). The manner in which plaintiff added foregone fee to its and its subcontractors' costs is illustrated in the Statement of Cost submitted as part of its October 5, 1994, invoice. App. to Def.'s Mot. for Summ. J. (docket entry 32) 102.

Even if plaintiff were entitled to a 5 percent fee on top of 100 percent of its reimbursable costs, that fee would seem to fall somewhere between $45,984 and $353,236.[7] However, the amount claimed by plaintiff, $565,450, is outside of the range of possible fees.[8] In summary, plaintiff has failed to meet its burden of presenting evidence that the parties agreed that plaintiff would be paid a fee in the event of a termination for convenience, and plaintiff has also failed to present evidence with respect to what the amount of any such fee would be.

### D. The Decision of the Department of Energy Board of Contract Appeals Does Not Establish That Plaintiff Is Entitled to a Fee

Plaintiff alternatively argues that, under the CDA, this Court must accept the factual findings of the BCA, unless those findings are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (2000). Plaintiff argues that, in calculating the amount due and owing to plaintiff, the BCA made factual determinations that the allowable costs under the Contract totaled $7,064,722, which amount includes foregone fee. Pl.'s Memo. of Law 11. Therefore, according to plaintiff, this Court must accept the BCA's factual determinations as to the amount of foregone fee to which plaintiff was entitled.

Assuming for purposes of analyzing plaintiff's claim to a fee that the claim is not precluded by the mandate of the Federal Circuit *and* that the BCA had jurisdiction over plaintiff's May 2005 claim,[9] the BCA Decision does not require this Court to find that plaintiff is

---

[7] If the Government owed plaintiff a fee of 5 percent of the unpaid portion of plaintiff's costs, plaintiff would seem to be entitled to 5 percent of $919,672, which equals $45,984, or $519,466 less than the amount claimed by plaintiff. If the Government owed plaintiff a fee of 5 percent of the total of its reimbursable costs, even including foregone fee (which it would seem ought *not* to be regarded as a cost where cost-sharing is not applicable), as determined by the CO, plaintiff would seem to be entitled to 5 percent of $7,064,722, which equals $353,236—$212,214 less than the amount claimed by plaintiff.

[8] Under plaintiff's theory, in order for plaintiff to be entitled to a fee of $565,450, it would have to have incurred reimbursable costs of $11,309,000 ($0.05y = 565{,}450$, where y represents the reimbursable costs incurred by plaintiff). In earlier proceedings, the Government appears to have conceded that, under the cost-sharing provision of the Contract, the total foregone fee was $565,468. Def.'s Suppl. Br. on Foregone Fee 5 n.6. More recently, the Government has stated that plaintiff "seeks $565,450 in fee for itself and two subcontractors"—an amount that plaintiff included in its claim to the CO as "foregone fee, an accounting fiction authorized by the cost-sharing provision." Def.'s Resp. to Pl.'s PFUF (docket entry 76) 3–4.

[9] The Government asserts that the BCA had no jurisdiction to hear plaintiff's May 2005 claim because that claim was for a portion of its earlier claim in this Court. Def.'s Cross-Mot.

entitled to a fee. In the first instance, plaintiff overstates the scope of the BCA Decision. The BCA did not address the facts underlying the September 2002 decision by the CO. In that decision, the CO found that, under the termination and Cost-Sharing Arrangement clauses of the Contract, the Government owed plaintiff 80 percent of plaintiff's reimbursable costs, including foregone fee. The CO calculated the difference between what the Government owed plaintiff and what it had already paid to be $72,177. *Jacobs I*, 63 Fed. Cl. at 455; *see also* p. 4, *supra*. Holding that plaintiff's claim for $72,177 was properly before it, the BCA granted summary judgment for plaintiff. *Jacobs III*. The BCA observed that, in its appeal to this Court, plaintiff claimed the difference between 80 percent and 100 percent of its reimbursable costs, and its entitlement to the amount up to 80 percent, including foregone fee, was uncontested. *Id.* The BCA simply held that plaintiff's entitlement to $72,177 was not in dispute and DOE should therefore pay plaintiff that amount.

Moreover, the BCA Decision made clear that "[u]nder the Contract Jacobs was not to receive a fee." *Jacobs III*. Similarly, the CO had determined that although plaintiff was entitled to foregone fee, it was not entitled to be paid a fee. App. 00172 ("[Jacobs] is not entitled to reimbursement of fee on contract or termination costs[;] however, foregone fee is included in the total project cost for cost sharing purposes."). The decisions of the BCA and of the CO are entirely consistent with the no-fee clause and with DEAR 917.7003(h). Indeed, if the BCA Decision is of any relevance, it supports this Court's conclusion that plaintiff is not entitled to recover a fee.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment is GRANTED IN PART with respect to plaintiff's claim for additional costs in the amount of $919,672 and DENIED IN PART with respect to plaintiff's claim to recover a fee in the amount of $565,450,

---

36. According to the Government, because the earlier claim had been subject to a final decision by the CO in 2002 and had been appealed to this Court in 2002, the BCA erred in asserting jurisdiction. *Id.* at 38. Consistent with that position, DOE has not paid plaintiff the $72,177. Pl.'s Memo. of Law 11 n.3.

It is not clear from the opinion in *Jacobs III* whether the Government challenged the BCA's jurisdiction in the proceeding in front of the BCA; in its opinion, however, the BCA does not analyze the jurisdictional question. The Court similarly finds it unnecessary to determine whether the BCA had jurisdiction to hear plaintiff's claim. While the Court assumes for purposes of its analysis that the BCA had jurisdiction, if this assumption were to prove unfounded, the result would be the same. This is so because findings by a tribunal without jurisdiction are a nullity. *See Tiger Natural Gas, Inc. v. United States*, 61 Fed. Cl. 287, 290 n.4 (2004) ("[A]n appeal to an agency board of contract appeals is considered an 'absolute nullity' when such board lacks jurisdiction over the matter."); *see also National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1998).

or in any other amount. Defendant's cross-motion for summary judgment is GRANTED. That is, the Court holds that plaintiff is not entitled to recover a fee for performing the Contract. The Clerk is directed to enter judgment for plaintiff in the amount of $919,672, plus interest pursuant to 41 U.S.C. § 611 (2000), from April 29, 2002, until the date of payment. Payment by defendant of this Court's judgment in this action shall satisfy any obligation of defendant to make any payment to plaintiff as a result of the BCA Decision.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge